UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DUPREE, JR., a Colorado Resident,
MICHAEL DUPREE, SR. and DARLENE DUPREE,
his parents, Residents of the Country of Austria,

                Plaintiffs,

vs.

CRANBROOK EDUCATIONAL COMMUNITY,
JOHN J. WINTER and CHARLES SHAW,

                Defendants.

Case No. 2:10-CV-12094-LPZ-MKM
Hon. Lawrence P. Zatkoff
Magistrate Judge Mona K. Majzoub

_____/

Christopher R. Sciotti (P33501)
Attorneys for Plaintiffs
24825 Little Mack
St. Clair Shores, MI 48080
(586) 779-7810

Russell S. Linden (P34863)
Tara E. Mahoney (P68697)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Defendants
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7466

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Defendants Cranbrook Educational Community, John J. Winter and Charles Shaw move

this Court for summary judgment pursuant to Fed. R. Civ. P. 56 for dismissal of Plaintiffs'

claims for the reasons set forth in the accompanying supporting Brief and the attached exhibits.

On March 1, 2011, counsel for Defendants sought via telephone, but could not obtain,

concurrence in the relief sought in this motion.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Defendants


By:/s/ Russell S. Linden
    Russell S. Linden (P34863)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7466

Dated:  March 2, 2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DUPREE, JR., a Colorado Resident,
MICHAEL DUPREE, SR. and DARLENE DUPREE,
his parents, Residents of the Country of Austria,

                Plaintiffs,

vs.

CRANBROOK EDUCATIONAL COMMUNITY,
JOHN J. WINTER and CHARLES SHAW,

                Defendants.

Case No. 2:10-CV-12094-LPZ-MKM
Hon. Lawrence P. Zatkoff
Magistrate Judge Mona K. Majzoub

_____/

Christopher R. Sciotti (P33501)
Attorneys for Plaintiffs
24825 Little Mack
St. Clair Shores, MI 48080
(586) 779-7810

Russell S. Linden (P34863)
Tara E. Mahoney (P68697)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Defendants
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7466

_____/

**BRIEF IN SUPPORT OF DEFENDANTS'**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

CONCISE STATEMENT OF ISSUES PRESENTED.................................................. v

STATEMENT OF MOST CONTROLLING AUTHORITY ...................................... vii

I.    INTRODUCTION ............................................................................. 1

II.    STATEMENT OF MATERIAL FACTS ......................................................... 2

    A.    The Parties. ............................................................................ 2

    B.    The Enrollment Contract............................................................. 2

    C.    Cranbrook's Upper School Community Handbook.................................. 3

    D.    Dupree Jr. Possesses a Marijuana Pipe and Is  Placed on Conduct Probation Until June 4, 2004. ...................................................... 5

    E.    Dupree Jr. Is Dismissed from School After  Violating the Terms of His Conduct Probation. ........................................................... 7

    F.    Cranbrook Issues a Transcript with a Withdrawal Date of June 1, 2004. .............. 9

    G.    After His Dismissal, Dupree Jr. Attends Six Colleges and Travels the World. ........................................................................... 10

III.    ARGUMENT.................................................................................. 11

    A.    Plaintiffs' Fraud and Misrepresentation Claim Lacks Merit .................... 11

    B.    Plaintiffs' Mail and Wire Fraud Claims Lack Merit............................... 13

    C.    Plaintiffs' Extortion Claim Lacks Merit ............................................ 14

    D.    Plaintiffs' RICO Claim Lack Merit ................................................ 15

        1.    Plaintiffs' RICO Claim Is Untimely. ......................................... 15

        2.    Plaintiffs Cannot Establish a Pattern of Racketeering Activity as Evidenced by Two or More Predicate Offenses. ......................... 15

        3.    Plaintiffs Cannot Establish Injury to Their Business or Property............. 17

    E.    Plaintiffs' Breach of Contract Claim Lacks Merit................................. 18

IV.   CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Cascade Elec. Co. v. Rice*, 70 Mich. App. 420; 245 N.W.2d 774 (1976) .................................... 19

*Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir. 1989)............................................................... 17

*Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993) ............................................................. 16

*Hall American Center Associates Ltd. Partnership v. Dick*, 726 F. Supp. 1083 (E.D. Mich. 1989).......................................................................................................................... 15

*Hi-Way Motor Comp. v. Int'l Harvester Co.*, 398 Mich. 330; 247 N.W.2d 813 (1976) .............. 11

*In re Brown*, 342 F.3d 620 (6th Cir. 2003) ................................................................................ 18

*Jersevic v. Kuhl*, No. 238808, 2003 WL 1558207 (Mich. App. March 25, 2003) ...................... 14

*Kaul v. Raina*, No. 244045, 2004 WL 405920 (Mich. App. March 4, 2004) .............................. 14

*Morganroth & Morganroth v. DeLorean*, 123 F.3d 374 (6th Cir. 1997) ..................................... 13

*New Freedom Mort. Corp. v. Globe Mort. Corp.*, 281 Mich. App. 63; 761 N.W.2d 832 (Mich. App. 2008)............................................................................................................... 18

*Poydras v. One West Bank*, No. 09-11435, 2009 WL 2382558 (E.D. Mich. 2009).................... 13

*Rodriguez v. Due Process of Mich., Inc.*, No. 07-CV-12578-DT, 2008 WL 4449651 (E.D. Mich. Sept. 30, 2008)............................................................................................. 14

*Rotella v. Wood*, 528 US 549 (2000) ......................................................................................... 15

*Ryan v. Ohio Edison Comp.*, 611 F.2d 1170 (6th Cir. 1979)....................................................... 13

*Saro v. Brown*, 11 Fed. Appx. 387 (6th Cir. 2001)......................................................... 13, 16, 17

*Taylor Group v. ANR Storage Co.*, 24 Fed. Appx. 319 (6th Cir. 2001) ....................................... 15

*Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174 (6th Cir. 1996) ...................... 20

*U.S. v. Daniel*, 329 F.3d 480 (6th Cir. 2003) ............................................................................. 16

*Waris v. Frick*, No. 06-5189, 2007 WL 954108 (E.D. Pa. March 28, 2007)................................ 14

*Wisdom v. First Midwest Bank*, 167 F.3d 402 (8th Cir. 1999) ........................................ 14, 15, 16

**Statutes**

18 U.S.C. § 1341 ........................................................................................................... 13

18 U.S.C. § 1343 ........................................................................................................... 13

18 U.S.C. § 1951 ........................................................................................................... 14

18 U.S.C. § 1961 ........................................................................................................... 16

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  WHETHER PLAINTIFFS' FRAUD AND MISREPRESENTATION CLAIM SHOULD BE DISMISSED BECAUSE THEY CANNOT ESTABLISH (A) ANY FALSE MISREPRESENTATION, (B) ANY MISREPRESENTATION WAS MADE WITH THE INTENT THAT PLAINTIFFS ACT ON IT, AND (C) PLAINTIFFS ACTUALLY RELIED ON IT OR SUFFERED ANY INJURY?

    | | |
    |---|---|
    | Defendants say: | Yes |
    | Plaintiffs say: | No |
    | This Court should say: | Yes |

2.  WHETHER PLAINTIFFS' MAIL AND WIRE FRAUD CLAIMS SHOULD BE DISMISSED BECAUSE THERE ARE NO PRIVATE CAUSES OF ACTION FOR VIOLATIONS OF SUCH STATUTES?

    | | |
    |---|---|
    | Defendants say: | Yes |
    | Plaintiffs say: | No |
    | This Court should say: | Yes |

3.  WHETHER PLAINTIFFS' EXTORTION CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION UNDER THE FEDERAL STATUTE, THEY CANNOT PROVE THE NECESSARY ELEMENTS UNDER MICHIGAN LAW WHERE THERE WAS NEVER ANY MONEY EXTORTED, AND THERE IS NO EVIDENCE OF AN ACTUAL THREAT BEING MADE?

    | | |
    |---|---|
    | Defendants say: | Yes |
    | Plaintiffs say: | No |
    | This Court should say: | Yes |

4.  WHETHER PLAINTIFFS' RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") CLAIM SHOULD BE DISMISSED BECAUSE IT WAS UNTIMELY FILED AND THEY OTHERWISE CANNOT PROVE A PATTERN OF RACKETEERING ACTIVITY OR ANY INJURY TO THEIR BUSINESS OR PROPERTY?

|                      |     |
|----------------------|-----|
| Defendants say:      | Yes |
| Plaintiffs say:      | No  |
| This Court should say: | Yes |

5.  WHETHER PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE THE UNDISPUTED FACTS ESTABLISH THAT THE CONTRACT WAS NOT BREACHED AND THAT PLAINTIFFS SUFFERED NO DAMAGES?

|                      |     |
|----------------------|-----|
| Defendants say:      | Yes |
| Plaintiffs say:      | No  |
| This Court should say: | Yes |

## STATEMENT OF MOST CONTROLLING AUTHORITY

*Agency Holding Corp. v. Malley-Duff Associates, Inc.,*
 483 U.S. 143 (1987)

*Fleischhauer v. Feltner,*
 879 F.2d 1290 (6th Cir. 1989)

*Frank v. D'Ambrosi,*
 4 F.3d 1378 (6th Cir. 1993)

*Hall American Center Associates Ltd. Partnership v. Dick,*
 726 F. Supp. 1083 (E.D. Mich. 1989)

*Hi-Way Motor Comp. v. Internat'l Harvester Comp.,*
 398 Mich. 330; 247 N.W.2d 813 (1976)

*In re Brown,*
 342 F.3d 620 (6th Cir. 2003)

*Morganroth & Morganroth v. DeLorean,*
 123 F.3d 374 (6th Cir. 1997)

*Ryan v. Ohio Edison Comp.,*
 611 F.2d 1170 (6th Cir. 1979)

*Saro v. Brown,*
 11 Fed. Appx. 387 (6th Cir. 2001)

*Taylor Group v. ANR Storage Co.,*
 24 Fed. Appx. 319 (6th Cir. 2001)

*U.S. v. Daniel,*
 329 F.3d 480 (6th Cir. 2003)

*Wisdom v. First Midwest Bank,*
 167 F.3d 402 (8th Cir. 1999)

## I.   **INTRODUCTION**

Almost six years after being dismissed from school during his senior year in June, 2004 for violating the terms of his probation, traveling the world extensively, and after attending six colleges, Plaintiff Michael Dupree, Jr. ("Dupree Jr.") and his parents, Michael Dupree, Sr. ("Dupree Sr.") and Darlene Dupree ("Dupree") filed this lawsuit alleging six claims arising from that dismissal against Defendants Cranbrook Educational Community ("Cranbrook" or "the School"), the Dean of the Boys School, John J. Winter ("Winter"), and the Head of the Upper School, Charles Shaw ("Shaw").  Those claims have been asserted despite the undisputed facts that the School enrollment contract expressly provided that Dupree Jr. could be dismissed at any time at the School's sole discretion if his behavior was unsatisfactory and his dismissal occurred after violating his probation, which resulted from his possessing drug paraphernalia.  He violated that probation by providing his computer password to another student who hacked into computer accounts of other students and school faculty.  Seeking to obtain the high school diploma and damages, Plaintiffs allege claims of (1) fraud and misrepresentation, (2) mail fraud, (3) wire fraud, (4) extortion, (5) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and (6) breach of contract.  Defendants' summary judgment motion should be granted and all of Plaintiffs' claims should be dismissed.

Plaintiffs' fraud and misrepresentation claims are erroneously premised on notions that (1) Dupree Jr. should have received his diploma despite being dismissed and (2) his transcript inaccurately denotes withdrawal from school.  Plaintiffs cannot establish any of the elements for those claims.  Plaintiffs' mail fraud, wire fraud and extortion claims fail because none of the applicable statutes provide private civil causes of action.  Furthermore, the extortion claim otherwise lacks merit because no actionable threat was made.  Equally meritless is Plaintiffs'

1

RICO claim, which is also time-barred.  Finally, Plaintiffs cannot establish a breach of contract. The undisputed facts establish that Dupree Jr.'s dismissal was in accordance with the terms of the enrollment contract.

For the following reasons, Defendants' motion for summary judgment should be granted.

## II.   STATEMENT OF MATERIAL FACTS

### A.   The Parties.

Cranbrook is a college preparatory day and boarding school, with a lower, middle and upper school, which is for grades 9-12.  Plaintiff Michael Dupree, Jr., who is 25 years old, resides in Denver, Colorado, where he currently attends the University of Denver.  Deposition of Michael Dupree, Jr. ("Dupree Jr. Dep.") at 6.  He attended Cranbrook as a student from fall, 2000 until June 1, 2004, when he was dismissed during his senior year for violating the terms of his probation.  His parents, Michael Dupree, Sr. and Darlene Dupree, live in Vienna, Austria. Deposition of Darlene Dupree ("Dupree Dep.") at 17.  At the time of Plaintiff's dismissal, Defendant Winter was the School's Dean of the Boys School and Defendant Shaw was its Head of the Upper School.  Deposition of John Winter ("Winter Dep.") at 4-5; Deposition of Charles Shaw ("Shaw Dep.") at 4.

### B.   The Enrollment Contract.

Dupree Jr. was enrolled as a student at Cranbrook for his freshman year (ninth grade) or the academic year of 2000-2001.  Deposition of Michael Dupree, Sr. ("Dupree Sr. Dep.") at 10. As a requirement for enrollment, Dupree Sr. signed an Enrollment Contract for each year that his son attended Cranbrook.[1]  Dupree Sr. Dep. at 13.

---

[1] Plaintiff's brother Matthew also attended Cranbrook and graduated from there in 2007.  Dupree Dep. at 20.

Prior to Dupree Jr.'s senior year in 2003, Dupree Sr. signed an Enrollment Contract for his son's academic year 2003-2004,[2] which contained the following conditions:

> I specifically understand and agree that **the Schools reserve the right to dismiss Michael at any time if, in the judgment of the Schools, Michael's health, efforts, progress, behavior or influence is unsatisfactory or his account is past due.**
>
> **I understand that Michael will be responsible for abiding by the policies and procedures stated in his School's handbook.**

Ex. 1 (emphasis added).

### C.    Cranbrook's Upper School Community Handbook.

As referenced in the Enrollment Contract, Cranbrook issued an Upper School Community Handbook for the 2003-2004 academic year ("Handbook"), which Plaintiffs received. Dupree Jr. Dep. at 130; Dupree Sr. Dep. at 14. The Handbook has an entire section concerning Conduct Rules and Expectations governing student behavior. Ex. 2 at 69-89. The Handbook specifically states that, "[s]**tudents are held accountable for their participation in actions that violate the values and standards of the community.**" Ex. 2 at 70 (emphasis in original). The Handbook specifies Major School Rule Violations subjecting students to discipline including, "[a]ny violation of the Cranbrook Technology Use Policy," and "[p]ossession of paraphernalia for use of drugs or alcohol." Ex. 2 at 71-72; *see also* Deposition of Arlyce Seibert ("Seibert Dep.") at 43-44; Shaw Dep. at 19-20.

The Handbook contains a section entitled "Highlights of the Cranbrook Schools Technology Use Policy," which expressly warns not to "share your computer accounts or passwords with another person." Ex. 2 at 89. The Technology Use Policy further states:

---

[2] Dupree Jr. and his mother were not parties to that agreement as they admittedly never signed it. Dupree Jr. Dep. at 131; Dupree Dep. at 19-20.

All users shall respect the integrity of technologically based information. Users shall not in any way damage, vandalize, hack or destroy equipment. . .

\* \* \*

Any attempt by users to access another user's or the school's private files . . . will be considered theft. Any attempts to gain access to unauthorized resources or private information . . . are prohibited.

Sensitive information on the Cranbrook network is protected in a number of ways. However, the proper use of passwords is important to the integrity of any computer system. All users must observe appropriate password security by not sharing accounts and passwords or leaving open accounts unattended. . .

Ex. 2 at 99-100. The Technology Use Policy specifically provides that "[A]ll violations . . . are violations of a major school rule." Ex. 2 at 100.

The Handbook describes student "Disciplinary Procedures" and indicates that a Conduct Review Board ("CRB") may be utilized. Ex. 2 at 74-76. The Handbook explains:

A student who violates a major school rule or has a pattern/repetition of other violations may be called before the Conduct Review Board, made up of either or both of the Deans of Students and appointed faculty members and senior students. Parents are notified of the hearing beforehand, if possible, and informed of the decision after recommendation of the Conduct Review Board has been approved.

\* \* \*

In private, members of the Conduct Review Board assess the incident and recommend consequences for the conduct to the Head of the Upper School for final approval. In the case of a recommendation for dismissal, the Head of the Upper School and the Director of Schools must give approval.

Ex. 2 at 74 (emphasis in original).

Depending upon the nature of the student's offense and record, the Handbook delineates the possible disciplinary consequences to include:

**Conduct Probation:** Students who violate a major school rule or have a pattern of other behavior violations can expect to be placed

on Conduct Probation for an extended length of time (they may also be dismissed). . . **During Conduct Probation, if the student violates any school rules, she or he is subject to immediate dismissal.**

\* \* \*

**Dismissal:** A student is dismissed if the offense is very serious in the eyes of the community, **or if the student has already broken a major school rule or already has a pattern of any rule violations.** Dismissal occurs with the recommendation of the Conduct Review Board or the administrative review process. A dismissal requires the approval of the Head of the Upper School and Director of Schools. . .

Ex. 2 at 75-76 (emphasis added).

### D.    Dupree Jr. Possesses a Marijuana Pipe and Is Placed on Conduct Probation Until June 4, 2004.

In March 2004, Cranbrook's Dean of the Boys, Winter went to speak with Dupree Jr. regarding an attendance issue.[3]  Winter Dep. at 10.  While meeting in Winter's office, Winter smelled something suspicious and asked Dupree Jr. if he had anything in his book bag.  Winter Dep. at 10-11; Dupree Jr. Dep. at 41.  Dupree Jr. opened his bag and showed Winter a glass marijuana pipe.  Winter Dep. at 12; Dupree Jr. Dep. at 41.  Dupree Jr. admitted possessing the pipe but claims another student had given it to him.[4]  Dupree Jr. Dep. at 40-41.  Possession of drug paraphernalia is a major school rule violation.  Seibert Dep. at 43-44; Shaw Dep. at 19-20.

As a result of Dupree Jr. possessing the pipe, Winter then met with him and his mother, Darlene Dupree.  Winter Dep. at 14; Dupree Jr. Dep. at 42; Dupree Dep. at 48-49.  Dupree Jr. abruptly left the meeting after getting into an argument with his mother.  Dupree Dep. at 49;

---

[3] During academic year 2003-2004, Dupree Jr. was disciplined on several occasions regarding his attendance.  Between November 3, 2003 and March 17, 2004, he received five disciplinary statements regarding his attendance and tardiness record. *See* Ex. 3.  In one case, he had five unexcused absences in eight days.

[4] Dupree Jr. admits smoking marijuana and drinking alcohol during his senior year at Cranbrook.  Dupree Jr. Dep. at 40-41, 101-102.  Dupree Jr. also admits that he provided marijuana to others while attending Cranbrook. *Id.* at 102.

5

Dupree Jr. Dep. at 42.  During the meeting, Winter informed Dupree that her son was accused of violating Cranbrook's code of conduct and that a CRB hearing would take place.  Dupree Dep. at 51; Winter Dep. at 14.

On March 11, 2004, a CRB hearing was held, during which Dupree Jr. admitted possessing the pipe but claimed that it belonged to another student.  Winter Dep. at 15-16; Dupree Jr. Dep. at 40-41.  According to Winter, whether the pipe belonged to someone else did not matter because possession of the pipe violated school rules -- possession of drug paraphernalia is a major school rule violation.  Winter Dep. at 16-19.  The CRB recommended that Dupree Jr. be (1) placed on conduct probation until June 4, 2004, (2) suspended from school for three days and (3) have a substance assessment done.[5]  Winter Dep. at 19.

On March 12, 2004, Winter sent a letter notifying the Dupree's that Dupree Jr.: (1) was placed on conduct probation until June 4, 2004 and that should he "violate any major school rule or accumulate a series of minor rule violations, he would come before the committee again and could be dismissed from school," (2) had to arrange for a substance assessment with an outside resource and share the results with the Dean or a school counselor, (3) was suspended for three school days -- March 11, 12 and 13, and (4) was prohibited from having guest privileges in the residence halls during the conduct probation.[6]  Ex. 4; Winter Dep. at 19.  Soon after the date of Winter's letter, Mr. and Mrs. Dupree received the letter.  Dupree Sr. Dep. at 22; Dupree Dep. at 30.

---

[5] Prior to March, 2004, Dupree Jr. was struggling academically and had been disciplined concerning his attendance.  Seibert Dep. at 9-10.

[6] June 4, 2004 was the graduation date.  Seibert Dep. at 18.

**E.    Dupree Jr. Is Dismissed from School After
       Violating the Terms of His Conduct Probation.**

In late May 2004, Cranbrook administrators, including Seibert (Cranbrook's Director of

Schools), Shaw and Winter, were made aware that students were accessing tests that belonged to

faculty members on their computers. Shaw Dep. at 36-37; Seibert Dep. at 4, 34-36; Winter Dep.

at 24-27. On May 24, 2004, a teacher reported suspicious activity on certain Cranbrook

computers, which precipitated an investigation conducted by Cranbrook's Information

Technology ("IT") department. Seibert Dep. at 36. That investigation disclosed that another

student and Dupree Jr. were involved in a computer hacking and decoy scheme. Shaw Dep. at

36-37; Seibert Dep. at 34-36, 41-42; Winter Dep. at 24-27.

On May 25, 2004, Cranbrook administrators, including Seibert, Shaw, Winter, James

Pickett (Cranbrook's Dean of Faculty), Doug Ebert (Cranbrook's Chief Operating Officer), Scott

Looney (an employee in Cranbrook's admission office) and Tom DeCraene (Cranbrook's

Coordinator of Information Technology) were informed about the IT department's findings. Ex.

5; Shaw Dep. at 36-37; Seibert Dep. at 34-36; Winter Dep. at 20, 24-27. Specifically, the IT

department determined that there was evidence of the creation of a decoy account login on the

other student's and Dupree Jr.'s network storage space. Ex. 5; Seibert Dep. at 41-42. The IT

department found 167 faculty and student IDs and passwords in Dupree Jr.'s network storage.

Shaw Dep. at 36-37; Seibert Dep. at 35-36, 41-42. The IT department also determined that

faculty final exams and other information had been accessed and evidence of gambling activity

on Dupree Jr.'s account. Ex. 5; Winter Dep. at 29; Seibert Dep. at 35-36. It also was discovered

that file transfers from the Cranbrook network were sent to the cheesy.com network which was

owned by Dupree Jr. Ex. 5; Ex. 6.

The IT department investigation revealed that Dupree Jr. may have violated a major school rule -- the Computer Technology Use Policy.  Shaw Dep. at 20; Seibert Dep. at 44.  In response, on May 26, 2004, Winter and Pickett met with Dupree Jr., who admitted that he had given another student his computer password during the school year.  Winter Dept. at 20; Dupree Jr. Dep. at 104, 109.  On May 26, 2004, Dupree Jr.'s parents were notified he was suspended. Dupree Dep. at 107-108.

On May 27, 2004, a CRB hearing was conducted concerning the allegation that Dupree Jr. had provided his computer password to someone else, which constituted a major school rule violation and compromised the safety and integrity of Cranbrook's computer network.  Seibert Dep. at 16, 41; Winter Dep. at 29; Dupree Dep. at 14.  During the CRB hearing, Dupree Jr. admitted that he had given his password to the student.[7]  Winter Dep. at 33.  Based on Dupree Jr.'s admission, his already being on conduct probation and the fact that he violated another major school rule, the CRB recommended Dupree Jr.'s dismissal, which was then conveyed to Shaw.  Winter Dep. at 34; Shaw Dep. at 43.

On May 27, 2004, Shaw and Seibert then approved the dismissal recommendation and decided that Dupree Jr. would be dismissed based on his pattern of violating major school rules (possessing the marijuana pipe and violating the Technology Use Policy) and violating the terms of his conduct probation.  Shaw Dep. at 19-21, 43-46; Seibert Dep. at 43-45, 59.  On May 28, 2004, Seibert met with Mr. and Mrs. Dupree and informed them of the dismissal decision. Seibert Dep. at 16; Dupree Dep. at 14-15.

---

[7] Dupree does not dispute that her son gave his password to another student.  Dupree Dep. at 101.

On June 1, 2004, Winter sent a letter to Plaintiffs stating that Dupree Jr. "has been dismissed from Cranbrook Kingswood Upper School effective June 1, 2004." Ex. 7; Winter Dep. at 46-47.

**F.**     **Cranbrook Issues a Transcript with a Withdrawal Date of June 1, 2004.**

Dupree Jr. was dismissed before the School's graduation on June 4, 2004, and therefore was not issued a diploma. Seibert Dep. at 48; Shaw Dep. at 24. To graduate, even if a student's academic work is complete, he must be in good standing and receive a diploma. Shaw Dep. at 24-25. To receive a diploma, there is a formal faculty vote which occurs the day before graduation. Seibert Dep. at 27, 54. In deciding whether to grant a diploma, the faculty considers each student's academic record and behavior. Seibert Dep. at 48-49. There was no vote concerning whether to grant a diploma to Dupree Jr. because he had already been dismissed. Seibert Dep. at 49.

After dismissing Dupree Jr., Cranbrook issued him a transcript with the notation of a withdrawal date of June 1, 2004.[8] Ex. 8. Prior to being issued that transcript, Plaintiffs were notified it would have the withdrawal notation. Dupree Sr. Dep. at 77-79. Cranbrook's transcript format only allows for one of two designations on a student's transcript, either "Graduation Date" or "Withdrawal Date." Ex. 8; Shaw Dep. at 51; Winter Dep. at 41. Cranbrook determined that marking a June 1, 2004 "Withdrawal Date" was appropriate because Dupree Jr. was dismissed prior to graduation. Shaw Dep. at 51; Winter Dep. at 42. Cranbrook also believed that indicating a withdrawal date as opposed to a dismissal date (even if it were possible to mark the transcript in such a way) placed Dupree Jr. in a better situation with

---

[8] As reflected on the transcript, Dupree Jr.'s cumulative grade point average was a 2.33. Ex. 8.

colleges.[9]  Shaw Dep. at 54; Dupree Jr. Dep. at 115.  That explanation was provided to Plaintiffs. Dupree Jr. Dep. at 115; Dupree Sr. Dep. at 49-50, 69-70; Dupree Dep. at 97.

### G.   After His Dismissal, Dupree Jr. Attends Six Colleges and Travels the World.

After being dismissed from Cranbrook, Dupree Jr. immediately obtained his GED in early June 2004.  Dupree Jr. Dep. at 35; Dupree Sr. Dep. at 25-26.  In the fall of 2004, Dupree Jr. enrolled at Purdue University where he had been accepted prior to his dismissal.  Dupree Jr. Dep. at 13; Dupree Sr. Dep. at 26-27.  Neither his dismissal nor the transcript affected his admission status.  Dupree Jr. Dep. at 63; Dupree Dep. at 26.  After attending Purdue for approximately a month and a half before withdrawing because of an unspecified illness, Dupree Jr. moved to California with two friends.  Dupree Jr. Dep. at 13-16.

Since leaving Purdue, Dupree Jr. has attended five colleges in California and Colorado and spent considerable time traveling around the world (visiting over fifty countries).[10]  Dupree Jr. Dep. at 34, 55.  Dupree Jr. is currently enrolled at the University of Denver where he anticipates graduating from later this year.  Dupree Jr. Dep. at 6-7.

---

[9] Plaintiffs admit that they requested this transcript be sent to various colleges despite their knowledge of the withdrawal notation. Dupree Jr. Dep. at 137; Dupree Sr. Dep. at 77-79,83-85; Dupree Dep. at 76-77.  In fact, Dupree signed a Permission to Release School Records Form (*see* Ex. 9) which authorized Cranbrook to release Dupree Jr.'s records.  That form also contained a revocation clause ("[t]his authorization shall remain in force until specifically revoked by me in writing").  Ex. 9.  Dupree admits she never revoked that authorization.  Dupree Dep. at 77.

[10] Dupree Jr. claims that obtaining a GED disadvantaged him with regard to the college application process.  He claims he did not apply to certain colleges because they would not accept the GED and some colleges rejected him because of his GED.  Plaintiffs cannot, however, identify any college to which Dupree Jr. did not apply because he had a GED (Dupree Jr. Dep. at 64, 98) or any school that rejected him because he had a GED or because his transcript from Cranbrook has a withdrawal date on it (Dupree Jr. Dep. at 116, 135; Dupree Sr. Dep. at 97; Dupree Dep. at 41).  In fact, Dupree Jr. admits he does not know why he was rejected by any college.  Dupree Jr. Dep. at 62-70, 76, 85-86, 116, 135.

### III.   ARGUMENT

### A. PLAINTIFFS' FRAUD AND MISREPRESENTATION CLAIM LACKS MERIT

Plaintiffs' fraud and misrepresentation claim is premised on the allegation that they relied upon the "false representation" that if Dupree Jr. "completed his credits, school work and graduation requirements", then he "would be entitled to" his diploma (Complaint ¶ 45) and that the transcript had an inaccurate withdrawal notation.[11] Dupree Jr. Dep. at 132; Dupree Sr. Dep. at 77. To establish fraud or misrepresentation under Michigan law, Plaintiffs must prove by "clear, satisfactory and convincing evidence" that (1) Defendants made a material misrepresentation; (2) it was false; (3) when Defendants made the misrepresentation they knew it was false, or made it recklessly, without any knowledge of its truth; (4) Defendants made it with the intention that it should be acted upon by Plaintiffs; (5) Plaintiffs acted in reliance upon it; and (6) Plaintiffs suffered injury.[12] *Hi-Way Motor Comp. v. Int'l harvester Co.*, 398 Mich. 330, 336; 247 N.W.2d 813 (1976). Further, "[e]ach of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them is fatal to a recovery." *Id.* Plaintiffs cannot establish these elements.

No material misrepresentations were made. It is undisputed that Plaintiffs knew in advance of issuance of the transcript that it would have the withdrawal notation. Dupree Sr. Dep. at 77-78. Dupree Sr. admitted that they were told in advance of the receipt of the transcript that it would have that designation. Dupree Sr. Dep. at 79. Thus, there was no misrepresentation

---

[11] It is unclear which Plaintiffs are alleging these claims against which Defendants.

[12] Dupree Sr., trained as a lawyer (Dupree Sr. Dep. at 9), also explained that the fraud and misrepresentation claim was based on the unsupported notion that the handbook did not specify that providing another student with your computer password was a major school violation. Dupree Sr. Dep. at 74-75. To the contrary, the Handbook expressly provides that such conduct was a major school violation. *See* Ex. 2 at 71-72, 100.

made concerning the transcript. The transcript only allows for two notations -- a graduation or withdrawal date. Winter Dep. at 41. Further, Cranbrook considers dismissal to be an involuntary form of withdrawal. Seibert Dep. at 26. As such, Cranbrook noting a withdrawal date on the transcript is neither false nor done with the knowledge that it was false.

Equally meritless is the claim that Defendants expected that Dupree Jr. would receive his diploma if he completed his academic requirements. That claim is premised on a meeting with academic advisors which occurred before Dupree Jr. was placed on probation – a decision involving what courses he needed to pass to graduate. Dupree Dep. at 66, 84. Dupree's testimony does not support an actionable claim. If Plaintiff's claims were credited, it would mean that Dupree Jr. could never have been dismissed regardless of the egregious nature of his conduct.[13]

Plaintiffs also cannot establish that (1) Defendants made comments at the meeting or put a withdrawal date on the transcript so that they would rely on it or (2) they actually relied on any representations -- assuming any were made. The terms of Plaintiff's probation as well as the Enrollment Contract vitiate any basis for relying on the vague comments. In addition, Plaintiffs knew in advance that the transcript would have the withdrawal notation. There is no evidence of any reliance by Plaintiffs.

Finally, Plaintiffs cannot establish any injury based on Defendants' alleged misrepresentation. Dupree Jr. enrolled at Purdue which was his plan prior to dismissal and issuance of the transcript. Significantly, Dupree Jr. cannot identify any college or university that

---

[13] In any event, at the time of the CRB hearing, Dupree Jr. had finished taking his exams but had not yet completed all coursework. Seibert Dep. at 27. On the morning of May 27, 2004 Dupree submitted an English final examination for her son. Dupree Dep. at 68. On May 28, 2004, Dupree Jr. submitted via e-mail his statistics exam. Dupree Dep. at 106, 116-117.

rejected his application because of the transcript.  Dupree Jr. Dep. at 62-70, 76, 85-86, 116, 135.

Clearly, Plaintiffs' fraud and misrepresentation claim should be dismissed.

### B.  PLAINTIFFS' MAIL AND WIRE FRAUD CLAIMS LACK MERIT

Plaintiffs claim that Defendants committed mail and wire fraud when they sent the

transcript to various schools and when Shaw and other agents of Cranbrook spoke on the

telephone to Dupree Sr. and Purdue University regarding the transcript.   Complaint (Docket

Number 1), ¶¶ 53-55, 61-62; Dupree Sr. Dep. at 80, 85-86.  Those claims are not cognizable.

The Sixth Circuit has made clear that there is no private cause of action with regard to the

mail and wire fraud statutes, 18 U.S.C. § 1341 and 18 U.S.C. § 1343.  In *Ryan v. Ohio Edison*

*Comp.*, 611 F.2d 1170, 1178 (6th Cir. 1979), that court explained that the mail fraud statute is a

"bare criminal statute with no indication of any intent to create a private cause of action," and

held that it does not provide a private cause of action.  *Id.* at 1179.  Further, in *Morganroth &*

*Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997), the Sixth Circuit extended *Ryan* to

the wire fraud statute and held that it does not give rise to private causes of action.  Consistent

with those decisions, this Court in *Poydras v. One West Bank*, No. 09-11435, 2009 WL 2382558

(E.D. Mich. 2009) (Zatkoff, J.) (attached as Ex. 10), held that "Section 1341 does not incorporate

a private cause of action."  *See also Saro v. Brown*, 11 Fed. Appx. 387, 388 (6th Cir. 2001)

(affirming district court ruling dismissing the plaintiff's claims because "violations of these

sections [18 U.S.C. §§ 1341 and 1343] of the federal criminal code do not give rise to

independent, private causes of action").

Plaintiffs' mail and wire fraud claims should be dismissed.

## C. **PLAINTIFFS' EXTORTION CLAIM LACKS MERIT**

Dupree Jr. claims that Cranbrook, through Winter and/or Pickett, extorted him by threatening him with criminal prosecution if he did not cooperate in the computer hacking investigation in May, 2004.[14]  Dupree Jr. Dep. at 117.  Specifically, Dupree Jr. testified that he cannot "remember who actually said what" but "they both talked about what I was doing would be a crime" and that unless he cooperated, he could be prosecuted.  Dupree Jr. Dep. at 113. Those comments do not support a cognizable claim.

Plaintiffs cite unspecified Michigan law and 18 U.S.C. § 1951 as the basis for their extortion claim.[15]  The federal criminal extortion statute, 18 U.S.C. § 1951, does not provide for a private cause of action and, therefore, Plaintiffs' federal claim should be dismissed.  *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408-409 (8th Cir. 1999); *see also Waris v. Frick*, No. 06-5189, 2007 WL 954108 (E.D. Pa. March 28, 2007) (attached as Ex. 11).

Although Judge Rosen decided in *Rodriguez v. Due Process of Mich., Inc.*, No. 07-CV-12578-DT, 2008 WL 4449651 at * 11 (E.D. Mich. Sept. 30, 2008) (attached as Ex. 12), that Michigan "does not recognize a civil cause of action for extortion," Michigan courts have issued somewhat conflicting decisions on the issue.[16]  The only Michigan Court of Appeals case recognizing such a claim did so only in limited circumstances that do not exist here.  In *Jersevic*, the Michigan Court of Appeals explained that extortion is cognizable only to recover money that

---

[14] Dupree Sr. and Dupree admit that they were never threatened with prosecution.  Dupree Sr. Dep. at 90; Dupree Dep. at 63, 70.

[15] Extortion is a criminal act under MCL § 750.213.

[16] *Compare Kaul v. Raina*, No. 244045, 2004 WL 405920 (Mich. App. March 4, 2004) (attached as Ex. 13) (affirming the dismissal of the plaintiffs' extortion claim because they failed to cite authority in support of a civil remedy for extortion) *with Jersevic v. Kuhl*, No. 238808, 2003 WL 1558207 at * 1 (Mich. App. March 25, 2003) (attached as Ex. 14) (holding that Michigan law recognizes a private cause of action for extortion or threats intending extortion).

14

was extorted, or, in aggravating circumstances, to recover damages in excess of the money extorted. *Jersevic*, 2003 WL 1558207 at * 1. That court also noted that "unlawful and malicious threats may by reason of their intended results [i.e. extorting money] become actionable." *Id.* Here, there is no allegation that any Defendant threatened, attempted to extort or extorted any money from Plaintiffs and thus, their extortion claim should be dismissed.

### D. **PLAINTIFFS' RICO CLAIM LACK MERIT**

1. **Plaintiffs' RICO Claim Is Untimely.**

The United States Supreme Court has held that civil RICO actions are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff Associates, Inc.*, 483 U.S. 143, 156 (1987). RICO actions accrue when a plaintiff knew or should have known of an injury. *Taylor Group v. ANR Storage Co.*, 24 Fed. Appx. 319, 325 (6th Cir. 2001) (citing *Rotella v. Wood*, 528 US 549, 554-555 (2000)). Here, Plaintiffs knew or should have known of any injury after the alleged predicate offenses of mail and wire fraud occurred in June, 2004. Dupree Dep. at 25-27; Dupree Sr. Dep. at 77-79. Plaintiffs, however, did not file this lawsuit until May 25, 2010 or nearly six years after the claim accrued. Thus, Plaintiffs' RICO claim is time barred.

2. **Plaintiffs Cannot Establish a Pattern of Racketeering Activity as Evidenced by Two or More Predicate Offenses.**

Even assuming that Plaintiffs' RICO claims are not untimely, they otherwise lack merit. To establish their RICO claims, Plaintiffs must prove (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Hall American Center Associates Ltd. Partnership v. Dick*, 726 F. Supp. 1083 (E.D. Mich. 1989); *Wisdom*, 167 F.3d at 406. More specifically, they must show (1) there were two or more predicate offenses; (2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; (3) a nexus between the pattern of racketeering

15

activity and the enterprise; and (4) an injury to the plaintiff's business or property by reason of the above. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993). The pattern element requires at least two acts of racketeering activity, but "a mere allegation of two or more acts is insufficient to state a RICO claim." *Wisdom*, 167 F.3d at 406. The Sixth Circuit has held that "[a] plaintiff has standing to seek a civil remedy under RICO . . . only if he has been injured in his business or property," and "he must show a causal connection between his injury and a predicate act." *Saro*, 11 Fed. Appx. at 388-399; *see also* 18 U.S.C. § 1964(c).

Plaintiffs allege that Defendants violated the RICO by engaging in the following predicate offenses: (1) mail fraud; (2) wire fraud; and (3) contacting students to "coerce" them to provide a statement against Dupree Jr. regarding his selling drugs.[17] Complaint (Docket Number 1), ¶ 82. Only those predicate offenses enumerated in 18 U.S.C. § 1961(1) can constitute actionable predicate offenses. *Frank*, 4 F.3d at 1385. There is no enumerated predicate offense in the statute pertaining to Cranbrook allegedly coercing students to make statements against Dupree Jr. Therefore, those statements provide no basis for Plaintiffs' RICO claim.

To use mail and wire fraud as predicate offenses, Plaintiffs must show: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme. *Wisdom*, 167 F.3d at 406-407. A scheme to defraud has been defined as "any plan or course of action by which someone intends to deprive another by deception of money. . .or property by means of false or fraudulent pretenses, representations, or promises." *U.S. v. Daniel*, 329 F.3d 480, 485-486 (6th Cir. 2003). Intent to defraud means "not only that a defendant must knowingly make a material

---

[17]Plaintiffs admit, however, that they are unable to identify the facts supporting this claim. Dupree Sr. Dep. at 87.

misrepresentation or knowingly omit a material fact, but also that the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *Id.* at 487. Here, Plaintiffs cannot prove a plan or scheme to defraud or an intent to defraud.

The withdrawal notation on Dupree Jr.'s transcript does not constitute a scheme to defraud anyone, particularly not to deceive anyone regarding money or property. Nor was that notation made with any intent that it was a misrepresentation that would affect anyone. In fact, as Plaintiffs acknowledged, the withdrawal notation was explained as an effort to help Dupree Jr. after he was dismissed -- withdrawal status not having the obvious pejorative connotation of dismissal.[18] Shaw Dep. at 54; Dupree Jr. Dep. at 115. Plaintiffs have no evidence of any scheme or intent to defraud.

### 3.    Plaintiffs Cannot Establish Injury to Their Business or Property.

A plaintiff only has standing under RICO if he has been injured in his business or property and must prove "proximate causation," meaning his injury flowed from a particular predicate act. *Saro*, 11 Fed. Appx. at 388-389. Importantly, "[r]ecovery for physical injury or mental suffering is not allowed under civil RICO because it is not an injury to business or property." *Fleischhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989). Plaintiffs cannot prove any injury to their business or property because of those acts.

It is undisputed that Plaintiffs requested Cranbrook send the transcript marked with the withdrawal notation to various schools. Dupree Jr. Dep. at 137; Dupree Sr. Dep. at 83-85; Dupree Dep. at 76-77. Furthermore, they did it with the knowledge of that notation. It is also

---

[18] As Shaw testified, Cranbrook continued to advocate to maintain Dupree Jr.'s admission status at Purdue. Shaw Dep. at 54. Dupree Jr. had been admitted to Purdue prior to his dismissal. Dupree Jr. Dep. at 13; Dupree Sr. Dep. at 26-27.

undisputed that Dupree Jr. was accepted at multiple colleges after that transcript was issued. Dupree Jr. Dep. at 34; Dupree Sr. Dep. at 54, 58, 60.  Significantly, Dupree Jr. cannot identify any school that rejected his application because the transcript noted withdrawal.  Dupree Jr. Dep. at 62-70, 76, 85-86, 116, 135.  Plaintiffs' RICO claim should be dismissed because they cannot establish any injury to their business or property resulting from Defendants' alleged RICO violations.

### E.  PLAINTIFFS' BREACH OF CONTRACT CLAIM LACKS MERIT

Plaintiffs allege that Defendants breached the Enrollment Contract (Ex. 1) by dismissing Dupree Jr. from Cranbrook.[19]  Dupree Sr. Dep. at 12, 17.  Plaintiffs must prove that Defendant Cranbrook breached the terms of that contract and that the breach caused Plaintiffs' injury. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003); *see also New Freedom Mort. Corp. v. Globe Mort. Corp.*, 281 Mich. App. 63, 69-70; 761 N.W.2d 832 (Mich. App. 2008).  Plaintiffs cannot establish their claim.

The Enrollment Contract (Ex. 1) specified the conditions for Dupree Jr.'s enrollment for academic year 2003-2004, which included Dupree Jr. being "responsible for abiding by the policies and procedures stated in his School's handbook." Ex. 1.  The Enrollment Contract clearly states that Cranbrook reserved "the right to dismiss Michael at any time if, in the judgment of the Schools, Michael's . . . behavior. . . is unsatisfactory. . ." Ex. 1.  Both Mr. and Mrs. Dupree acknowledge those provisions. Dupree Dep. at 58; Dupree Sr. Dep. at 73.  Their son violated two major school rules and the terms of his conduct probation, the terms of which

---

[19] Dupree Sr. identified the Enrollment Contract as the contract breached.  Dupree Sr. Dep. at 12.  The contract was between Dupree Sr. and Cranbrook.  Winter and Shaw were not parties to the Enrollment Contract. Neither Dupree nor Dupree Jr. signed that contract. *See* Ex. 1.

specified he could be dismissed any time prior to June 4, 2004. His dismissal was in accordance with the terms of the Enrollment Contract, and Plaintiffs cannot establish their claim.

Confronted with the terms of the Enrollment Contract, Plaintiffs claim that dismissal could not have occurred because Dupree Jr. completed his academic requirements. Dupree Sr. Dep. at 71-73; Dupree Dep. at 67. Dupree Sr. testified that this claim is based on "common sense". Dupree Sr. Dep. at 71-73. It is also based on his wife's testimony that during a meeting with academic advisors before her son was placed on probation, they discussed his son's academic progress and the courses required to graduate, someone responded he only needed to pass his English class. Dupree Dep. at 66, 84. The Enrollment Contract does not provide for issuing a diploma after completing coursework but after being dismissed. To the contrary, it specifically stated that Dupree Jr. could be dismissed at any time. Additionally, the undisputed facts establish that (1) the March 12, 2004 probation letter expressly stated that Dupree Jr. was on Conduct Probation until June 4, 2004 and (2) granting a diploma was subject to faculty vote which occurred after his dismissal. *See* Ex. 4; Seibert Dep. at 48-49. Dupree Jr.'s dismissal occurred before the faculty vote on issuing diplomas and the June 4, 2004 graduation date. That action was consistent with the Enrollment Contract.

In effect, Plaintiffs are arguing promissory estoppel, a claim not pled in their complaint. Dupree Jr.'s parents' reliance upon a meeting with academic advisors before their son was placed on probation cannot support their claim. The March 12, 2004 letter clearly provided notice that dismissal could occur up until June 4, 2004. *See* Ex. 4. Furthermore, it is well established that "[w]hile an express contract is in force between the parties, a contract cannot be implied in law." *Cascade Elec. Co. v. Rice*, 70 Mich. App. 420, 426; 245 N.W.2d 774 (1976);

19

*see also Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996). The Enrollment Contract is such an express contract, and it precludes Plaintiffs' claim.[20]

## IV.   CONCLUSION

Based on the foregoing, Defendants Cranbrook Educational Community, John J. Winter and Charles Shaw respectfully request that their motion for summary judgment be granted, Plaintiffs' claims be dismissed and the Court grant such other relief deemed appropriate.


Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Defendants


By:/s/ Russell S. Linden_____
    Russell S. Linden (P34863)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7466

Dated: March 2, 2011

---

[20] Plaintiffs cannot establish any damages stemming from the alleged breach. Dupree Jr. enrolled as planned at Purdue following his dismissal. He has since attended five other colleges and expects to graduate later this year. Dupree Jr. Dep. at 34. Plaintiffs cannot identify any college to which Dupree Jr. did not apply because of his dismissal or any college that rejected him because of his dismissal from Cranbrook. Dupree Jr. Dep. at 62-70, 76, 85-86, 116, 135; Dupree Sr. Dep. at 97; Dupree Dep. at 41. Plaintiffs have suffered no injury because of Defendants' alleged breach of the Enrollment Contract.

**CERTIFICATE OF SERVICE**

      I hereby certify that, on March 2, 2011, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

                            Respectfully submitted,

                            HONIGMAN MILLER SCHWARTZ AND COHN LLP
                            Attorneys for Defendants

                            By:/s/ Russell S. Linden
                                Russell S. Linden (P34863)
                            2290 First National Building
                            660 Woodward Avenue
                            Detroit, MI 48226-3506
                            (313) 465-7466
Dated:  March 2, 2011             rlinden@honigman.com

8814361.5