# CHARLES SHAW
# DEPOSITION TRANSCRIPT

STATE OF MICHIGAN
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MICHAEL DUPREE, JR., a Colorado Resident,
MICHAEL DUPREE, SR. and DARLENE DUPREE,
his parents, Residents of the Country of Austria,

Plaintiffs:

-vs-          Case No. 2010-CV-120940-LPZ-MKM
              Hon. Laurence Zatkoff
              Mag. Mona K. Majzoub

CRANBROOK EDUCATIONAL
COMMUNITY, JOHN J. WINTER and
CHARLES SHAW,

Defendants:
_____/

The deposition of CHARLES SHAW, taken before Lisa M. Fix, a Certified Shorthand Reporter and Notary Public for the County of Wayne, State of Michigan, at 38500 Woodward, Suite 100, Bloomfield Hills, Michigan, on Thursday, the 13th Day of January, 2011, at 12:35 p.m.

APPEARANCES:

          THOMAS, GARVEY, GARVEY & SCIOTTI
          ATTORNEYS AT LAW
          24825 Little Mack
          St. Clair Shores, Michigan  40808
          By:  CHRISTOPHER SCIOTTI, ESQ.
      Appearing on behalf of the Plaintiff:

          HONIGMAN, MILLER, SCHWARTZ & COHN
          ATTORNEYS AT LAW
          660 Woodward, Suite 2290
          Detroit, Michigan  48226
          By:  RUSSELL S. LINDEN, ESQ.
      Appearing on behalf of the Defendant:

ALSO PRESENT:  John Winter

| | | |
|---|---|---|
| 1 | A | Sure.  That would be a Bachelor's degree from |
| 2 | | Trinity College in Hartford, Connecticut, and a |
| 3 | | Master's degree from Middlebury College. |
| 4 | Q | And what has your employment history been with |
| 5 | | Cranbrook? |
| 6 | A | I was employed in the fall of 1976, so this is |
| 7 | | year 35. |
| 8 | Q | And can you tell me the position that you've held |
| 9 | | at Cranbrook? |
| 10 | A | I was a teacher until 1995.  I became the Dean of |
| 11 | | faculty in 1995 to 2003.  And the head of the |
| 12 | | upper school in 2003. |
| 13 | Q | Okay.  And what were your job duties as head of |
| 14 | | faculty from 1995 to 2003? |
| 15 | A | The Dean of faculty oversees all the evaluation |
| 16 | | systems, oversees professional development, the |
| 17 | | implementation of job description, and performance |
| 18 | | of duties. |
| 19 | Q | So you are -- you are reviewing faculty members, |
| 20 | | essentially? |
| 21 | A | That is correct. |
| 22 | Q | And then in 2003 you became -- |
| 23 | A | The head of the upper school.  That would be the |
| 24 | | fall of 2003. |
| 25 | Q | Now, between 1995 and 2003, before you became head |

1        MR. LINDEN: And when we added them are we going in sequential order where we left off in Seibert's?

4        MR. SCIOTTI: Yes. Yes.

5        MR. LINDEN: Okay.

6        MR. SCIOTTI: I added 10, 11, and 12.

8  Q  (Continuing by Mr. Sciotti) We were talking about the differences, if any, between the definition of dismissal in the Tuition Refund Program, which I believe is Exhibit Number 4 in front of you, and the definition in the 2003, 2004 handbook, which I'm handing you is marked Exhibit 12. And are there, in your opinion, are there any differences?

15  A  Well, this is a commercial firm definition that's imported from a company, and this is a definition -- this is not a definition.

18  Q  Okay. What's the standard at Cranbrook to dismiss a student?

20  A  A pattern of violations of school rules.

21  Q  Okay. Now, what were the reasons that Michael Dupree, Jr. was dismissed?

23  A  A pattern of violations of major school rules.

24  Q  And what were those? What was that pattern?

25  A  Well, um, a pattern was the combination of two

```
 1       major school rule violations.
 2   Q   And what were those two major school rule
 3       violations?
 4   A   The possession of a marijuana pipe, and the
 5       violation of a Technology Use Policy.
 6   Q   Okay. Now, about the marijuana pipe, and we're
 7       going to get into that in a little bit. When you
 8       call it a marijuana pipe, did you see it? Did you
 9       see the pipe?
10   A   Yes.
11   Q   And why do you refer to it as a marijuana pipe as
12       opposed to put any substance in there I guess to
13       smoke?
14   A   I suppose you could smoke tobacco in it.
15   Q   So if he had a tobacco pipe would it have been a
16       major school violation?
17   A   Yes.
18   Q   What's the standard to determine whether a student
19       has violated a major rule policy or a pattern of
20       violations? I mean who determines that?
21   A   The handbook. Set forth in the handbook.
22   Q   Okay. And as far as dismissal is concerned,
23       what's the standard for dismissal? I'm trying to
24       get an idea, is there a vote, or do you determine
25       whether --
```

| | | |
|---|---|---|
| 1 | A | It's a pattern of violations of major school |
| 2 | | rules. |
| 3 | Q | And who determines that the pattern was violated? |
| 4 | A | Well, the rules are set forth in the handbook, and |
| 5 | | then through a conduct review process violations |
| 6 | | are determined, and then the Conduct Review Board |
| 7 | | makes recommendations. |
| 8 | Q | I guess what I'm asking is through the Conduct |
| 9 | | Review Board what's the -- what's the proof? I |
| 10 | | mean if there's just -- I'm just going to give you |
| 11 | | kind of a rule or a proof. If there's just a tiny |
| 12 | | bit of evidence, or does it have to be a hundred |
| 13 | | percent certain? Us lawyers, we use, you heard |
| 14 | | beyond a reasonable doubt. |
| 15 | A | Right. |
| 16 | Q | More likely than not. I mean is there a burden of |
| 17 | | proof -- |
| 18 | A | No. |
| 19 | Q | -- that has to be met? |
| 20 | A | No, it's not a judicial proceeding. |
| 21 | Q | Okay. |
| 22 | A | It's not a legal proceeding. |
| 23 | Q | So -- |
| 24 | A | We proceed on what we know to be the truth. |
| 25 | Q | Right. Well, it's not always, and we can get back |

1     school.
2  Q  And where do you find that rule?
3  A  Um, that rule is in the handbook.
4  Q  Okay. Is there some kind of timetable when a
5     student can be dismissed prior to receiving a
6     diploma?
7  A  Well, a student is subject to dismissal until the
8     time -- until the award of the diplomas.
9  Q  So if the faculty meets before graduation and
10    votes to award a student a diploma, can that
11    diploma be revoked by dismissal after that?
12 A  Yes.
13 Q  And who would make that decision?
14 A  The head of the upper school, with the director of
15    schools.
16 Q  So you -- in this case you and Miss Seibert could
17    make that decision?
18 A  There would be a Conduct Review Board prior to
19    that. But there are 24 hours between the voting
20    of the diplomas.
21 Q  Okay. Mr. Dupree's -- the faculty did not vote on
22    Mr. Dupree, Jr.'s diploma; is that correct?
23 A  That is correct.
24 Q  And the reason was he had already been dismissed?
25 A  Correct.

| | | |
|---|---|---|
| 1 | Q | Could you look at Deposition Exhibit Number 1? |
| 2 | A | I'm looking at it, yes. |
| 3 | Q | What is that? |
| 4 | A | These are the notes from the Conduct Review |
| 5 | | Meeting for Michael. |
| 6 | Q | Of March 11th? |
| 7 | A | March 11th, yes. |
| 8 | Q | And Sharon Peacock made these notes? |
| 9 | A | That's correct. |
| 10 | Q | Now, other than Deposition Exhibit Number 1 and |
| 11 | | Deposition Exhibit Number 2 that you can look at, |
| 12 | | are there any other written -- |
| 13 | A | No. |
| 14 | Q | -- evidence of -- |
| 15 | | MR. LINDEN: Let him finish |
| 16 | | the question. |
| 17 | | MR. SCIOTTI: Yeah. |
| 18 | | MR. LINDEN: Let him finish |
| 19 | | the question. |
| 20 | | THE WITNESS: Sorry. |
| 21 | Q | (Continuing by Mr. Sciotti) Is there any other |
| 22 | | written evidence of that Conduct Review Board? |
| 23 | A | No. |
| 24 | Q | Who's Eric L? |
| 25 | A | That would be Eric Linder, I believe. |

1  Q  Okay.
2  A  The -- I remember it.
3  Q  Okay.
4  A  In fact, strong recollection of it.
5  Q  You do have an independent recollection of it?
6  A  Yes.
7  Q  Tell me without looking at Exhibit 6, or feel free
8     to look at it, actually. What do you remember?
9  A  Of what in particular?
10 Q  Just prior to this Conduct Review.
11 A  Well, I don't participate in the review.
12 Q  I know that.
13 A  Okay.
14 Q  But you said you had a recollection of it taking
15    place.
16 A  Yes. Yes.
17 Q  So is your recollection of it taking place after
18    it took place, or did you have some knowledge that
19    it was going to take place?
20 A  Oh, I knew it was going to take place.
21 Q  Okay. And how did you know that?
22 A  Well, we were made aware of it by IT that Michael
23    was in, that his computer files, his H. drive was
24    in receipt of files containing passwords.
25 Q  Okay. And that's from Exhibit 7?

1  A   What do you mean by Exhibit 7?
2  Q   I mean that's how you learned?  That's how you
3      learned?
4  A   That is one of the ways in which we learned, yes.
5  Q   Any other ways?
6  A   Well, we learned that students were looking at
7      tests that belonged to faculty members on their
8      computers.
9  Q   Okay.  And did you think Michael had any input
10     into that?
11 A   Into?
12 Q   Allowing students to look at tests.
13 A   I don't know.
14 Q   Okay.  If you could look at Exhibit 6 again.  And
15     look at both pages.  There's -- I mean there's
16     writing on that page which I can read, and then
17     there's faint writing which appears to be in a
18     mirror almost that I really can't read.  But I
19     think it might be -- where's the original?
20 A   As we speak here?
21 Q   Yeah.
22 A   I couldn't tell you that.
23 Q   But an original exists, or just a copy?
24 A   I couldn't tell you that.
25 Q   Okay.  I mean do you know why this --

1  decision.
2  Q  So that is yes, you made the decision?
3  A  Yes.
4  Q  Okay. Is that your decision alone?
5  A  In consultation with the deans.
6  Q  Okay. And what were the -- from the Conduct
7     Review Board's -- or I guess from the deans
8     recommendations, what were the violations that you
9     felt warranted dismissal?
10 A  Michael was in receipt of a file of passwords and
11    log ins.
12 Q  Was that the sole fact?
13 A  Yes.
14 Q  Okay. Did you consider the fact that he gave his
15    password to Randy in September of '03 --
16 A  Yes.
17 Q  -- was that part of -- was that part you your
18    decision also?
19 A  That was part of the decision, yes.
20 Q  So that what I'm trying to find out, were the
21    factors that led you to recommend dismissal after
22    he completed all of the academic requirements?
23 A  Yes, the fact that he gave a student his
24    password --
25 Q  And --

1  A    -- is also part of that.
2  Q    And did you know that he gave Randy his password
3       in September, and then Michael changed his
4       password?
5  A    I don't know that, no.
6  Q    If you look on Exhibit 6, which I think is in
7       front of you. I think down about the middle of
8       the page, a little bit lower, it says, "a few days
9       after he gave," and I assume that's Randy, which
10      is blacked out, "his password, M.D.", which I
11      assume is Michael Dupree, "changed his password."
12      Would that matter to you?
13 A    I don't -- I don't know that to be the case. This
14      is -- I don't know that to be the case, no.
15 Q    Well, if it was the case would it have mattered to
16      you?
17 A    No.
18 Q    And why not?
19 A    The violation was to give a password to another
20      student.
21 Q    Okay. So what other factors? He had a file with
22      student passwords?
23 A    And he had given his password to another student.
24 Q    And those were the two violations?
25 A    Yes.

1  Q   And those were the two reasons for dismissal?
2  A   That's correct.
3  Q   Did you consider any other punishment?
4  A   We talk about other -- we talk about all the
5      ranges, the whole range.
6  Q   And what were the ranges?
7  A   Well, for this particular offense you're talking
8      about?
9  Q   Yes.
10 A   Oh, there is no other -- let me back up and say
11     for this particular offense there is no other
12     alternative that I would be considering.
13 Q   Okay.  Would it have mattered to you whether
14     Michael knew that he had those other passwords on
15     his computer?
16 A   Would you repeat the question?
17 Q   Yeah.  Would it matter to you, back in May or June
18     of '04, whether Michael had actual knowledge that
19     the passwords were on his computer?
20                     MR. LINDEN:  I guess I'm going
21     to object to the question on form, and it assumes
22     fact not in evidence, and it's a hypothetical.
23                     Can you read back the question
24     so Mr. Shaw can answer the question, please?
25                     (Whereupon the last question

1           was read back.)
2           THE WITNESS: I can't answer
3      the question.
4  Q  (Continuing by Mr. Sciotti) Was it enough for you
5      to dismiss him just to know those passwords were
6      on his computer?
7  A  No.
8  Q  Okay. It didn't matter to you that he gave out
9      his password in September and then changed it?
10 A  That's correct.
11 Q  Okay. And it didn't matter to you that that
12     occurred before March of 2004?
13 A  Correct.
14 Q  Were there any other factors that you considered
15     for his dismissal other than what we talked about?
16 A  The fact he was on probation.
17 Q  Okay. Did you consider allowing him to obtain his
18     diploma and not participate in graduation?
19 A  No.
20 Q  When deciding to dismiss Michael Dupree, Jr. from
21     Cranbrook knowing he had completed all of his
22     academic studies, what were you -- what were you
23     attempting to accomplish?
24 A  A student must be in good standing in order to
25     receive a diploma.

```
1   A   He was dismissed.
2   Q   Okay. So tell me the reasons, then, it's a
3       correct transcript.
4   A   It's correct.
5   Q   Tell me the reasons it is, because the way I --
6   A   It's consistent --
7   Q   Go ahead.
8   A   It's consistent with how we record the withdrawal
9       and dismissals of students. It's consistent with
10      how all students are processed at the time of --
11  Q   So it doesn't matter whether a student withdrawals
12      or is dismissed, you're going to put --
13  A   Correct.
14  Q   -- withdrawal, right?
15  A   Correct.
16  Q   And aren't you misleading colleges or anybody
17      that's looking at this?
18  A   No.
19  Q   You're not?
20              So when you send this to
21      Purdue are they going to assume that he was
22      dismissed?
23  A   I don't know the answer to that question.
24  Q   You don't think this Exhibit Number 5 is at all
25      misleading?
```

| | | |
|---|---|---|
| 1 | | extent we deem warranted. |
| 2 | Q | So that's the reason that you -- I'm not following |
| 3 | | you. Tell me why every student that's dismissed |
| 4 | | for a conduct violation gets a withdrawal put on |
| 5 | | their transcript instead of a dismissal. |
| 6 | A | Well, um, the reason for that is to provide |
| 7 | | support to families who have the option to go |
| 8 | | forward and get our support as a school, and give |
| 9 | | our maximum resources to aid that student -- |
| 10 | Q | Give me an example. |
| 11 | A | -- and the family. |
| 12 | | So that we can talk with a |
| 13 | | college or university, and the college or |
| 14 | | university is looking at a box that says |
| 15 | | withdrawal, and that covers both families that |
| 16 | | were dismissed and families who withdrew. |
| 17 | Q | So in this case you dismissed Michael Dupree, Jr., |
| 18 | | but you put withdrawal on the transcript to |
| 19 | | actually help him? |
| 20 | A | That is in this case, yes. |
| 21 | Q | So how did you help him? |
| 22 | A | We continued to advocate him for -- advocate for |
| 23 | | him to gain admission to keep his admission in the |
| 24 | | school. |
| 25 | Q | Do you know where the transcripts -- his |