# Exhibit 2

Not Reported in F.Supp.2d, 2005 WL 1631338 (E.D.Mich.)
(Cite as: 2005 WL 1631338 (E.D.Mich.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan, Southern Division.
FLAGSTAR BANK, FSB, a federally chartered savings bank Plaintiff,
v.
FEDERAL INSURANCE COMPANY, an Indiana Corporation and Continental Casualty Company, an Illinois Corporation. Defendants.

No. 05-70950.
July 12, 2005.

*OPINION AND ORDER*
ZATKOFF, J.
AT A SESSION of said Court, held in the United States Courthouse, in the City of Port Huron, State of Michigan, on July 12, 2005

I. INTRODUCTION

*1 This matter is before the Court on Defendants Federal Insurance Company's (hereinafter, "Federal") and Continental Casualty Company's (hereinafter, "Continental") Motion to Dismiss pursuant to Rule 12(b)(6). Plaintiff Flagstar Bank (hereinafter, "Flagstar") has responded and Defendants have replied to the response. In addition, Flagstar has filed a motion requesting the Court to allow it to file a sur-reply brief. The Court finds no reason to allow Flagstar to file a sur-reply brief because Defendant Federal's Reply brief raised no new issues, but merely responded to the arguments of Flagstar's response brief. Accordingly, the Court HEREBY DENIES Flagstar's motion to file a sur-reply brief.

The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED, in part, and DENIED, in part.

II. BACKGROUND

Plaintiff Flagstar is a federally chartered savings bank that is in the commercial lending business. Defendant Federal issued a $10 million federal bond (hereinafter, "the Bond") that insured Flagstar against certain losses during 2004. Defendant Continental issued a $15 million excess bond for the same period. The excess bond was subject to the same terms and conditions as the underlying Bond and insured Flagstar for those losses above $10 million.

In 2003, Flagstar entered into warehousing agreements with two Colorado residential mortgage intermediaries, Amerifunding/Amerimax Realty Group, Inc. (hereinafter, "Amerifunding") and Twentieth Century Mortgage Inc. (hereinafter, "Twentieth Century"). *See* Complaint, ¶ 7. Under the warehousing agreements, Flagstar extended a $20 million line of credit to Amerifunding and a $15 million line of credit to Twentieth Century. *See id.*

Flagstar later discovered that both Amerifunding and Twentieth Century were controlled by the same group of people, including Gerald Small, Kelli Small, Chad Heinrich, and Charles Winnet (collectively, the "Principals"). *See id,* ¶ 9. Flagstar further discovered that the Principals had deceived Flagstar into approving the warehousing loans based on the submission of 48 residential mortgage transactions which contained forged signatures and were the product of fraud. *See id,* ¶ 10. Based on the Principals' deception, Flagstar asserts that it lost approximately $23 million when Amerifunding and Twentieth Century failed to repay the loans. *See id,* ¶ 11. Upon discovering the fraud, Flagstar immediately contacted the U.S. Department of Justice and F.B.I. The Principals have since been indicted for bank fraud. *See id,* ¶ 12.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-cv-12094-LPZ-MKM ECF No. 27-3, PageID.594 Filed 04/22/11 Page 3 of 5

Page 2

Not Reported in F.Supp.2d, 2005 WL 1631338 (E.D.Mich.)
(Cite as: 2005 WL 1631338 (E.D.Mich.))

Within two weeks of suffering its loss, Flagstar filed a claim against Defendants Federal and Continental seeking reimbursement of the loss. In February of 2005, Defendants each notified Flagstar that the loss was not covered under the Bond. In response to this denial, Plaintiff filed the present Complaint against Defendants Federal and Continental on March 10, 2005. By its Complaint, Flagstar asserts that its loss was covered pursuant to the terms of the Bond, and that the portion of its loss that exceeded the coverage of Federal's bond was covered by Continental's excess bond. Defendants recognize that Flagstar has suffered a loss as a result of fraud, but dispute that the loss was covered under the terms of the Bond.

### III. LEGAL STANDARD

*2 Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. "In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Penny/Ohlmann/Niemann, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir.2005).

### IV. ANALYSIS

There are three issues currently before the Court: (1) whether the Court should consider the three exhibits Defendant Federal attached to its Motion to Dismiss, (2) whether Flagstar has a valid claim under Insuring Clauses 4 or 5, and (3) whether Flagstar has a claim under Insuring Clause 9.

A. Whether the Court should consider the three exhibits Defendant Federal attached to its Motion to Dismiss.

Plaintiff Flagstar alleges that Defendant Federal improperly attached three exhibits to its Motion to Dismiss in an attempt to establish additional facts that were not included in Flagstar's Complaint. Flagstar correctly refers the Court to *Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir.1997), for the proper rule: "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." The Court disagrees with Flagstar, however, as to the application of this rule.

Federal attached three exhibits to its Motion to Dismiss. Exhibit A was the Complaint Flagstar filed in state court in Colorado. Exhibit B was the warehouse agreement between Flagstar and Amerifunding. Exhibit C was the warehouse agreement between Flagstar and Twentieth Century.

Exhibits B and C were referred to by Flagstar in its Complaint. The Court finds that these documents are central to Flagstar's Complaint and highly relevant to the current Motion to Dismiss. Accordingly, the Court finds that it was proper for Federal to attach them as exhibits. Regarding Exhibit A, Flagstar's Complaint filed in Colorado state court, the Court also concludes that it was proper for Federal to attach this as an exhibit. It was not prejudicial to Flagstar for Defendants to refer to facts alleged by Flagstar in a separate court proceeding. Furthermore, the state court complaint offers useful background information regarding the case.

B. Whether Flagstar has a Valid Claim under Insuring Clauses 4 or 5

Flagstar alleges violations of Insuring Clauses 4 and 5 of the Bond. Under Insuring Clause 4, Federal agreed to pay Flagstar for: "Loss resulting directly from: Forgery on ... any Negotiable Instrument (other than an Evidence of Debt)." Under Insuring Clause 5, Federal agreed to pay Flagstar for: "Loss resulting directly from [Flagstar] having, in good faith, for its own account ... acquired, sold or delivered, or given value, extended credit or assumed liability, in reliance on any original ... (2) deed, mortgage or other instrument conveying title to, or creating or discharging a lien on, real property [or] (5) Evidence of Debt ... which bears a Forgery." Flagstar alleges that its claim was covered under these clauses because the residential mort-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-cv-12094-LPZ-MKM ECF No. 27-3, PageID.595 Filed 04/22/11 Page 4 of 5

Page 3
Not Reported in F.Supp.2d, 2005 WL 1631338 (E.D.Mich.)
(Cite as: 2005 WL 1631338 (E.D.Mich.))

gage documents submitted by the Principals contained forged signatures which it relied on. *See* Complaint, ¶¶ 10, 15.

*3 To the contrary, Defendants argue that Flagstar cannot show that its loss "result[ed] directly" from the forgeries. In support, Defendants direct the Court to a line of cases which hold that an insured's claim is not covered, even if its claim involves a forgery, if the loss was really the result of fictitious or worthless collateral. *See Liberty Nat'l Bank v. Aetna,* 568 F.Supp. 860 (D.N.J.1983); *see also KW Bancshares, Inc. v. Syndicates of Underwriters,* 965 F.Supp. 1047 (W.D.Tenn.1997).

In *Liberty National,* a bank sought recovery under a bond policy (similar to the one in the present case) for a loss it had incurred from making a loan. The bank's loan had been secured by certificates of deposit. The loan was never repaid and the bank later discovered that the certificates of deposit were worthless. The bank argued that its loss was the result of forgeries and that the loss was covered under the bond policy. The court disagreed, explaining that:

 The bond insures that the documents submitted to the bank in connection with a loan are genuine and authentic. If they are not, and a loss is caused thereby, the bonding company guarantees the loss. On the other hand, the bonding company does not guarantee the truth of said documents. If they are not truthful, and a loss results therefrom, it is not guaranteed.

 The allocation of such losses undoubtedly arises from the practicality of the situation. A bank cannot protect against counterfeit and forged documents. It can, on the other hand, investigate the assertions made therein through credit checks, appraisals, title searches, financial statements and the like.

 In this particular case the documents relied upon were not counterfeit but may have been forged. But even if counterfeit and forged, the loss sustained by the Bank was not caused by the lack of authenticity or genuineness of the documents. On the contrary, the loss was caused by the fact that the statements contained in the document were not true. The assets represented thereby did not exist. If the documents were authentic and their signatures genuine and authorized, the loss nonetheless would have occurred. The failure of the security was not because they were counterfeit or forged, but solely because the assets purportedly represented thereby were nonexistent. This loss falls upon the Bank and not the bonding company by the terms and intent of the bond. Summary judgment for the bonding company on these issues is therefore appropriate.

*Liberty Nat'l Bank v. Aetna,* 568 F.Supp. 860, 863.

In *KW Bancshares,* a bank sought recovery under a bond policy for a loss it had incurred when it based a loan on a forged letter which asserted that the loan applicant was receiving a bonus. The court denied the bank recovery for the same reason that the court in *Liberty National* did. Even had there been no forgery and the letter had been genuine, the bank would have still suffered a loss because the assertions in the letter were not true: the loan applicant was not receiving a bonus. Accordingly, the bank's loss resulted not from the forgery, but because the collateral used to secure the loan was worthless. The court concluded that such a loss was not covered by the bond.

*4 Flagstar does not dispute the above caselaw. Instead, Flagstar relies on the standard of review for a 12(b)(6) motion to dismiss. Flagstar asserts that the question of whether the loan involved fictitious or worthless collateral is a question of fact that needs to be further developed. At the motion to dismiss stage, however, Flagstar asserts that the Court must accept its allegations as the Plaintiff as true.

The Court is sympathetic to Defendants' argument that the loans were based on worthless collat-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-cv-12094-LPZ-MKM ECF No. 27-3, PageID.596 Filed 04/22/11 Page 5 of 5

Page 4
Not Reported in F.Supp.2d, 2005 WL 1631338 (E.D.Mich.)
(Cite as: 2005 WL 1631338 (E.D.Mich.))

eral and thus not covered by the bond. Nevertheless, the Court agrees with Flagstar that the facts need to be further developed so that the Court can determine whether the 48 residential mortgage transactions were worthless collateral. It is not for the Court to make this factual determination in disposing a 12(b)(6) motion to dismiss.

C. Whether Flagstar has a Claim under Insuring Clause 9

Flagstar also alleges that it has a claim under Insuring Clause 9 of the Bond. Under Insuring Clause 9, Federal agreed to pay Flagstar for:

Loss resulting directly from [Flagstar] having in good faith, in connection with any Loan, accepted, received or acted on the validity of any:

(a) real property mortgage,

(b) real property deed of trust or like instrument pertaining to realty, or

(c) assignment of such mortgage, deed or trust or like instrument

which proves to have been defective by reasons of:

(1) the signature of any person on such document having been obtained through trick, artifice, fraud, or false pretenses ...

Defendants argue that, "[b]y its very terms, Insuring Clause 9 does not apply to claims involving *forged* loan documents," but only applies when genuine signatures were procured by "trick, artifice, fraud, or false pretenses." Federal's Motion to Dismiss, at 13. The Court agrees.

Flagstar admits in ¶ 10 of its Complaint that the signatures on the mortgage documents used as collateral for the loans were forged. Unlike Insuring Clauses 4 and 5 (see previous section), Insuring Clause 9 does not protect against forged signatures. Instead, Insuring Clause 9 protects against the obtaining of genuine signatures by fraud. Because Flagstar's Complaint does not allege the existence of genuine signatures, the Court will dismiss Count III of Flagstar's Complaint.

Flagstar tries to avoid dismissal by asserting in its response brief that *some* of the signatures on the mortgage documents were not forged. The Court is unpersuaded. Flagstar has not shown that any genuine signatures (such as that of a notary or witness), were obtained by "trick, artifice, fraud, or false pretenses." Accordingly, Count III fails to state a valid claim under Insuring Clause 9.

V. CONCLUSION

For the above reasons, Defendants' Motion to Dismiss is GRANTED, in part. The Court HEREBY DISMISSES Count III (Coverage under Insuring Clause 9) of Plaintiff's Complaint. As to Count I (Insuring Clause 4) and Count II (Insuring Clause 5), the Court HEREBY DENIES Defendants' Motion to Dismiss.

*5 IT IS SO ORDERED.

CERTIFICATE OF SERVICE
VERLINDE, J.

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 12, 2005.

E.D.Mich.,2005.
Flagstar Bank, FSB v. Federal Ins. Co.
Not Reported in F.Supp.2d, 2005 WL 1631338 (E.D.Mich.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.