# Exhibit 4

Westlaw.

Slip Copy, 2010 WL 2649874 (N.D.Ill.)
(Cite as: 2010 WL 2649874 (N.D.Ill.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
AT & T CAPITAL SERVICES, INC., a Delaware corporation, and SBC Global Services, Inc., a Delaware corporation, Plaintiffs,
v.
SHORE FINANCIAL SERVICES, INC., a Michigan corporation, Defendant.

No. 09 CV 1360.
June 30, 2010.

West KeySummary**Telecommunications** 372 812

372 Telecommunications
    372III Telephones
        372III(E) Construction, Equipment and Maintenance
            372k812 k. Sale or Lease of Equipment. Most Cited Cases

    Lessors of telecommunications equipment adequately stated a quantum meruit claim against lessee upon which relief could be granted and which could survive dismissal. If, as alleged, lessee received goods and services and failed to compensate them accordingly, lessee could be held liable regardless of whether it executed lessor's acceptance certificates, in which lessee was to certify that all equipment at issue was delivered to lessee and installed and that lessee accepted the equipment. While recovery under a quantum meruit theory could be unavailable to lessors to the extent any of the express agreements were enforceable, quantum meruit was nonetheless available in the alternative to protect lessors from being denied recovery if the agreements were found to be unenforceable in whole or in part. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Stephanie D. Loughner, Paul R. Franke, III, Franke Greenhouse List & Lippitt LLP, Denver, CO, Andrew Malen Spangler, Jr., Chico & Nunes, P.C., Chicago, IL, for Plaintiffs.

Terence G. Banich, Gordon Elliot Gouveia, Shaw Gussis Fishman Glantz Wolfson & Towbin LLC, Chicago, IL, for Defendant.

*OPINION AND ORDER*
JOAN HUMPHREY LEFKOW, District Judge.
    *1 Plaintiffs AT & T Capital Services, Inc. ("AT & T Capital") and SBC Global Services, Inc. ("SBC") (collectively, "plaintiffs") filed a seven-count complaint against Shore Financial Services, Inc. ("Shore Financial") to recover equipment and money under a finance lease arrangement in which plaintiffs provided a telecommunications system to Shore Financial. Count I alleges breach of contract. Count II seeks recovery under a theory of quantum meruit. Count III seeks an order of replevin. Counts IV and V seek a declaratory judgment and an injunction, respectively, requiring Shore Financial to return the equipment to plaintiffs. Count VI alleges conversion. Lastly, Count VII seeks specific performance of the provisions in the leasing agreements that require Shore Financial to return the equipment to plaintiffs upon default. Shore Financial moves to dismiss or transfer the case for improper venue or, in the alternative, to dismiss the complaint for failure to state a claim upon which relief may be granted. Shore Financial also moves for a change of venue. For the reasons set forth below, Shore Financial's motion to dismiss for improper venue [# 31] is denied, its motion to dismiss for failure to state a claim [# 31] is granted in part and denied in part, and its motion for change of venue [# 28] is denied.

**JURISDICTION**
    According to the complaint, AT & T Capital is a Delaware corporation with its principal place of business in Hoffman Estates, Illinois, and SBC is a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Delaware corporation with its principal place of business in Chicago, Illinois. Shore Financial is a Michigan corporation with its principal place of business in Birmingham, Michigan. Plaintiffs seek recovery of at least $541,357.21 under agreements with Shore Financial. Thus, the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

### ALLEGATIONS[FN1]

FN1. This section is derived from the complaint and documents attached to Shore Financial's motion to dismiss that are referred to in the complaint and central to plaintiffs' claims. *See McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir.2006).

Starting in 2003, Shore Financial leased telecommunications equipment from plaintiffs. The amended complaint contains allegations arising out of two separate transactions comprised of multiple documents: (1) the first transaction ("the 2003 Lease Agreements") involves Complete Lease Agreement No. 3436800-001 and Complete Lease Agreement No. 3436800-002; and (2) the second transaction ("the 2006 Agreements") involves Acceptance of Offer of Lease for Cisco hardware and installation services and SmartNet maintenance ("the Proposal"), the AT & T Master Lease Agreement, Supplementary Schedules No. 001-3436800-003 and No. 001-3436800-005 to the AT & T Master Lease Agreement, Acceptance Certificates ("the AT & T Acceptance Certificates"), the SBC Master Agreement, an addendum to the SBC Master Agreement, and CSO/Implementation Acceptance Certificates ("the SBC Acceptance Certificates"). Plaintiffs allege that Shore Financial has breached the terms of the agreements by failing to pay for equipment and services in the amount of at least $541,357.21. Additionally, plaintiffs allege that Shore Financial is in wrongful possession of equipment covered under the 2006 Agreements and has failed to surrender the equipment upon demand.

### I. The 2003 Lease Agreements

*2 Under the 2003 Lease Agreements, Ameritech Credit Corporation, doing business as SBC Capital Services, leased telecommunications equipment to Shore Financial for thirty-six months and required monthly payments under the two agreements of $2,106.54 and $803.89, respectively, plus applicable taxes. The 2003 Lease Agreements describe the equipment and contain acknowledgment fields above the signature lines that read, "Lessee hereby certifies that he/she has read and agrees to all of the terms and conditions set forth on pages 1-3 of this Complete Lease Agreement." Def.'s Mot. to Dismiss Group Ex. B-1 & B-2. In the acknowledgment fields, Shore Financial is listed as the lessee and Donald J. McKeon, Chief Operating Officer, signed on the company's behalf. McKeon also signed "Acceptance Certificates" six months after executing the 2003 Lease Agreements that state, "The undersigned Lessee hereby certifies that all Equipment described in Complete Lease Agreement ... has been delivered to Lessee and installed ... and that the Equipment is accepted by Lessee for all purposes under the Lease. Lessee hereby directs Lessor to pay the vendor for the Equipment." *Id.* The terms of the 2003 Lease Agreements provide:

> This lease shall be governed by the laws of the State of Illinois without regard to conflict of law principles. Any litigation arising out of or in relation to this Lease or any transaction contemplated hereby may be instituted in any federal or state court in Illinois, and Lessee waives any objection that it may now or hereafter have to venue in any such court and irrevocably submits to the jurisdiction of any federal or state court in Illinois in any such litigation.

*Id.*

### II. The Proposal

On October 26, 2005, a regional manager for SBC sent a letter to Shore Financial proposing a lease of Cisco hardware and installation services and SmartNet maintenance. The letter detailed, *inter alia,* the equipment, the equipment cost, and the monthly lease payments. In addition, the letter set the lease commencement date as March 1, 2005

and the lease term as sixty-three months with monthly payments in advance. The letter also sought Shore Financial's permission to file U.C.C. financing statements as necessary to take a security interest in the equipment. The Proposal contained statements, however, that "[t]his proposal is subject to final investment committee approval" and "[s]ubject to final review by Jeffrey Ishbia as to terms agreed upon in previous meetings." Def.'s Mot. to Dismiss Ex. B-3. Furthermore, the Proposal states that "SBC and Cisco agree to have system fully installed by 2-1-06." Id. Shore Financial executed the letter on October 26, 2005 and thereby "agreed to and accepted" the Proposal.

### III. The 2006 Agreements

In 2006, plaintiffs moved forward on the Proposal by setting up a finance lease arrangement with Shore Financial. These are the agreements primarily in dispute.

### A. The AT & T Master Lease Agreement and Supplementary Schedules

*3 On April 27, 2006, Shore Financial's Chairman of the Board, Jeffrey Ishbia, signed the AT & T Master Lease Agreement, which states, "The parties agree that this Lease is a Finance Lease as defined by Section 2A-103(1)(g) of the Uniform Commercial Code." Def.'s Mot. to Dismiss Ex. B-4. FN2 The AT & T Master Lease Agreement contains only terms and conditions relating to the leasing arrangement but was "executed in conjunction with one or more written schedules (Supplementary Schedules)." Id. The relationship between the AT & T Master Lease Agreement and the Supplementary Schedules is that "[t]he terms and conditions contained [in the AT & T Master Lease Agreement] [ ] apply to each Supplementary Schedule that is properly executed and made subject to such terms and conditions, as if a separate Lease were executed for each Supplementary Schedule." Id. Besides giving effect to the terms and conditions of the AT & T Master Lease Agreement, the Supplementary Schedules also describe the equipment covered by the lease. Thus, the applicability of the AT & T Master Lease Agreement with respect to the equipment is described as follows: "Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Equipment described on any Supplementary Schedules executed in conjunction herewith and declared to be and to constitute a part of the Equipment leased hereunder ... on the terms and conditions set forth herein and in such Supplementary Schedules." Id. In addition, because the AT & T Master Lease Agreement was to operate as a Finance Lease, the agreement provided for Shore Financial's assignment of any supply contracts to AT & T Capital. Specifically, the agreement states that "[b]y its execution and delivery of each Supplementary Schedule, Lessee hereby ... assigns and transfers to Lessor all Lessee's right, title and interest in and to any purchase order, license, contract or arrangement entered into by Lessee with any supplier for the Equipment." Id. This provision anticipated assignment of the SBC Master Agreement and addendum discussed in the next section. The rental payments for the equipment were to be determined by reference to the Supplementary Schedules. Like the 2003 agreement, Section 20 of the AT & T Master Lease Agreement provides:

> FN2. The comments to the U.C.C. provide an informative description of a finance lease arrangement: "A finance lease is the product of a three party transaction. The supplier manufactures or supplies the goods pursuant to the lessee's specification .... After the prospective finance lease is negotiated, a purchase order, sales agreement, or lease agreement is entered into by the lessor (as buyer or prime lessee) or an existing order, agreement or lease is assigned by the lessee to the lessor, and the lessor and the lessee then enter into a lease or sublease of the goods. Due to the limited function usually performed by the lessor, the lessee looks almost entirely to the supplier for representations, covenants and warranties." U.C.C. § 2A-103(1)(g) cmt. g.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2649874 (N.D.Ill.)
(Cite as: 2010 WL 2649874 (N.D.Ill.))

This lease shall be governed by the internal laws of the State of Illinois. Any litigation arising out of or relating to this Lease or any transaction contemplated hereby may be instituted in any federal or state court in Illinois, and Lessee waives any objection that it may now or hereafter have to venue in any such court and irrevocably submits to the jurisdiction of any federal or state court in Illinois in any such litigation.
*Id.*

The two Supplementary Schedules referred to in the complaint are identical in format. Shore Financial is listed as the lessee, and AT & T Capital is listed as the lessor. The schedules contain, *inter alia,* a description of the equipment, the cost of the equipment, payment amounts, and the lease term. Above the signature lines for Shore Financial and AT & T Capital, the schedules read:

**\*4** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the above-described equipment on the terms and conditions set forth herein and in Master Lease Agreement between Lessor and Lessee. To the extent that any of the provisions of the Master Lease Agreement conflict with any of the terms contained in this Supplementary Schedule, the terms of this Supplementary Schedule shall control.

Def.'s Mot. to Dismiss Exs. B-6 & B-7. In addition, each Supplementary Schedule corresponded with one of the AT & T Acceptance Certificates in which Shore Financial was to certify that "all Equipment described in the Supplementary Schedule has been delivered to Lessee and installed ... and that the Equipment is accepted on (date) by Lessee. Lessee hereby directs Lessor to pay the supplier for the Equipment and commence the Lease." *Id.* Neither the Supplementary Schedules nor the AT & T Acceptance Certificates were executed by Shore Financial.

**B. The SBC Master Agreement (the Supply Agreement) and Addendum**
On May 31, 2006, Jeffrey Ishbia, on behalf of Shore Financial, executed the SBC Master Agreement. The SBC Master Agreement contains warranties, payment and billing information, remedies for termination, and other terms and conditions applicable to any addenda executed by the parties, which are to be construed as "coterminous" with the SBC Master Agreement. Def.'s Mot. to Dismiss Ex. B-5. Section 3.12 of the SBC Master Agreement reads, "This Agreement will be governed by the laws of Texas, without regard to its conflicts of law rules." *Id.* The SBC Master Agreement does not contain a forum selection provision.

Shore Financial also executed an addendum under the SBC Master Agreement for the purchase, installation, and maintenance of Cisco AVVID and IPCC equipment. The section of the addendum titled "Scope" explains that "[t]his Addendum covers SBC's sale and [Shore Financial's] purchase of Equipment and Services described in this Addendum." *Id.* The terms of the addendum also state that "[i]f all lease documentation is not executed and received by SBC-CS as required ... [Shore Financial] agrees to and will pay the Total Purchase Price upon receipt of an invoice." *Id.* In addition to the signed addendum, on June 22 and 23, 2006, Shore Financial's Director of IT signed the SBC Acceptance Certificates certifying that SBC installed the equipment and provided training under the terms and conditions of the agreements.

## ANALYSIS
**I. Choice of Law**
Before the court can address Shore Financial's motions, it must determine which states' laws apply to the agreements. The 2003 Lease Agreements and the AT & T Master Lease Agreement contain Illinois choice of law provisions. The SBC Master Agreement, on the other hand, contains a Texas choice of law provision. Shore Financial does not contest the validity of the Illinois choice of law provision in the 2003 Lease Agreements, but it argues that the 2006 Agreements are unenforceable because they were never accepted and that Michigan substantive law should apply instead. Plaintiffs re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2649874 (N.D.Ill.)
(Cite as: 2010 WL 2649874 (N.D.Ill.))

Page 5

spond by arguing that the 2006 Agreements were accepted and enforceable.

**\*5** "Federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine the applicable substantive law." *Hinc v. Lime-O-Sol Co.,* 382 F.3d 716, 719 (7th Cir.2004) (citing *Jupiter Aluminum Corp. v. Home Ins. Co.,* 225 F.3d 868, 873 (7th Cir.2000)). When an agreement contains a choice of law provision, Illinois courts apply Section 187 of the Restatement (Second) of Conflict of Laws. *Hall v. Sprint Spectrum L.P.,* 876 N.E.2d 1036, 1041, 376 Ill.App.3d 822, 315 Ill.Dec. 446 (Ill.App.Ct.2007) (citing *Maher & Assocs., Inc. v. Quality Cabinets,* 640 N.E.2d 1000, 1006, 267 Ill.App.3d 69, 203 Ill.Dec. 850 (Ill.App.Ct.1994)). Under Section 187,

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1971). In the absence of a choice of law provision, Illinois courts apply a "most significant contacts" test for contract claims. *Hinc,* 382 F.3d at 719 (citing *Ruiz v. Blentech Corp.,* 89 F.3d 320, 323-24 (7th Cir.1996)). Under the most significant contacts test, the court considers "the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicil [e], residen[ce], place of incorporation, and business of the parties." *Id.* (quoting *Wildey v. Springs,* 47 F.3d 1475, 1483 (7th Cir.1995)) (alteration in original).

**A. The AT & T Master Lease Agreement**

Shore Financial signed the AT & T Master Lease Agreement, which contains a choice of law provision providing that Illinois law governs the agreement. The Supplementary Schedules listing what equipment was to be subject to the AT & T Master Lease Agreement, however, were never signed by Shore Financial. Shore Financial argues that the schedules were never properly executed and made subject to the terms of the AT & T Master Lease Agreement, as that agreement provides that the "[t]he terms and conditions contained herein shall apply to each Supplementary Schedule *that is properly executed."* Def.'s Mot. to Dismiss Ex. B-4 (emphasis added). While Shore Financial may be deemed to have accepted the equipment listed on the Supplementary Schedules, as will be discussed below, the court will also consider whether the choice of law clause in the AT & T Master Lease Agreement may be imputed to the Supplementary Schedules if acceptance is later proven not to be the case.

In *Miyano Machinery USA, Inc. v. Zonar,* the defendant presented a counterclaim alleging the tort of bad faith denial of a contract against a plaintiff who denied the existence of an agreement. No. 92 C 2385, 1994 WL 233649, at \*1 (N.D.Ill. May 23, 1994). The tort of bad faith denial of a contract existed under California law but not Illinois law. *Id.* The defendant argued that Illinois would apply the choice of law provision from the agreement, which stated, "The validity, interpretation and performance of this Agreement shall be controlled by and construed under the laws of the State of California." *Id.* at \*2. The plaintiff, on the other hand, argued that the defendant's tort claim fell outside the scope of this clause. *Id.* The court, applying Illinois conflicts law, found that "California's recognition of what is essentially a bad faith breach cause of action is inextricably tied to contractual issues," *id.,* and applied the choice of law provision broadly to address a tort claim arising out of the alleged contractual arrangement. *See id.*

**\*6** Similarly, in *Midwest Enterprises, Inc. v.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2649874 (N.D.Ill.)
(Cite as: 2010 WL 2649874 (N.D.Ill.))

Page 6

*Generac Corp.*, the plaintiff argued that Illinois law should apply to its unjust enrichment claim that arose out of a contract dispute. No. 91 C 2229, 1991 WL 169059, at *2 (N.D.Ill. Aug.27, 1991). The contract contained a choice of law provision stating that the contract was to be "governed by and construed in accordance with the laws of the State of Wisconsin." *Id.* The court read a choice of law provision broadly to encompass claims related to a contractual arrangement, holding that, under Illinois conflict of law rules, the plaintiff's unjust enrichment claim was "closely related to its contractual relationship" with the defendant and therefore applied the Wisconsin choice of law provision. *Id.*

Viewing the transaction at issue here in light of *Miyano Machinery* and *Midwest Enterprises*, the court would be compelled to apply Illinois law to plaintiffs' claims arising out of the AT & T Master Lease Agreement. When Shore Financial executed the AT & T Master Lease Agreement, it had notice that the transaction was structured with regard to Illinois law. But most importantly, application of the Illinois choice of law provision is appropriate because plaintiffs' claims arise out of what could essentially be viewed as a failed business relationship contemplated under the AT & T Master Lease Agreement; therefore, such claims should be viewed under the law that both parties intended to apply to that relationship. Both *Miyano Machinery* and *Midwest Enterprises*, while not factually identical to the instant case, offer support for this conclusion. In both cases, the courts interpreted an express choice of law provision broadly to encompass claims that were "closely related" to the parties' contractual arrangements. While Shore Financial did not sign the Supplementary Schedules, it did execute the AT & T Master Lease Agreement, which contained an Illinois choice of law provision that applied to "[t]his Lease." Thus, the parties' choice of law provision can be interpreted broadly so that it also covers claims "closely related" to that agreement. The court will therefore apply Illinois law in accordance with the choice of law provision so long as it is found appropriate under Section 187 of the Restatement (Second) of Conflict of Laws.

Section 187 of the Restatement requires the court to apply the parties' choice of law provision unless one of the exceptions is met. *See* Restatement (Second) of Conflict of Laws § 187(2). The first exception does not apply, as Illinois clearly has a substantial relationship to the transaction: AT & T Capital's principal place of business is in Illinois. The second exception also does not apply. Even if Michigan has a "materially greater interest" than Illinois in resolving this dispute, there is no basis for inferring that application of Illinois law would run afoul of a fundamental policy in Michigan. Therefore, application of the Illinois choice of law provision in the AT & T Master Lease Agreement is appropriate under Illinois conflict of law rules.

**B. The SBC Master Agreement and the 2003 Lease Agreements**

*7 Neither party specifically addresses the applicability of the Texas choice of law provision in the SBC Master Agreement. Shore Financial argues that Michigan substantive law should apply to the 2006 Agreements; plaintiffs never specifically address the applicability of the Texas choice of law provision but contend that the 2006 Agreements are valid and enforceable. The exhibits attached to Shore Financial's brief indicate that Shore Financial executed the SBC Master Agreement, an addendum relating to the sale of equipment and services, and the SBC Acceptance Certificates. Furthermore, Shore Financial advances no arguments that application of Texas law is inconsistent with Section 187 of the Restatement. In the absence of any real argument to the contrary, the court finds that Texas law will apply to any claims relating to the SBC Master Agreement.

Lastly, Shore Financial concedes that the 2003 Lease Agreements contain an Illinois choice of law provision. Thus, to the extent plaintiffs' claims arise out of the 2003 Lease Agreements, Illinois law will apply.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**II. Motion to Dismiss for Improper Venue**

Shore Financial moves to dismiss or transfer the case for improper venue pursuant to Rule 12(b)(3). In ruling on motions to dismiss for improper venue, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, No. 07-CV-1394, 2008 WL 5423553, at *2 (N.D.Ill.Dec.29, 2008) (citing *Interleave Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 913 (N.D.Ill.2003)). The plaintiff bears the burden of establishing proper venue. *Id.* The court must also "resolve any factual conflicts in the parties' submissions in favor of the plaintiff and draw any reasonable inferences from those facts in the plaintiff's favor." *Id.*

"[A] forum-selection clause will be enforced unless enforcement would be unreasonable or unjust or the provision was procured by fraud or overreaching." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir.1992); *see also Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 23, 157 Ill.App.3d 85, 109 Ill.Dec. 400 (Ill.App.Ct.1987). "[O]rdinarily the parties' contractual choice of forum should be overridden only if that choice would impose significant costs on third parties or on the judicial system." *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir.2007). Absent a valid and enforceable forum selection clause, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a).

Shore Financial contends that venue in this court is improper for three reasons: (1) the forum selection clause in the AT & T Master Lease Agreement, which Shore Financial executed, is unenforceable because it was subject to the conditions precedent that plaintiffs complete the project and that Shore Financial execute the AT & T Acceptance Certificates; (2) the SBC Master Agreement does not contain a forum selection clause; and (3) Shore Financial executed the AT & T Master Lease Agreement under economic duress. These arguments are unpersuasive.

*8 Shore Financial argues that the forum selection clause in the AT & T Master Lease Agreement is unenforceable because it was subject to conditions precedent. The forum selection clause, however, took immediate effect upon Shore Financial's execution of the AT & T Master Lease Agreement, as evidenced from its language. The clause reads,

> Any litigation arising out of or relating to this Lease or any transaction contemplated hereby may be instituted in any federal or state court in Illinois, and Lessee waives any objection that it may now or hereafter have to venue in any such court and irrevocably submits to the jurisdiction of any federal or state court in Illinois in any such litigation.

Def.'s Mot. to Dismiss Ex. B-4. The forum selection clause does not apply merely to disputes dependent on the enforceability of the AT & T Master Lease Agreement but, more broadly, to "any transaction contemplated" by or litigation "relating to" the AT & T Master Lease Agreement. There is no doubt, and Shore Financial does not contend otherwise, that this suit relates to the AT & T Master Lease Agreement and, at a minimum, addresses a "transaction contemplated" under that agreement. *See Nemeth v. World Telecom Group, Inc.*, No. 94 C 2034, 1994 WL 589546, at *1 (N.D.Ill. Oct.25, 1994) (finding that where parties agreed to forum selection clause covering "all claims, disputes and other matters between the parties to this agreement," the clause covered issues "aris[ing] out of the parties' business relationship"); *Advent Elecs., Inc. v. Samsung Semiconductor, Inc.*, 709 F.Supp. 843, 846 (N.D.Ill.1989) (finding that forum selection clause covering "[a]ny litigation under this Agreement" was intentionally broad so as to cover disputes arising after termination of the agreement).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Shore Financial's argument that plaintiffs do not establish proper venue with respect to claims arising under the SBC Master Agreement, which does not contain a forum selection clause, is unpersuasive as well. The AT & T Master Lease Agreement and the SBC Master Agreement are essentially separate documents, a supply contract and a finance lease, governing one large transaction. Considering the breadth of the forum selection clause in the AT & T Master Lease Agreement, it would have been reasonable for SBC to assume that the entire transaction would be subject to the Illinois forum selection clause in the AT & T Master Lease Agreement: plaintiffs actually provided as such by making Illinois a proper venue for any "transaction contemplated" by the AT & T Master Lease Agreement, of which the SBC Master Agreement was one. The court can find no reason why a broad forum selection clause governing all transactions contemplated under a finance lease arrangement should not be applied to claims arising out of a contract integral to that arrangement. As such, Shore Financial's argument must be rejected.

Lastly, Shore Financial argues that it signed the 2006 Agreements under economic duress.[FN3] "Economic duress is a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of one's own free will." *Inland Land Appreciation Fund, L.P. v. County of Kane,* 800 N.E.2d 1232, 1238, 344 Ill.App.3d 720, 279 Ill.Dec. 649 (Ill.App.Ct.2003) (citing *Hurd v. Wildman, Harrold, Allen & Dixon,* 707 N.E.2d 609, 614, 303 Ill.App.3d 84, 236 Ill.Dec. 482 (Ill.App.Ct.1999)). "The acts or threats complained of must be wrongful; however, the term 'wrongful' is not limited to acts that are criminal, tortious, or in violation of a contractual duty, but extends to acts that are wrongful in a moral sense as well." *Id.* (citing *Hurd,* 236 Ill.Dec. 482, 707 N.E.2d at 614). In support, Shore Financial submits the affidavit of Jeffrey Ishbia, which states that he signed the lease documents because plaintiffs threatened to "immediately terminate Shore's telephone service and thereby put[ ] Shore out of business." Def.'s Mot. to Dismiss Ex. C. Plaintiffs respond with affidavits of three employees, one of whom actually signed the AT & T Master Lease Agreement, in which all three employees claim that they are unaware of any threats that would support Shore Financial's argument of duress.

> FN3. The court will only consider whether Shore Financial executed the AT & T Master Lease Agreement under economic duress because that is the agreement containing the Illinois forum selection clause.

*9 Even assuming that the threat to terminate service amounts to duress, the court is confronted with a "factual conflict" between the parties' affidavits. Shore Financial's affidavit claims that plaintiffs threatened to shut off its telephone service; plaintiffs' affidavits say there were no such threats. The court is directed under these circumstances to draw reasonable inferences in favor of plaintiffs and resolve the conflict in their favor. Accordingly, Shore Financial's motion to dismiss or transfer the case for improper venue will be denied.

**III. Motion to Change Venue**

Shore Financial also moves the court for a change of venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Michigan. Section 1404(a) permits the court to transfer a case "[f]or the convenience of parties and witnesses, [and] in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A transfer under section 1404(a) must satisfy three requirements: "(1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice." *Ritchie Capital Mgmt., LLC v. Jeffries,* No. 09 CV 07228, 2010 WL 768877, at *2 (N.D.Ill. Mar.4, 2010) (quoting *Amoco Oil Co. v. Mobil Oil Corp.,* 90 F.Supp.2d 958, 959 (N.D.Ill.2000)) (internal quotation marks omitted). "The party challenging venue using §

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2649874 (N.D.Ill.)
**(Cite as: 2010 WL 2649874 (N.D.Ill.))**

1404(a) has the burden of demonstrating that the requested venue is more convenient for the parties or that the transfer would serve the interest of justice." *Id.* (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir.1986)). Additionally, "[t]he trial court judge has the sound discretion as to whether to transfer a case." *Id.* (citing *Amoco*, 90 F.Supp.2d at 960). "On a motion to transfer venue, a forum-selection clause is relevant as a matter of convenience and as an interest of justice; it is 'a significant factor that figures centrally in the district court's calculus." *Merix Pharm. Corp. v. EMS Acquisition Corp.*, No. 09 C 5871, 2010 WL 481247, at *6 (N.D.Ill. Feb.4, 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). On the other hand, "a forum-selection clause, like any other relevant factor, 'should receive neither dispositive consideration nor no consideration." *Id.* (quoting *Stewart*, 487 U.S. at 31). As discussed above, venue is proper in this court. Venue and jurisdiction would also be proper in the Eastern District of Michigan because the property at issue is located within the district and performance was due there as well. Therefore, the relevant inquiry is whether a change of venue would serve the convenience of the parties and the interests of justice.

### A. Convenience of the Parties

*10 The court considers five factors when addressing the convenience of the parties: " '(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses." *Ritchie*, 2010 WL 768877, at *3 (quoting *Amoco*, 90 F.Supp.2d at 960). A valid forum selection clause, however, waives a party's right to argue that inconvenience is a reason to transfer the case. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989) (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757-58 (3d. Cir.1973)). As Shore Financial bound itself to the Illinois forum selection clause in the AT & T Master Agreement, it cannot now argue that it would be inconvenient for it to litigate in Illinois. This is not dispositive, though, as "only one of § 1404(a)'s factors-convenience of the parties-is within the parties' power to waive." *Id.* The court must still consider whether the convenience of witnesses or the interests of justice favor transfer of the case.

### B. Convenience of the Witnesses

The convenience of witnesses "often is viewed as the most important factor in the transfer of venue balance." *Commercial Coin Laundry Sys. v. Park P, LLC*, No. 08-CV-1853, 2008 WL 5059192, at *9 (N.D.Ill. Nov.21, 2008) (citation omitted). "[A] court should look beyond the number of witnesses to be called and instead examine the nature and quality of the witnesses' anticipated testimony with respect to the issues of the case." *Id.* (citing *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1168 (N.D.Ill.1995)). In addition, "[m]ore attention should be given to the location of non-party witnesses and witnesses not within the control of the parties because they cannot be made to testify in person if they reside outside the subpoena power of the Court." *Id.* (citing *Childress v. Ford Motor Co.*, No. 03C3656, 2003 WL 23518380, at *4 (N.D.Ill.Dec.17, 2003)).

Shore Financial claims that all of its anticipated witnesses and the majority of plaintiffs' anticipated witnesses reside in Michigan. It further claims that at least one non-party witness resides in Michigan. Plaintiffs respond that of their anticipated witnesses, fourteen are located in Illinois, fifteen are located in Michigan, thirteen are located in states other than Illinois and Michigan, and the location for three witnesses is unknown.[FN4] Additionally, plaintiffs also claim that one of their main witnesses, Brady Smith, the Executive Director of AT & T Capital Services, is located in Illinois.

> FN4. It is unclear how many of these witnesses with testimony are non-party witnesses. Plaintiffs state in their brief that these forty-five witnesses "either worked or currently work for AT & T." Pls.' Resp. to Mot. to Change Venue at 3.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

The court finds that the convenience of the witnesses is in neither party's favor. All but one of the anticipated witnesses that Shore Financial specifically identifies are party witnesses: as agents of Shore Financial, these witnesses are subject to the Illinois forum selection clause and may not claim inconvenience. And, even though the non-party witness identified by Shore Financial is outside the court's subpoena power, Shore Financial does not claim that the nonparty witness would be unable to testify. With respect to plaintiffs' witnesses, the parties that plaintiffs listed as potential witnesses are mainly party witnesses and evenly split in location between Illinois, Michigan, and outside Illinois and Michigan. There is no overwhelming disparity in the location of witnesses that would tend to favor either Illinois or Michigan. And, even though the main witness identified by plaintiffs resides in Illinois, it is unlikely there would be any undue difficulty for him if the case were litigated in Michigan. The convenience of the witnesses therefore weighs in neither parties' favor.

### C. The Interests of Justice

*11 In deciding a motion to change venue, the court must also consider "the interests of justice (or 'public interest factors'), which relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in [a particular] locale." *Merix Pharm.*, 2010 WL 481247, at *5 (citing *Methode Elecs., Inc. v. Delphi Auto. Sys., LLC*, 639 F.Supp.2d 903, 907 (N.D.Ill.2009)) (alteration in original). "The 'interest of justice' analysis focuses on the efficient administration of the judicial system, rather than on the private considerations of the litigants." *Commercial Coin,* 2008 WL 5059192, at *10.

With respect to the court's familiarity with the applicable law, as discussed above, Illinois and Texas law will govern the disputes in this case. Shore Financial assumed that Michigan substantive law would apply and that this factor would favor transfer to the Eastern District of Michigan. This is not the case, however. It is clear that this court has greater familiarity with the law of Illinois, while neither court would have a greater familiarity with Texas law. Thus, this factor does not promote transfer of the case to the Eastern District of Michigan.

As to the next factor-how quickly the case will proceed to trial-Shore Financial argues that as of 2008, the average time for a case to get to trial in the Northern District of Illinois was 27.5 months as opposed to 24 months in the Eastern District of Michigan. First, the two-and-ahalf month differential between these two courts is trivial. Second, "[t]hese statistics are 'relatively meaningless in the section 1404(a) analysis. They consist of averages for cases of all types and tell the reader nothing about cases of the particular type at issue.' " *Bajer Design & Mktg., Inc. v. Whitney Design, Inc.*, No. 09 C 1815, 2009 WL 1849813, at *4 (N.D.Ill. June 26, 2009) (quoting *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F.Supp.2d 836, 841 (N.D.Ill.2009)). Accordingly, this factor does not suggest transfer is necessary or appropriate either.

The last factor addresses whether it is in the interests of a particular forum to address the controversy at issue. Shore Financial claims that Michigan has a public interest in deciding this case because the dispute arose out of events occurring in Michigan. This argument is unavailing. To the extent Michigan would have a public interest in resolving a dispute arising out of events occurring in Michigan, Illinois would have an equal interest in resolving a dispute that involved the alleged non-payment of money and wrongful possession of equipment which resulted in harm to companies in Illinois. As such, there is no decisive public interest in either forum for resolving the instant dispute. Thus, because Shore Financial has not shown that either the convenience of the parties or the interest of justice necessitates invalidating the Illinois forum selection clause in the lease agreements, its motion to change venue will be denied.

### IV. 12(b)(6) Motion to Dismiss

*12 A motion to dismiss under Rule 12(b)(6)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2649874 (N.D.Ill.)
**(Cite as: 2010 WL 2649874 (N.D.Ill.))**

asserts that the plaintiff's complaint "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page,* 291 F.3d 485, 486 (7th Cir.2002). To survive a motion to dismiss, the plaintiff must plead facts sufficient to establish the plausibility of the requested relief. *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *see also Bell Atl. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level." (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed.2004))). "It is also well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.' " *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir.2002) (quoting *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir.1994)). As a result, "[s]uch documents may be considered by a district court in ruling on the motion to dismiss." *Id.* (quoting *Wright,* 29 F.3d at 1248) (internal quotation marks omitted).

**A. Rule 10(b)**

The court addresses, as an initial matter, Shore Financial's claim that the amended complaint fails to comply with Rule 10(b) which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed.R.Civ.P. 10(b). Shore Financial argues that it does not have fair notice of the claims against it because, in the amended complaint, plaintiffs combined their claims under the 2006 Agreements and the 2003 Lease Agreements, which are two separate transactions. This argument does not have much traction. It is true that under Rule 10(b), "the main consideration is whether the claims are clear enough to give notice of the allegations to defendant." *Herrera v. Rector,* No. 03 CV 6377, 2004 WL 2047562, at *2 (N.D.Ill. Sep.13, 2004) (citing *Plummer v. Chi. Journeyman Plumbers' Local Union,* 452 F.Supp. 1127, 1144 (N.D.Ill.1978)). Nevertheless, it is within the court's discretion to determine whether a pleading should be amended or dismissed for failure to comply with Rule 10(b). *See id.* (citing *Three D Dep'ts, Inc. v. K Mart Corp.,* 670 F.Supp. 1404, 1409 (N.D.Ill.1987)). The court finds that Shore Financial has adequate notice of plaintiffs' claims against it. The amended complaint contains a listing of the equipment of which plaintiffs allege that Shore Financial is in wrongful possession. Additionally, plaintiffs allege that Shore Financial has breached both the 2003 Lease Agreements and the 2006 Agreements by failing to make required payments, for which they make other related claims and seek various forms of relief. It is unlikely that separating the 2003 Lease Agreements from the 2006 Agreements in the various claims would necessarily add more clarity. Accordingly, the court finds that Shore Financial has adequate notice of plaintiffs' claims against it and will deny its motion to dismiss the amended complaint for failure to comply with Rule 10(b).

**B. Breach of Contract**

**\*13** Shore Financial argues that the 2006 Agreements are unenforceable because they were subject to the condition precedent that Shore Financial sign the AT & T Acceptance Certificates. Plaintiffs respond that there were no conditions precedent and that, even if there were, those conditions were waived by Shore Financial's constructive acceptance of the equipment. Under Illinois and Texas law, "a condition precedent is some act that must be performed or event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform." *Hardin, Rodriguez, & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.,* 962 F.2d 628, 633 (7th Cir.1992) (citing *Kilianek v. Kim,* 548 N.E.2d 598, 600, 192 Ill.App.3d 139, 139 Ill.Dec. 213 (Ill.App.Ct.1989)); *see also Am.'s Favorite Chicken Co. v. Samaras,* 929 S.W.2d 617, 627

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(Tex.App.1996) ("A condition precedent is either a condition to the initial formation of a contract or a condition to an obligation to perform an existing agreement." (citation omitted)). "Whether an act is necessary to formation of the contract or to the performance of an obligation under the contract depends upon the facts of the case." *McAnelly v. Graves,* 467 N.E.2d 377, 379, 126 Ill.App.3d 528, 81 Ill.Dec. 677 (Ill.App.Ct.1984) (citing *Nat'l Dairymen Ass'n v. Dean Milk Co.,* 183 F.2d 349 (7th Cir.1950)); *see also Sheldon L. Pollack Corp. v. Falcon Indus., Inc.,* 794 S.W.2d 380, 383 (Tex.App.1990) ("In construing the meaning and intent of a contract, the court must look to the entire instrument and consider all of its provisions together.").

**1. AT & T Master Lease Agreement**

Shore Financial argues that the AT & T Master Lease Agreement is unenforceable with respect to the equipment listed in the Supplementary Schedules because the Supplementary Schedules and corresponding AT & T Acceptance Certificates were never signed. Signature of the Acceptance Certificates does not appear to be the only manner in which acceptance of the contract was possible, however. Uniform Commercial Code § 2A-206 provides that "[u]nless otherwise unambiguously indicated by the language or circumstances, an offer to make a lease contract must be construed as inviting acceptance in any manner and by any medium reasonable under the circumstances." The language of the documents at issue does not unambiguously indicate that signature was the only manner in which the terms of the AT & T Master Lease Agreement would become applicable to any equipment listed on the Supplementary Schedules. Because the court must take the allegations of the complaint as true and cannot on the record before it determine whether the formation of a contract regarding the equipment listed in the Supplementary Schedules was expressly conditioned on the signing of the Supplementary Schedules or the AT & T Acceptance Certificates, the possibility exists that a contract was formed by Shore Financial's retention of the equipment at is-

sue. *See* U.C.C. § 2A-515. The court cannot conclude at this stage that the offer was not constructively accepted and thus will not dismiss the breach of contract claim related to this equipment.

**2. SBC Master Agreement**

*14 The amended complaint also states a claim that Shore Financial breached the terms of the SBC Master Agreement. Shore Financial signed the SBC Master Agreement, the addendum, and the SBC Acceptance Certificates. The first paragraph of the SBC Master Agreement states that the agreement "is effective on the date of last execution." Def.'s Mot. to Dismiss Ex. B-5. Additionally, the addendum covering Shore Financial's purchase of Cisco AVVID and IPCC equipment, which Shore Financial signed, states that "[i]f all lease documentation is not executed and received ... Customer agrees to and will pay the Total Purchase Price upon receipt of an invoice." *Id.* These documents clearly bind Shore Financial to the SBC Master Agreement, and it agreed to pay the purchase price of the equipment upon receiving an invoice. Thus, the court will deny Shore Financial's motion to dismiss the breach of contract claim as it relates to the SBC Master Agreement.

**3. 2003 Lease Agreements**

Shore Financial contends that Plaintiffs' allegation that it breached the 2003 Lease Agreements is "speculative" and should therefore be dismissed. Plaintiffs respond that Shore Financial executed the 2003 Lease Agreements and did not pay accordingly. Under federal notice pleading, " '[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir.2009) (quoting *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)) (alterations in original). On the other hand, "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* Considering this balance, the court finds that the complaint adequately states a breach of contract

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2649874 (N.D.Ill.)
(Cite as: 2010 WL 2649874 (N.D.Ill.))

Page 13

claim in regard to the 2003 Lease Agreements. The allegation against Shore Financial is that they did not make payments pursuant to the 2003 Lease Agreements. In contrast to a bare legal conclusion, the allegation provides the basis on which plaintiffs seek relief. *Id.* Shore Financial's motion to dismiss the breach of contract claim will be denied as to the 2003 Lease Agreements.

**C. Quantum Meruit**

Under Illinois and Texas law, "[t]o recover under a *quantum meruit* theory, the plaintiff must prove that: (1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) defendant accepted this service, and (4) no contract existed to prescribe payment for this service." *Installco Inc. v. Whiting Corp.*, 784 N.E.2d 312, 317-18, 336 Ill.App.3d 776, 271 Ill.Dec. 94 (Ill.App.Ct.2002) (citing *Canel & Hale, Ltd. v. Tobin*, 710 N.E.2d 861, 868, 304 Ill.App.3d 906, 238 Ill.Dec. 64 (Ill.App.Ct.1999)); *see also Jaramillo v. Portfolio Acquisitions, LLC*, No. 14-08-00939-CV, 2010 WL 1197669, at *7 (Tex.App. Mar.30, 2010). Shore Financial argues that because it never signed the AT & T Acceptance Certificates, plaintiffs cannot establish acceptance of services, a requirement of a quantum meruit claim. Additionally, Shore Financial contends that plaintiffs' quantum meruit claim must be dismissed as to the 2003 Lease Agreements because there was an express contract.

*15 Shore Financial's first argument-that it never accepted plaintiffs' services because it never signed the AT & T Acceptance Certificates-is unavailing as discussed above. Under a quantum meruit theory, there is by definition no defined manner of acceptance, which is why it is considered a "quasi-contractual" remedy. *Installco Inc.*, 271 Ill.Dec. 94, 784 N.E.2d at 318 (quoting *Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co.*, 643 N.E.2d 245, 251, 267 Ill.App.3d 742, 205 Ill.Dec. 294 (Ill.App.Ct.1994)). It is also an equitable remedy and must be applied "in the interest of doing justice." *K. Miller Constr. Co. v. McGinnis*, 913 N.E.2d 1147, 1154, 394 Ill.App.3d 248, 332 Ill.Dec. 857 (Ill.App.Ct.2009); *see also In re Guardianship of Fortenberry*, 261 S.W.3d 904, 915 (Tex.App.2008). Thus, where a defendant takes delivery of goods and services and then refuses to pay, justice requires that this be deemed an acceptance of a plaintiff's services regardless of whether the defendant refused to sign a document expressly accepting the terms of a contract. Therefore, if Shore Financial received goods and services and failed to compensate plaintiffs accordingly, it may be held liable under a theory of quantum meruit regardless of whether it executed the AT & T Acceptance Certificates. Because plaintiffs have alleged this to be the case, the court will not dismiss this claim on that theory.

Shore Financial's argument that plaintiffs' quantum meruit theory must be dismissed as to the 2003 Lease Agreements because there was an express contract is also unavailing. Plaintiffs cite to *Weydert Homes, Inc. v. Kammes* to argue that they may plead quantum meruit in the alternative to a breach of contract claim. 917 N.E.2d 64, 73, 395 Ill.App.3d 512, 334 Ill.Dec. 467 (Ill.App.Ct.2009). In *Weydert Homes, Inc.*, the trial court dismissed the plaintiff's quantum meruit claim because it found a "valid and binding" contract between the plaintiff and the defendant. *Id.* The appellate court specifically noted, however, that "[t]he fact that plaintiff pleaded the existence of a written contract does not preclude it from pleading *quantum meruit* in the alternative." *Id.* This is because quantum meruit is pleaded "so that the plaintiff may recover even if the contract is unenforceable." *Id.* (citing Black's Law Dictionary 1276 (8th ed.2004)). The Illinois Appellate Court ultimately reversed the trial court because its "findings regarding the contract were premature, as it was ruling on a motion addressed to the pleadings and had not considered any evidence either in support of a motion for summary judgment or at trial concerning the formation of, or performance of, the contract." *Id.* Therefore, while recovery under a quantum meruit theory may be unavailable to plaintiffs to the extent any of the agree-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ments are enforceable, quantum meruit is nonetheless available in the alternative to protect plaintiffs from being denied recovery if this court finds that the agreements were unenforceable in whole or in part. *See id.* Therefore, Shore Financial's motion to dismiss the claim for quantum meruit will be denied.

**D. Replevin**

*16 Shore Financial argues that plaintiffs' count for replevin should be dismissed with respect to the 2003 Lease Agreements, as the complaint does not describe the property to be replevied. Plaintiffs represent that they are not seeking replevin of any equipment provided under the 2003 Lease Agreements and agree to the voluntary dismissal of this count with respect to the 2003 Lease Agreements. Accordingly, count III will be dismissed with respect to the 2003 Lease Agreements.

**E. Declaratory Judgment**

Plaintiffs seek a declaratory judgment that Shore Financial is obligated to return all equipment pursuant to the 2003 Lease Agreements and the AT & T Master Lease Agreement. Shore Financial argues that the court should dismiss this count for declaratory relief because "traditional remedies" are available. This is contrary to the Declaratory Relief Act, which provides that "[i]n a case of actual controversy within its jurisdiction ... [a federal district court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The federal rules make it clear that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed.R.Civ.P. 57.

Shore Financial cites to *Cunningham Bros., Inc. v. Bail* for the proposition that "when the traditional remedy provides the parties with the procedural safeguards required by the law to insure the availability of a proper remedy, the courts, in exercising their discretion, may properly dismiss the declaratory judgment action." 407 F.2d 1165, 1169 (7th Cir.1969). This proposition does not apply to the present circumstances as the facts of *Cunningham Bros.* demonstrate. The plaintiff was a general contractor and the defendants were employees of a subcontractor "who were injured when the platform on which they were standing collapsed." *Id.* at 1167. The plaintiff sought a declaratory judgment that it was not liable under a state statute for any personal injuries to the defendants. *Id.* The court found that declaratory relief was inappropriate because "sustaining of plaintiff's suit in the instant case would force an injured party to litigate a claim which he may not have wanted to litigate at a time which might be inconvenient to him or which might precede his determination of the full extent of his damages, and in a forum chosen by the alleged tortfeasor." *Id.* at 1169. The court was therefore concerned that the plaintiff, facing potential liability for personal injuries, would deprive the defendants of time to assess their injuries and establish a proper claim. *See id.* No similar concerns are triggered by the instant case. Moreover, the Seventh Circuit has stated that "a declaratory judgment action should not be dismissed solely because a more traditional remedy is available." *Id.* As a result, neither the Declaratory Relief Act, the federal rules, nor *Cunningham Bros.* require dismissal of plaintiffs' count for declaratory relief merely because there are other remedies available. Accordingly, Shore Financial's motion to dismiss count IV will be denied.

**F. Injunction**

*17 Shore Financial argues that plaintiffs have failed to allege all the necessary requirements to state a claim for injunctive relief. Plaintiffs respond that they are not seeking a preliminary injunction or a temporary restraining order but rather asking the court to order an injunction for the return of the equipment at issue pursuant to Rule 65(d). It must first be noted that plaintiffs' amended complaint pleads an injunction as a separate claim. "[I]njunctive relief and specific performance are remedies, not independent causes of action." *Am. Nat'l Bank & Trust Co. of Chi. v. Allmerica Fin.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Life Ins. & Annuity Co.,* No. 02 C 5251, 2003 WL 1921815, at *4 (N.D.Ill. Apr.21, 2003). For injunctive relief to be appropriate, however, a plaintiff must plead that

> (1) no adequate remedy at law exists; (2) plaintiff will suffer irreparable harm absent injunctive relief; (3) the irreparable harm plaintiff will suffer absent injunctive relief outweighs the irreparable harm defendant will suffer if relief is granted; (4) the plaintiff has a reasonable likelihood of prevailing on the merits; and (5) the injunction will not harm the public interest.

*Id.* (citing *Somerset House, Inc. v. Turnock,* 900 F.2d 1012, 1014-15 (7th Cir.1990)). Plaintiffs' request for injunctive relief fails under the first element: they have not alleged that there is no adequate remedy at law. Moreover, plaintiffs request the court to grant injunctive relief requiring Shore Financial to return the equipment in its possession. The count for replevin in the amended complaint would achieve this result to the extent Shore Financial is found to be in wrongful possession of the equipment. Thus, a separate count seeking an injunction is superfluous. Shore Financial's motion to dismiss count V for an injunction will be granted.

**G. Conversion**

Shore Financial argues that it did not "assume" dominion or control over the equipment at issue and therefore the amended complaint fails to state a claim for conversion. Plaintiffs respond that conversion is available where it is alleged that a party "wrongfully detained" goods. The court agrees. The act of conversion is "any unauthorized act that deprives a person of his or her property permanently or for an indefinite time." *Colonial Funding, LLC v. Am. Empire Surplus Lines Ins. Co.,* 719 N.E.2d 1098, 1100, 308 Ill.App.3d 376, 241 Ill.Dec. 695 (Ill.App.Ct.1999) (citing *In re Thebus,* 483 N.E.2d 1258, 1260, 108 Ill.2d 255, 91 Ill.Dec. 623 (Ill.1985)); *see also Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 365 (Tex.App.2009) (citations omitted). "To state a cause of action for conversion, a plaintiff must allege: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Colonial Funding,* 241 Ill.Dec. 695, 719 N.E.2d at 1100 (citations omitted); *see also J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.,* 302 S.W.3d 515, 536 (Tex.App.2009) (citing *Augillard v. Madura,* 257 S.W.3d 494, 500 (Tex.App.2008)). In essence, "the subject of conversion is required to be an identifiable object of property of which the plaintiff was wrongfully deprived." *In re Thebus,* 91 Ill.Dec. 623, 483 N.E.2d at 1260; *see also Robinson v. Nat'l Autotech, Inc.,* 117 S.W.3d 37, 39 (Tex.App.2003) ("Basically, conversion is a wrongful deprivation of property.") (citing *Lone Star Beer, Inc. v. Republic Nat'l Bank of Dallas,* 508 S.W.2d 686, 687 (Tex.App.1974)). The fact that the complaint does not explicitly use a form of the term "assume" is not fatal to plaintiffs' claim. *See Jensen v. Chi. & W. Ind. R.R. Co.,* 419 N.E.2d 578, 593, 94 Ill.App.3d 915, 50 Ill.Dec. 470 (Ill.App.Ct.1981) ("The essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner thereof.... All that is required is that defendant exercise control over the chattel in a manner inconsistent with plaintiff's right of possession."). Plaintiffs have alleged that by refusing to return the equipment to them, Shore Financial is wrongfully depriving them of their property. This is enough to survive a motion to dismiss. Shore Financial's motion to dismiss count VI will be denied.

**H. Specific Performance**

*18 Shore Financial lastly seeks dismissal of count VII of the amended complaint requesting specific performance of the remedy provisions of the 2003 Lease Agreements and the AT & T Master Lease Agreement requiring Shore Financial to return the equipment upon default. A plaintiff requesting specific performance must allege: "(1) the existence of a valid, binding, and enforceable con-

Slip Copy, 2010 WL 2649874 (N.D.Ill.)
**(Cite as: 2010 WL 2649874 (N.D.Ill.))**

Page 16

tract; (2) plaintiff has complied with the terms of his contract or is ready, willing, and able to perform his part of the contract; and (3) defendant failed or refused to perform his part of the contract." *Am. Nat'l Bank & Trust Co. of Chi.*, 2003 WL 1921815, at *5 (quoting *Dixon v. City of Monticello*, 585 N.E.2d 609, 618, 223 Ill.App.3d 549, 165 Ill.Dec. 878 (Ill.App.Ct.1991)) (internal quotation marks omitted); *see also Cate v. Woods*, 299 S.W.3d 149, 152-53 (Tex.App.2009). On the other hand, "specific performance generally will not be granted where there is an adequate remedy at law." *Am. Nat'l Bank & Trust Co. of Chi.*, 2003 WL 1921815, at *5; *see also Pickard v. LJH Enters., Inc.*, No. 01-07-01105-CV, 2010 WL 1493105, at *3 (Tex.App. Apr.15, 2010).

Plaintiffs have not adequately alleged that specific performance is appropriate. The amended complaint seeks specific performance requiring Shore Financial to return the equipment under the 2003 Lease Agreements and the AT & T Master Lease Agreement. The amended complaint contains no allegation that plaintiffs do not have an adequate remedy at law. Furthermore, the claim for replevin would accomplish the purpose of repossessing the equipment to the extent Shore Financial is in wrongful possession of it. Thus, Shore Financial's motion to dismiss count VII of the complaint will be granted.

### *CONCLUSION AND ORDER*

For the foregoing reasons, Shore Financial's motion to dismiss for improper venue [# 31] is denied, its motion to change venue [# 28] is denied, and its motion to dismiss for failure to state a claim [# 31] is granted in part and denied in part. The claims for replevin regarding the 2003 Lease Agreements, injunctive relief, and specific performance are dismissed. Shore Financial is directed to answer the remaining claims by July 14, 2010.

N.D.Ill.,2010.
AT & T Capital Services, Inc. v. Shore Financial Services, Inc.
Slip Copy, 2010 WL 2649874 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.