# Exhibit 5

Not Reported in F.Supp.2d, 2005 WL 600297 (E.D.Pa.)
(Cite as: 2005 WL 600297 (E.D.Pa.))

Page 1

C
Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
INVENSYS INC.
v.
AMERICAN MANUFACTURING CORP.

No. Civ.A. 04-3744.
March 15, 2005.

Bernard L. Levinthal, Philadelphia, PA, Chad E. Clark, Douglas L. Prochnow, Stephen Landes, Wildman Harrold Allen & Dixon, LLP, Chicago, IL, for Plaintiff.

Lawrence S. Sher, Blank Rome LLP, Washington, DC, Matthew D'Annunzio, Blank Rome LLP, Philadelphia, PA, for Defendant.

*MEMORANDUM*
PADOVA, J.

*1 Presently before the Court in this breach of contract action is a Motion to Dismiss the Complaint filed by Defendant American Manufacturing Corporation (Doc. No. 3). For the reasons that follow, said Motion is granted.

I. BACKGROUND

This action was brought by Invensys Inc. against American Manufacturing Corporation for breach of contract, declaratory judgment, and specific performance. Plaintiff seeks to enforce the indemnity provision contained in an asset purchase agreement that was executed on August 1, 1997 (the "APA"). Pursuant to the APA, Defendant and two of its wholly owned subsidiaries, Limitorque Corporation and Limitorque of Canada, Ltd., sold certain assets of Defendant and substantially all of the subsidiaries' corporate assets (hereafter "AMC Limitorque") to LT Acquisition Company, Inc., Edward Vogt Valves, Inc.,[FN1] BTR Industries, LTD., BTR European Holdings B.V., BTR Australia PTY. LTD., and Canadian Worcester Controls Limited (collectively the "Buyers"), all of whom were indirect subsidiaries of BTR plc. (Compl. ¶ 5, APA at 1.) AMC Limitorque, the APA's subject entity, was in the business of manufacturing and distributing valves and actuators and, for some period of time, it included asbestos in its products. (*Id.* ¶¶ 6, 23.) Long before the APA was executed, however, AMC Limitorque had ceased including asbestos in its products. (*Id.* ¶ 23.)

> FN1. Edward Vogt Valves, Inc. was incorrectly titled Edward Valves, Inc. in the APA.

The APA contained several liability and indemnity clauses. Pursuant to these clauses, Defendant agreed to retain any liabilities not specifically assumed by the Buyers. (*Id.* ¶ 9, APA § 2.3.) The Buyers, in turn, specifically assumed those "[l]iabilities and obligations with respect to any product liability claim relating to products manufactured or sold by [AMC Limitorque] relating to the Business where the event giving rise to the claim occurs after [August 1, 1997] ..." (APA § 2.2.) In addition, the APA's indemnity clause provides that Defendant will

> indemnify and hold [Buyers] and their respective officers, directors and affiliates harmless against and in respect of any and all losses, costs, expenses, claims, damages, obligations and liabilities, including interest, penalties and reasonable attorneys' fees and disbursements ... which [Buyers] or any such person may suffer, incur or become subject to arising out of, based upon or otherwise in respect of: ...
>
> (c) any [liability not assumed by the Buyers];
>
> ... or
>
> (h) any other occurrence or event, except for those expressly assumed by Buyer[s] herein, arising out of or associated with the ownership

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2005 WL 600297 (E.D.Pa.)
**(Cite as: 2005 WL 600297 (E.D.Pa.))**

and operation of [AMC Limitorque] prior to [August 1, 1997].

(*Id.* § 7.1.)

In 1999, two years after the APA was executed, BTR plc merged with Siebe plc in a stock transaction, and eventually the merged corporation changed its name to Invensys plc. (Compl.¶¶ 15-16.) Invensys plc, as a result of these corporate transactions, succeeded to the Buyers' rights and obligations under the APA. (*Id.* ¶ 31.) On August 29, 1997, LT Acquisition Company, Inc., one of the Buyers, changed its name to Limitorque Corporation. (*Id.* ¶ 13.) In March 2002, Limitorque Corporation was converted into the newly created entity Limitorque LLC. (*Id.* ¶ 17.) That same month, Flowserve Corporation ("Flowserve") acquired all shares of the Edward Vogt Valve Company, the parent corporation of Limitorque LLC and one of the Buyers, from Invensys plc. (*Id.* ¶ 18.) In May 2002, Limitorque LLC was merged into Flowserve U.S. Inc., a subsidiary of Flowserve. (*Id.*) As part of its sale of Edward Vorgt Valves, Inc. to Flowserve, Invensys plc agreed to retain "any liability or obligation for Asbestos Claims ... with respect to products manufactured, used or sold" on or before the closing date of that transaction." (*Id.* ¶ 19.) Invensys plc further agreed to "indemnify, defend and hold [Flowserve] harmless" for any such asbestos liabilities. (*Id.*) The Flowserve Agreement of Sale also provided that Invesys plc would retain vis-a-vis Flowserve all rights to indemnification from Defendant pursuant to Section 71, (c) and 7.6 of the APA. (*Id.* ¶ 20.) In 2004, Invensys plc transferred all of its rights with respect to the APA, including all of its rights under the APA's indemnity provision, to Plaintiff, its indirect subsidiary. (*Id.* ¶ 21.)

*2 Flowserve has now been sued in various state courts by over 23,372 claimants in 72 separate asbestos cases for claims based on injuries that allegedly resulted from exposure to asbestos-containing products manufactured or sold by Limitorque Corporation at some time prior to August 1, 1997, the closing date of the APA. (*Id.* ¶¶ 22-23.) Acting in accordance with its obligations under the Flowserve Transaction, Plaintiff has been defending Flowserve in the underlying asbestos cases. (*Id.* ¶ 22.) Through the instant litigation Plaintiff, in turn, seeks to invoke the indemnity provisions contained in the APA and compel Defendant to defend and indemnify it in the underlying lawsuits. (*Id.* ¶¶ 24-25.)

II. LEGAL STANDARD

Defendant moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for failure to state a claim upon which relief may be granted and lack of subject matter jurisdiction. A Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction may challenge the court's jurisdiction on either "factual" or "facial" grounds. *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293, 300 (3d Cir.2002). In considering a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). By contrast, when determining facial attacks, e.g. attacks which contest the sufficiency of allegations of jurisdiction in the complaint, the court must accept as true the allegations set forth in the complaint. *Turicentro*, 303 F.3d at 300. On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of showing that jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991).

When determining a Motion to Dismiss pursuant Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). The court must accept as true all well pleaded facts in the complaint and view them in the light most fa-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 600297 (E.D.Pa.)
(Cite as: 2005 WL 600297 (E.D.Pa.))

Page 3

vorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993). A Rule 12(b)(6) motion will be granted when a Plaintiff cannot prove any set of facts, consistent with the complaint, which would entitle him or her to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

III. DISCUSSION

Defendant argues that the Court should dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) because: (i) Plaintiff's indemnification claim is premature and not ripe since the Complaint fails to establish that Plaintiff has suffered any injury in fact or that there is an actual case or controversy for the Court to decide; (ii) there is no duty to defend under the APA; and (iii) there are numerous factors, determinations and future events that would make any decision by the Court concerning Plaintiff's indemnification claims premature at this point. (Mot. at 3.) FN2

> FN2. The Court notes that Defendant also argues that the Complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiff has failed to establish that it has standing to enforce any indemnification rights under the APA, or that it, itself, has any possible liability to Flowserve. The question of standing, however, properly comes before the Court by means of a 12(b)(6) Motion. (*See, e.g., Rent Stabilization Assoc. of City of N.Y. v. Dinkins,* 5 F.3d 591, 594 n. 2 (2d Cir.1993) ( "[S]tanding and *subject matter* jurisdiction are separate questions. While standing, which is an issue of justiciability, addresses the question whether a federal court may grant relief to a party in the *plaintiff's* position, subject matter jurisdiction addresses the question whether a federal court may grant relief to *any* plaintiff given the claim asserted.") (emphasis in original) (citations omitted). Here, the Complaint properly pleads that Plaintiff has validly succeeded to the Buyers' rights and obligations under the APA, and that Plaintiff, under the terms of the Flowserve Agreement of Sale, has a duty to defend and indemnify Flowserve in the asbestos lawsuits. (*See* Compl. ¶¶ 12-21, 30-31.)

*3 This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. In diversity actions, the Court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Here, all causes of action alleged in the Complaint arise out of the APA, which contains a choice of law clause requiring that it be "construed and enforced" under Pennsylvania law. APA § 8.9. Under Pennsylvania law, "choice of law provisions in contracts will generally be given effect." *Smith v. Commonwealth Nat. Bank,* 384 Pa.Super. 65, 557 A.2d 775, 777 (Pa.Super.Ct.1989). The parties do not dispute that Pennsylvania law applies to this action pursuant to the APA's choice of law clause.

A. *Count One: Breach of Contract*

Defendant seeks the dismissal of Count One of the Complaint, which alleges a cause of action for breach of contract based on Defendant's refusal to indemnify and defend Plaintiff as allegedly required by the APA. Defendant argues that Plaintiff's claim for indemnification is premature and not ripe because Plaintiff has failed to establish that it has suffered any injury in fact or that there is an actual case or controversy for this Court to decide. Defendant also contends that Plaintiff's claim that Defendant has breached is contractual duty to defend Plaintiff should be dismissed because the APA does not contain any such duty.

1. Duty to indemnify

Defendant argues that Plaintiff's claim for breach of contract for failure to indemnify Plaintiff is not yet ripe for adjudication and should, therefore, be dismissed pursuant to Rule 12(b)(1). Under Pennsylvania law, "[c]laims for indemnification

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

arise only when the party seeking indemnity has made a payment on the underlying claim." *McClure v. Deerland Corp.*, 401 Pa.Super. 226, 585 A.2d 19, 22 (Pa.Super.Ct.1991). Accordingly, indemnification claims are premature until the aggrieved party makes actual payment on an underlying claim pursuant to a settlement or judgment. *Id.* at 22-23; *see also F.J. Schindler Equip. Co. v. Raymond Co.*, 274 Pa.Super. 530, 418 A.2d 533, 534 (Pa.Super.Ct.1980) ("[i]t is clear that before the right of indemnification arises, the indemnitor must in fact pay damages to a third party. Any action for indemnification before such payment, as in the present case, is premature.").

Here, it is undisputed that Plaintiff has not yet made any payment on an underlying judgment or settlement. Plaintiff argues that its claim for indemnification is nonetheless ripe because it has incurred, and continues to incur, attorney's fees and costs in connection with the underlying actions. However, "the mere expenditure of counsel fees does not constitute the accrual of a cause of action for indemnification." *McClure*, 585 A.2d at 23. Moreover, Section 7.1 of the APA only obligates Defendant to indemnify Plaintiff for reasonable attorneys fees, and "the appropriateness and reasonableness of the counsel fees and costs allegedly incurred to date cannot be determined until the underlying actions are resolved." *Id.* at 22-23. Accordingly, the Court finds that Plaintiff's claim for breach of contract arising from Defendant's failure to indemnify Plaintiff in the asbestos lawsuits is premature.

2. Duty to defend

*4 Defendant contends that Plaintiff's claim for breach of contract with respect to Defendants failure to defend should be dismissed pursuant to Rule 12(b)(6), because Defendant has no duty to defend under the indemnity provisions of the APA. Under Pennsylvania law, the construction of an indemnity contract is a question of law for the court to decide. *Jacobs Constructors, Inc. v. NPS Energy Services, Inc.*, 264 F.3d 365, 371 (3d Cir.2001) (*citing Hutchinson v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (Pa.1986)). It is a well-established principle that an indemnity clause is to be construed against the party seeking indemnification, "because the nature and purpose of any indemnity agreement involves the shifting and voluntary assumption of legal obligations." *Jacobs*, 264 F.3d at 373. In interpreting indemnity contracts, courts look to the intentions of the parties as evidenced by the language of the indemnity clause itself. *Id.* at 371 (*citing Metzger v. Clifford Reality Corp.*, 327 Pa.Super. 377, 476 A.2d 1, 4 (Pa.Super.Ct.1984)). Courts may consider the circumstances under which the contract was signed "[o]nly where the court finds ambiguity" in the contractual language. *Id.* ( *citing East Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 205 A.2d 865, 866 (Pa.1965)). Moreover, "[t]he mere fact that the parties do not agree upon the proper interpretation of an indemnity clause does not necessarily render the clause ambiguous." *Id.* (*citing Metzger*, 476 A.2d at 4).

Here, the indemnity clause reads, in relevant part, as follows:

(a) ... [T]he Indemnifying Party shall have the right ... within thirty (30) days after the receipt of ... notice, to undertake the defense of or, with the consent of the Indemnified Party ... to settle or compromise such claim, in each case with counsel of its own choosing. If the Indemnifying Party does not assume the defense of any such claim or litigation ... the Indemnified Party may defend against such claim or litigation in such manner as it may deem appropriate....

(c) The election by the Indemnifying Party ... to undertake the defense of a third-party claim shall not preclude the party against which such claim has been made also from participating or continuing to participate in such defense, so long as such party bears its own legal fees and expenses for so doing. In all other cases, the defense costs relating to a third party claim shall be borne by the Indemnifying Party.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 600297 (E.D.Pa.)
**(Cite as: 2005 WL 600297 (E.D.Pa.))**

Page 5

(APA § 7.4(a) and (c).)

Plaintiff argues that Defendant is under a duty to defend it in the underlying asbestos actions because the indemnity clause states that Defendant will reimburse the indemnitee for defense costs even if Defendant elects not to defend such cases. Under Pennsylvania law, a "duty to defend is separate and distinct from [a] duty to indemnify." *Jacobs*, 264 F.3d at 376 (*citing Erie Ins. Exch. v. Transamerican Ins. Co.*, 516 Pa. 574, 533 A.2d 1363, 1368 (Pa.1987). Moreover, while the duty to indemnify arises only when payment pursuant to an underlying settlement or judgment has been made, the duty to defend arises immediately whenever the allegations in the complaint in an underlying litigation potentially fall within the scope of the contract's coverage. *See Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir.1999) (*citing Erie Ins. Exch. v. Claypoole*, 449 Pa.Super. 142, 673 A.2d 348, 355 (Pa.Super.Ct.1996). As indemnity clauses are construed against the party seeking indemnification, a duty to defend will only be found where the parties used clear, unambiguous language. *Jacobs*, 264 F.3d at 373.

*5 The APA requires Defendant to either reimburse any Indemnified Party for costs incurred in defending lawsuits involving any liabilities not assumed by the Buyers, or exercise its right to elect to defend the case itself. (*See* APA § 7.4.) The APA contains no language under which Defendant would be placed under an affirmative duty to defend any Indemnified Party. Rather, the APA simply provides Defendant a choice between reimbursing an indemnitee for the attorneys' fees and costs that party incurred in defending a lawsuit, or defending the suit itself. (*See id.*)

The mere assumption of reasonable defense costs in an indemnity agreement does not give rise to a duty to defend. Indeed, it is well-settled under Pennsylvania law that an "indemnitee may recover attorney's fees and costs [incurred during the underlying litigation] along with the actual judgment from the indemnitor." *Boiler Eng'g and Supply Co. v. General Controls, Inc.*, 443 Pa. 44, 277 A.2d 812, 814 (Pa.1971). Defendant's agreement under the APA to reimburse the indemnitees for attorneys' fees and costs merely contractually solidifies this operative principle of Pennsylvania indemnity law. Accordingly, reading the APA's indemnity clause in accordance with its plain meaning, the Court finds that Defendant is under no duty to defend Plaintiff in the underlying lawsuits.

B. *Count Two: Declaratory Judgment*

Defendant also seeks the dismissal of Count Two of the Complaint which asks the Court to determine that, pursuant to the APA, Defendant must defend and indemnify Plaintiff in all existing and future asbestos claims; and that Defendant is solely liable for asbestos related personal injury claims where the event giving rise to the claim occurred before August 1, 1997. (Compl.¶ 35.) Defendant maintains that Plaintiff's claim for a declaratory judgment regarding Defendant's duty to indemnify Plaintiff is not yet ripe for adjudication and should be dismissed pursuant to Rule 12(b)(1). Under the Declaratory Judgment Act, courts have the power to make declarations regarding "the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.[FN3] District courts have broad discretion in deciding whether to entertain declaratory judgment actions. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 277-78, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). However, "[t]he discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties." *Step-Saver Data Systems, Inc. v. Wyse Tech., The Software Link, Inc*, 912 F.2d 643, 647 (3d Cir.1990). The Supreme Court has noted that, under the Declaratory Judgment Act, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

In order to determine whether an actual controversy exists for purposes of issuing a declaratory judgment, courts consider the following three basic principles: "[1] the adversity of the interest of the parties, [2] the conclusiveness of the judicial judgment and [3] the practical help, or utility, of that judgment." *Step-Saver,* 912 F.2d at 647.

> FN3. The Declaratory Judgment Act, 28 U.S.C. § 2201, states: "In a case or controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201 (2003).

*6 Plaintiff requests that the Court enter declaratory judgment as follows:

(A) A declaration that pursuant to the Asset Purchase Agreement [Defendant] must indemnify and defend the [P]laintiff in all existing and future asbestos claims;

(B) A declaration that [Defendant] was the sole manufacturer of the asbestos-containing products manufactured by AMC Limitorque before August 1, 1997, and sold in the marketplace by AMC Limitorque and that [Defendant] is solely liable for asbestos-related personal injuries claims where the event giving rise to the claim occurred before August 1, 1997."

(Compl.¶ 35.)

The APA itself provides, in relevant part, as follows:

2.2 *Liabilities Assumed:* At the Closing, Buyers shall assume and agree to pay, perform and discharge ... each of the following obligations and liabilities of Sellers, but no others (the "Assumed Liabilities"): ...

(f) Liabilities and obligations with respect to any product liability claim relating to products manufactured or sold by any Seller relating to the Business where the event giving rise to the claim occurs after Closing ...

2.3 *Excluded Liabilities:* EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, BUYERS SHALL NOT ... ASSUME OR BE RESPONSIBLE FOR ANY LIABILITIES OR OBLIGATIONS OF SELLERS OR OF ANY OF THEIR AFFILIATES OF ANY NATURE WHATSOEVER ("EXCLUDED LIABILITIES").

(APA §§ 2.2, 2.3) (emphasis in original). The APA further states that:

> [Defendant] and Company shall jointly and severally indemnify and hold Purchasers and their respective officers, directors and affiliates harmless against and in respect of any and all losses, costs, expenses, claims, damages, obligations and liabilities, including interest, penalties and reasonable attorneys' fees and disbursements ... which [Buyers] or any such person may suffer, incur or become subject to arising out of, based upon or otherwise in respect of: ...
>
> (c) any Excluded Liability;
>
> ... or
>
> (h) any other occurrence or event, except for those expressly assumed by Buyer herein, arising out of or associated with the ownership or operation of [AMC Limitorque] prior to [August 1, 1997].

(*Id.* § 7.1.)

1. Adversity

The first prerequisite to a finding of ripeness in declaratory judgment actions is that "the defendant [is] so situated that the parties have adverse legal interests." *Step-Saver,* 912 F.2d at 648 (*quoting*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2757, at 582-83 (2d ed.1983) (hereafter "Wright & Miller")). "Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir.1995) (citing *Step-Saver*, 912 F.2d at 647-48.). To establish adversity of interest, a plaintiff "need not suffer a completed harm." *Armstrong World Inds., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir.1992). However, "[w]here the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III." *Id.* at 411-12. Accordingly, to establish that a declaratory judgment action which seeks to protect against a feared future event is ripe, "the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Salvation Army v. Dept. of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir.1990) (quoting *Steffel v. Thompson*, 415 U.S. 452, 460, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).

*7 Plaintiff argues that the parties' interests are sufficiently adverse because Plaintiff has already paid a significant sum of money to defend the underlying asbestos cases, and will continue to suffer such harm unless a declaratory judgment is entered. However, as long as it remains unclear whether liability, if any, will be imposed in the underlying asbestos cases, and when the event giving rise to such liability occurred, it remains equally unclear whether Defendant would be obligated to indemnify Plaintiff under the APA. Although

> there are some situations in which courts can make a declaration absent proof of a necessary fact, ... such as enforcement of an existing statute or the death of a life-tenant or the future expiration of a contract, franchise or lease, ... the necessary fact at issue here is quite uncertain. Unlike the future events [listed above], almost all of which are simply "a matter of time," the necessary future event for [Plaintiff's] request ... is far from certain.

*Step-Saver*, 912 F.2d at 649 n. 7 (internal citations omitted). Indeed, whether or not liability will be imposed in the underlying actions, and whether the trigger for that liability will be an event that occurred prior to August 1, 1997, is far from certain.

Plaintiff alleges that it is highly unlikely that the event giving rise to the claims in the underlying asbestos cases occurred after August 1, 1997, because AMC Limitorque stopped manufacturing and selling asbestos-containing products long before that date. However, Pennsylvania has adopted the multiple-trigger theory of liability for asbestos related lawsuits. *J.H France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502, 507 (Pa.1993). Under this approach, an insurer's liability results if any one of the following occurred during the relevant time period: "exposure to asbestos or silica, progression of the pathology, or manifestation of the disease." *Id.* at 506. Thus, pursuant to the law governing the APA, it is possible that events giving rise to the asbestos claims occurred after August 1, 1997, even though the asbestos containing products were sold and manufactured long before then. As a result, Plaintiff may have no indemnification rights under the APA in such cases. On the other hand, if it becomes clear that the events giving rise to the claims in the underlying asbestos lawsuits occurred prior to August 1, 1997, Defendant "may prefer to admit liability in order to avoid the expense of an indemnity action instituted by [Plaintiff]." *Step-Saver*, 912 F.2d at 648. In either situation, the parties' interests will not become adverse.

2. Conclusivity

The second prerequisite for a finding of ripeness is that the declarations definitively decide the parties' rights. *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir.2001). This principle "addresses the extent to which further factual development of the case would facilitate decisions, so as to avoid issuing ad-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 600297 (E.D.Pa.)
**(Cite as: 2005 WL 600297 (E.D.Pa.))**

visory opinions." *Id.* (citations omitted). For a declaratory judgment to be conclusive, the contest between the parties must be based on a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Connecticut v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Accordingly, it is necessary that "the court be presented with a set of facts from which it can make findings.... Without the necessary facts, the court is left to render an advisory opinion." *Obusek,* 72 F.3d at 1155.

*8 Here, the declaration Plaintiff seeks is based on the overriding contingency that liability in the underlying lawsuits will be imposed. Plaintiff has not asked this Court to determine whether such liability will attach, and indeed it would be highly impractical, if not impossible, for this Court to make such determinations without extensive factual development. However, without a finding of liability in an underlying asbestos litigation any declaration issued by the Court that Defendant is required to indemnify Plaintiff under the APA will merely be an advisory opinion based on a hypothetical state of facts. Moreover, the declaration requested by Plaintiff would not serve to clarify the legal relationship between the parties, but rather would merely result in a repetition of the APA's contractual language. The overriding factual question involved in this case, namely, what constitutes a claim "where the event giving rise to the claim occurred prior to August 1, 1997," would remain undetermined. Therefore,

> [e]ven if we issued the requested declaration, the legal status of the parties would not change (nor would it be clarified) ... Indeed, such a declaration would probably be an exercise in futility because [Plaintiff] and [Defendant] would be left to do battle on the issue of whether the "liability," for which we declared the [Defendant] responsible, was really the liability that will be established in the [personal injury] suits.

*Step-Saver,* 912 F.2d at 648. Accordingly, the Court finds that the declaratory judgment requested by Plaintiff would not definitively decide the parties' rights and would, therefore, be inconclusive.

3. Utility

Finally, the third prerequisite for a finding of ripeness is the utility of the declaration sought, i.e. "whether the parties' plans or actions are likely to be affected by a declaratory judgment. *Id.* "One of the primary purposes behind the Declaratory Judgment Act was to enable plaintiffs to preserve the status quo before irreparable damage was done ... and a case should not be considered justiciable unless 'the court is convinced that [by its action] a useful purpose will be served." ' *Id.* at 649 (*citing* E. Borchard, Declaratory Judgments 29 (1941)). A declaratory judgment should, therefore, ordinarily not be granted "unless 'the parties' plans of actions are likely to be affected by a declaratory judgment." ' *Armstrong,* 961 F.2d at 412 (citing *Step-Saver,* 912 F.2d at 650 n. 9.)

As mentioned *supra,* the declaration requested by Plaintiff merely restates the terms of the APA, and would leave the parties with no guidance on whether or not liability will be imposed in any of the underlying lawsuits and the extent of Defendant's obligation to indemnify Plaintiff in those suites. Indeed, given the Court's determination that there is no duty to defend under the APA, and without a determination that the events giving rise to the asbestos claims in fact occurred prior to August 1, 1997, the parties would be in no better position to determine what course of action to take with respect to the underlying actions than they are now. As a result, Plaintiff would continue to defend those actions, while Defendant would continue to deny any duty to indemnify Plaintiff on the theory that an event giving rise to the claims occurred after August 1, 1997. Accordingly, the Court finds that the declaration requested by Plaintiff would not be of significant practical help in ending the contro-

Not Reported in F.Supp.2d, 2005 WL 600297 (E.D.Pa.)
(Cite as: 2005 WL 600297 (E.D.Pa.))

Page 9

versy between the parties. *See Step-Saver,* 912 F.2d at 650.[FN4] Count Two of the Complaint is, therefore, dismissed in its entirety.

> FN4. The Court further notes that "it is well settled that the granting of declaratory relief is a matter resting in the sound discretion of the trial judge and that it ought not be exercised to try a case piecemeal or to drag into the federal courts matters properly triable before the courts of the state." *Provident Trademens Bank and Trust Co. v. Lumbermens Mut. Cas. Co.,* 365 F.2d 802, 815-16 (3d Cir.1966) (citing *Doby v. Brown,* 232 F.2d 504, 506 (4th Cir.1956)) (*vacated on other grounds,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)). Here, as discussed *supra,* any declaration that would meet the ripeness criteria would necessarily entail an inquiry into whether liability will be imposed in the underlying asbestos actions. An inquiry into this matter would "drag into federal courts matters properly triable before the courts of the state." *Id.* Accordingly, even if this declaratory judgment action were ripe, the Court would decline to exercise its discretion to issue a declaration.

C. *Count Three: Specific Performance*

*9 As specific performance is not itself a claim, but rather an equitable remedy available to a party who was damaged by another's breach of contract and has no adequate remedy at law, Plaintiff's claim for specific performance must be dismissed along with its breach of contract claims. *See Sheet Metal Workers' Intern. Ass'n Local 19 v. Herre Bros., Inc.,* 201 F.3d 231, 249 (3d Cir.1999). In addition, the court notes that "if and when [Plaintiff's] cause of action accrues, [its] remedy is an action at law for damages, rather than an action in equity. Under Pennsylvania law, a claim for recovery under an indemnification agreement is an action for breach of contract over which equity lacks jurisdiction." *McClure,* 585 A.2d at 23. Count Three of the Complaint is, therefore, dismissed in its entirety.[FN5]

> FN5. As the Complaint is dismissed in whole based on the foregoing reasons, the Court need not address whether or not Plaintiff validly retains rights under the APA. The Court notes, however, that the Complaint properly pleads that Plaintiff, through a series of corporate transactions, is a successor in interest to the APA's indemnification provisions. (*See* Compl. ¶¶ 12-21.)

III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in its entirety.

An appropriate Order follows.

*ORDER*

AND NOW, this 15th day of February, 2005, upon consideration of the Motion to Dismiss the Complaint filed by Defendant American Manufacturing Corporation, all briefing in response thereto, and the Hearing held on December 20, 2004, IT IS HEREBY ORDERED that said Motion is GRANTED and the Complaint is DISMISSED in its entirety. This case shall be marked CLOSED for statistical purposes.

E.D.Pa.,2005.
Invensys Inc. v. American Mfg. Corp.
Not Reported in F.Supp.2d, 2005 WL 600297 (E.D.Pa.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.