UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DUPREE, JR., MICHAEL
DUPREE, SR. and DARLENE DUPREE,

       Plaintiffs,

                               Case No. 10-12094

v.                             Hon. Lawrence P. Zatkoff

CRANBROOK EDUCATIONAL
COMMUNITY, JOHN J. WINTER and
CHARLES SHAW,

       Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 29, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docket #22)

and Plaintiffs' Motion for Leave to File an Amended Complaint (Docket #26). The parties have

fully briefed the motions.[1]  The Court has thoroughly reviewed the facts and legal arguments

---

[1]Plaintiffs also filed a Motion for Leave to File a Sur-Reply (Docket #25) with respect to
Defendants' Motion for Summary Judgment. Defendants have responded and opposed the filing
of a sur-reply. After reviewing Plaintiffs' Motion for Leave to file a Sur-Reply, the Court
concludes that granting the Motion is appropriate because it addresses arguments first raised by
Defendants in their reply. Accordingly, Plaintiffs' Motion for Leave to File a Sur-Reply (Docket
#25) is GRANTED. Plaintiffs shall immediately file such Sur-Reply (in exactly the form as it is
set forth in Exhibit 4 to their Motion for Leave to File a Sur-Reply) on the Court's docket. In
addition, the Court hereby notifies the parties that, for purposes of analyzing and deciding the
issues raised in conjunction with Defendants' Motion for Summary Judgment, the Court has
considered and taken into account the arguments set forth in the Sur-Reply.

presented in the parties' papers,[2] and the Court held a hearing on Defendant's Motion for Summary Judgment on March 15, 2012.   For the following reasons, Plaintiffs' Motion for Leave to File an Amended Complaint is DENIED and Defendants's Motion for Summary Judgment is DENIED.


## II. BACKGROUND

Except as otherwise specified, the following facts are undisputed.  Michael Dupree, Sr. ("Mr. Dupree") and Darlene Dupree ("Mrs. Dupree") enrolled their son, Michael Dupree, Jr. ("Michael") at the Upper School (high school) operated by Defendant Cranbrook Educational Community ("Cranbrook") in the fall of 2000.  Michael attended Cranbrook for the entirety of his freshmen, sophomore and junior years.  He also attended Cranbrook for his senior year until he was dismissed from Cranbrook, effective June 1, 2004.  His dismissal became effective several days after he completed his classes and final examinations, but three days before graduation for the Class of 2004, held on June 4, 2004.  Mr. Dupree and Mrs. Dupree paid approximately $80,000 for tuition for the four years Michael attended Cranbrook.

The relevant events in this lawsuit occurred during the 2003-04 school year.  At that time, Defendant John J. Winter ("Dean Winter") was the Dean of the Boys School, Defendant Charles Shaw ("Shaw") was Head of the Upper School, and Arlyce Seibert ("Seibert") was Cranbrook's Director of Schools.

---

[2]As to Plaintiffs' Motion to File an Amended Complaint, the Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process regarding that motion would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that Plaintiffs' Motion to File an Amended Complaint be resolved on the briefs submitted.

## A.      Enrollment Contract

As he had done for each of Michael's first three years at Cranbook, Mr. Dupree signed an

Enrollment Contract for the 2003-04 school year.  The Enrollment Contract included the following

language:

> I specifically understand and agree that the Schools reserve the right
> to dismiss Michael at any time if, in the judgment of the schools,
> Michael's health, efforts, progress, behavior or influence is
> unsatisfactory . . . .
>
> I understand that Michael will be responsible for abiding by the
> policies and procedures stated in his Schools' handbook.

## B.      The Handbook

The Upper School issues a Community Handbook ("Handbook") to each student for each

school year.  The Plaintiffs received a Handbook for the 2003-04 school year.  On the first page of

the Handbook, Shaw states that the Handbook is:

> . . . a stated set of policies and procedures that articulate [students',
> parents', faculty, and staff's] rights and our responsibilities.  These
> statements assist us in both our individual and collective pursuits.
> Hence, this *Handbook* serves a critical need.  I do expect that each of
> us will commit ourselves, not only to the prescribed expectations and
> standards contained herein, but also to the spirit of our school
> community.

The Handbook includes a page titled: "Highlights of the Cranbrook Schools Technology Use Policy"

(the "Technology Highlights Page") (Handbook, at 89).  The Technology Highlights Page includes

the following statement: "These are guidelines to prevent the loss of computer/network privileges

at school." *Id.*  One of the listed guidelines was: "Do not share your computer accounts or passwords

with another person." *Id.*   The Handbook also includes a section titled "Cranbrook Schools

Technology Use Policy" ("Technology Use Policy") (Handbook, at 98-100).  The Technology Use

3

Policy provides, in part: (1) "All users must observe appropriate password security by not sharing accounts and passwords or leaving open accounts unattended[,]" and (2) "**All violations of The Technology Use Policy are violations of a major school rule**" (emphasis in original).  Likewise, in a section titled "Major School Rule Violations," the Handbook expressly provides that  "[a]ny violation of the . . . Technology Use Policy" constitutes "a major school-rule violation." (Handbook, at 70-71).

The Handbook also includes a section on "Disciplinary Procedures" that indicates that a Conduct Review Board ("CRB") may be utilized.  That section provides, in part:

> A student who violates a major school rule or has a pattern/repetition of other violations may be called before the Conduct Review Board, made up of either or both of the Deans of Students and appointed faculty members and senior students.  Parents are notified of the hearing beforehand, if possible, and informed of the decision after recommendation of the Conduct Review Board has been approved.

> * * * * *

> In private, members of the Conduct Review Board assess the incident and recommend consequences for the conduct to the Head of the Upper School for final approval.  In the case of recommendation for dismissal, the Head of the Upper School and the Director of Schools must give approval.

(Handbook, at 74).  The Handbook discusses possible disciplinary consequences and the effect of violating a major school rule while on "Conduct Probation:"

> **Conduct Probation**: Students who violate a major school rule or have a pattern of other behavior violations can expect to be placed on Conduct Probation for an extended length of time (they may also be dismissed). . . . During Conduct Probation, if the student violates any school rules, she or he is subject to immediate dismissal.

> * * * * *

> **Dismissal**: A student is dismissed if the offense is very serious in the

4

eyes of the community, or if the student has already broken a major school rule or already has a pattern of any rule violations.  Dismissal occurs with the recommendation of the Conduct Review Board or the administrative review process.  A dismissal requires the approval of the Head of the Upper School and Director of Schools . . .

(Handbook, at 75-76).

## C.    Relevant Conduct of Michael Dupree, Jr.

During or about the first week of Michael's senior year (in August/September 2003), he shared his password with another student, Randy Bruder.  According to Michael's testimony, he shared his network password with the knowledge of one of Cranbrook's employees, Dr. Lamb, who was the de facto head of the computer department.  Plaintiffs also claim that Michael changed his password with days of sharing the password with Randy Bruder and did so on several other occasions prior to March 2004.  It is undisputed that, prior to March 2004, Michael was not punished for sharing his password with Randy Bruder.

In March 2004, at a meeting between Michael and Dean Winter, Dean Winter discovered a pipe of some kind (a glass marijuana pipe, according to Defendants)[3] in Michael's backpack.  Cranbrook administrators deemed such conduct to be a major school rule violation.  A hearing was held before the CRB regarding Michael's possession of the pipe, and the CRB recommended that Michael be suspended from school.  Michael was suspended from Cranbrook for three days and put on Conduct Probation until June 4, 2004, *i.e.*, his expected graduation date.  On March 12, 2004, Dean Winter sent Michael and Mr.  and Mrs. Dupree a letter outlining Michael's suspension and Conduct Probation.  The March 12, 2004, letter stated, in part:

---

[3]As Defendants conceded at the hearing, the pipe was not sent to a lab or otherwise tested for the presence of any controlled substance or drug residue.

5

1.   Michael is being placed on Conduct Probation until June 4, 2004. Should Michael violate any major school rule or accumulate a series of minor rule violations, he would come before the committee again and could be dismissed from the school.

* * * * *

3.   Michael is being suspended for three school days – March 11, 12 and 15. . . .

* * * * *

Michael's choice was not a good one.  It is so important that he realizes the seriousness of his decision.  He must make the decision to follow all school rules and to continue to receive all the help others are so willing to provide him.  Michael will find people who do support and respect him; he needs only to respond completely to them and decide that it is time at last to focus on the remaining months of school and to complete them in top form. . . .

In late May 2004, Cranbrook administrators became aware that students were using their computers to access tests that belonged to faculty members.  Cranbrook administrators thus caused Cranbrook's Informational Technology ("IT") department to conduct an investigation regarding this activity.  As a result of the investigation, on May 25, 2004, Cranbrook administrators (based on the IT department's conclusions) concluded that:

(1)   Michael and another student were involved in a computer hacking decoy scheme,

(2)   over 150 faculty and student IDs and passwords were in Michael's network storage,

(3)   faculty final exams and other information had been accessed,

(4)   there was evidence of gambling activity in Michael's account, and

(5)   file transfers from the Cranbrook network were sent to the "cheezy.com" network, which was owned by Michael.

Based on the foregoing, Cranbrook administrators determined that Michael may have violated

6

another major school rule, this time of the Technology Use Policy.

On May 26, 2004, Dean Winter and James Pickett (Cranbrook's Dean of Faculty) met with Michael. Michael admitted he had given his computer password to another student, Randy Bruder, during the school year. Michael was suspended immediately for doing so, as it constituted a major school rule violation pursuant to the Handbook. Mr. and Mrs. Dupree were notified of the suspension and a CRB hearing to be conducted the next day (May 27, 2004).

On May 27, 2004, a CRB hearing was conducted concerning the allegation that Michael had provided his computer password to someone else. During the hearing, Michael again admitted that he had given his password to Randy Bruder. Based on: (1) Michael's admission to sharing the computer password, (2) the fact that Michael was on Conduct Probation, and (3) the fact that sharing the computer password constituted another major school rule violation, the CRB recommended that Michael be dismissed from Cranbrook. Later that day, Shaw and Seibert approved the dismissal recommendation made by the CRB. Shaw and Seibert concluded that Michael would be dismissed for violating the terms of his Conduct Probation. On May 28, 2004, Seibert met with Mr. and Mrs. Dupree and informed them that Michael was being dismissed from Cranbrook and that he would not graduate or receive a diploma from Cranbrook. On June 1, 2004, Dean Winter sent a letter to Plaintiffs stating that Michael "has been dismissed from Cranbrook Kingswood Upper School effective June 1, 2004."

**D.    Michael's Transcript**

After dismissing Michael, Cranbrook issued him a transcript. Prior to issuing the transcript, Cranbrook informed Plaintiffs that: (1) Cranbrook's transcripts provided for either a "Graduation Date" or a "Withdrawal Date," (2) there were no other notations possible because the transcripts

7

were computer generated, and (3) as Michael did not graduate, Michael's transcript would have a notation on it that stated:

Withdrawal Date     June 1, 2004

Each of Michael's transcripts issued by Cranbrook since Michael's dismissal has included that same notation.  It is undisputed that: (a) Michael did not withdraw from Cranbrook, and (b) Michael was dismissed from Cranbrook.

**E.      Post-Cranbrook Events**

After being dismissed from Cranbrook, Michael obtained a GED in June 2004.  In the fall of 2004, Michael enrolled at Purdue University, a school at which he had been accepted prior to his dismissal from Cranbrook.  Michael withdrew from Purdue at some point during his first semester there, apparently due to illness.  Since leaving Purdue, Michael has attended numerous colleges in California and Colorado and traveled extensively.  He most recently attended and graduated from the University of Denver.

**G.      Plaintiffs' Complaint**

Plaintiffs filed a Complaint with seven counts, including the following claims: (1) Count I - Fraud and Misrepresentation; (2) Count II - Mail Fraud; (3) Count III - Wire Fraud; (4) Count IV - Extortion; (5) Count V - Violation of the Racketeer Influenced and Corruption Organization Act ("RICO"); (6) Count VI - Breach of Contract; and (7) Count VI [sic] - Attorney Fees.  This case originally was assigned to Judge Robert H. Cleland.  Shortly before Judge Cleland disqualified himself from the case and the case ultimately was reassigned to the undersigned, the parties filed a stipulation to allow Plaintiff to file a proposed amended complaint.  In fact, Plaintiffs "filed" the proposed amended complaint on the docket.  The proposed amended complaint added an eighth

8

count, which was a claim for Specific Performance and/or Equitable Relief.  Essentially, the eighth

count sought the issuance of a Cranbrook diploma to Michael and revision of Michael's transcript

to reflect that he graduated from Cranbrook.  Judge Cleland struck the amended complaint, however,

because it was not filed in compliance with Local Rules of the Eastern District of Michigan.  The

parties did not resubmit their stipulation at any time thereafter.  Subsequent to the parties' briefing

of Defendants' Motion for Summary Judgment, Plaintiffs filed a Motion for Leave to File an

Amended Complaint, wherein Plaintiffs seek to re-file their proposed amended complaint.


### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language

of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.").  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits
> or declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials;
> or;
>
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other

materials in the record."  Fed. R. Civ. P. 56(c)(3).

9

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.   The moving party discharges its burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A.    Plaintiffs' Motion for Leave to File an Amended Complaint

Although the parties previously entered a stipulation to allow Plaintiff to file an amended complaint, the Court concludes that no such amendment shall be allowed now.  First, the motion for leave to file an amended complaint was untimely.  Discovery had long since closed and the parties had already fully briefed the summary judgment motion.  Second, Plaintiffs seek to amend the complaint to add a new count for their claims of "specific performance and/or equitable relief." Such claims, however, are not substantive legal claims upon which relief can be had; rather, they are forms of damages which can be awarded in the event one of more Defendants is determined to

10

be liable to one or more Plaintiffs.  Third, Plaintiffs expressly and repeatedly requested in their original complaint the very relief sought in proposed count eight. (*See, e.g.*, the "WHEREFORE" paragraph at the conclusion of each of the first six counts of Plaintiffs' Complaint).  Therefore, the "additional" claim/relief set forth in the proposed eighth count is both inappropriate and redundant.

Accordingly, for the reasons described in this Section IV.A., the Court denies Plaintiff's Motion for Leave to File an Amended Complaint.

**B.      Defendants' Motion for Summary Judgment**

      *1.      Count I - Fraud and Misrepresentation*

Under Michigan law, a plaintiff must prove the following to establish fraud or misrepresentation:

         i.      Defendant made a material misrepresentation;

         ii.     The material misrepresentation was false;

         iii.    When defendant made the misrepresentation, defendant knew
              it was false;

         iv.    Defendant made the misrepresentation intending that it
              should be acted upon by plaintiff;

         v.     Plaintiff acted in reliance upon the misrepresentation; and

         vi.    Plaintiff suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976).  "Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Id.*

Plaintiffs have alleged that Cranbrook and/or the individual Defendants made three

11

misrepresentations related to Michael's enrollment at Cranbrook.  The Court shall address the *Hi-Way* factors with respect to each of the three alleged misrepresentations.

        a.     <u>Withdrawal Date Designation on Transcript</u>

Plaintiffs first assert that stamping Michael's transcript with a "withdrawal date" of June 1, 2004, was a misrepresentation because Michael did not withdraw from Cranbrook.  As Dean Winter and Shaw have admitted that Michael did not withdraw from Cranbrook,[4] the Court finds that Plaintiffs have shown that, as it pertains to this alleged misrepresentation, there is a evidence which creates a genuine dispute as to all six elements for a fraud or misrepresentation claim:

(1)      Defendants made a material misrepresentation (*i.e.*, Michael withdrew from Cranbrook),

(2)      the misrepresentation was false (Michael did not withdraw from Cranbrook, he was dismissed),

(3)      Defendants knew it was false when they made it (Dean Winter and Shaw acknowledge that Michael did not withdraw),

(4)      Defendants made the misrepresentation with the intent that Plaintiffs rely on it (Cranbrook/Dean Winter/Shaw were unwilling to prepare the transcript in any other manner),

(5)      Plaintiffs relied on the misrepresentation of Defendants (see discussion following paragraph (6) below), and

(6)      Plaintiffs were injured as a result of the misrepresentations.  Such injuries include: (a) any transcript issued by Cranbrook related to Michael has the designation "Withdrawal Date June 1, 2004" on it, (b) Michael did not graduate or receive a diploma from Cranbrook, (c) Michael had to obtain a

---

[4]The Court also notes that the Handbook provides that "withdrawal means withdrawal from school for any reason **other than dismissal** or extended medical absence" (emphasis added).  As defined in the Handbook, "dismissal means severance from all classes for the balance of the school year, which is at the direction of the school authorities, due to either academic or disciplinary reasons."  Such language constitutes further evidence that Michael's dismissal could not be considered a "withdrawal" from Cranbrook.

> GED (which no one disputes has a lesser value or connotation than a diploma), and (d) Mr. Dupree and Mrs. Dupree paid Cranbrook approximately $80,000 in tuition.

As to reliance by Plaintiffs on the misrepresentation of Cranbrook and/or the individual Defendants, Plaintiffs state:

> Defendant urged the Plaintiffs to rely on this misrepresentation and even told the Plaintiffs that with this misrepresentation, Cranbrook would be doing Michael a favor. [] If Plaintiffs wanted admission into any institute of higher learning, they had to rely on the false transcript, as it is required in the college application process. Michael had to explain that he did not in fact withdraw to colleges he applied to. He was harmed by this fraud.

The Court agrees. Plaintiffs had no choice regarding the "withdrawal" notation on Michael's transcripts–they were forced to rely on the Cranbrook transcript that stated "withdrawal," even if they wanted the transcript to say something else, because it was the only form of transcript Cranbrook would issue. In fact, to the extent Michael has needed to submit a transcript from Cranbrook since 2004, he has had to rely on and provide a transcript with the "withdrawal" notation on it, including each time he sought admission to a college or university.

The Court is not persuaded that any of the following arguments alter the Court's finding with respect to those six elements, even if all such arguments are true (as Defendants claim): (1) Plaintiffs knew in advance that Michael's transcript would have the "withdrawal date" designation stamped on it, (2) the transcript "only allows for two notations" – a graduation or withdrawal date, and (3) Cranbrook considers dismissal an involuntary form of withdrawal. Simply put, it is undisputed that Michael did not "withdraw" from Cranbrook. Thus, the Court finds that it is irrelevant that Plaintiffs knew in advance that Michael's transcripts would be stamped with a "withdrawal date," that Cranbrook's transcripts "only allowed for two notations," or that Cranbrook treats dismissals as a

13

form of withdrawal.

Accordingly, the Court concludes that Defendants are not entitled to summary judgment as to Plaintiffs' claim for misrepresentation or fraud, insofar as it pertains to the designation of "withdrawal" on Michael's transcript.

### b.    Terms of Conduct Probation

Plaintiffs next contend that Cranbrook and/or the individual Defendants misrepresented the terms of Michael's probation. Plaintiffs claim that they were told that Michael would graduate and receive a diploma from Cranbrook if Michael: (1) completed his required credits, (2) complied with the terms of his Conduct Probation, and (3) did not have any other behavioral misconduct during the term of his probation (March 2004 to June 4, 2004). Plaintiffs rely on the March 12, 2004 letter from Dean Winter that detailed the terms of Michael's probation. That letter stated, in part, that Michael "must make the decision to follow all school rules" and finish his last few months of school in "top form." Plaintiffs note that both Seibert and Shaw have acknowledged that Michael completed his course work and received passing grades in all of the classes he needed to graduate.

Plaintiffs also contend that Michael did not have any behavioral misconduct during the period of his Conduct Probation (from March 2004 to June 4, 2004) because, even if he violated the Technology Use Policy by sharing his password, such violation occurred in August/September 2003, long before his Conduct Probation commenced. Defendants argue that, if Plaintiffs' argument is credited, it would mean that Michael could never have been dismissed from Cranbrook, no matter how egregious the nature of his conduct. Defendants also argue that the terms of the March 12, 2004, letter do not indicate that Michael was immune from dismissal for conduct committed before the date of the letter but not discovered until the Conduct Probation period commenced.

14

For purposes of deciding Defendants' summary judgment motion, the Court is not persuaded by Defendants' arguments regarding the terms of probation. First, contrary to Defendants' position, adoption of Plaintiffs' argument does not mean that Cranbrook could not have expelled Michael for misconduct committed by Michael prior to the date of the letter. Rather, adoption of Plaintiff's argument simply means that there is a genuine dispute of material fact as to whether a student on Conduct Probation can be expelled <u>for violating the terms of his probation</u> if the precipitating misconduct occurred prior to the time the student was put on probation. Second, language in the Handbook regarding Conduct Probation supports Plaintiffs' position. *See* Handbook, at 75 ("**During** Conduct Probation, if a student violates any school rules, she or he is subject to immediate dismissal") (emphasis added).

Third, although the language of the March 12, 2004, letter does not expressly provide that Michael would not be dismissed for misconduct committed prior to being placed on Conduct Probation, the language in the letter also does not expressly provide that misconduct committed prior to Michael's Conduct Probation could be taken into account by Cranbrook in deciding whether Michael violated the terms of his Conduct Probation. In other words, the sentence "Should Michael violate any major school rule . . ., he would come before the [CRB] again and could be dismissed from the school" is susceptible to multiple interpretations.

For the reasons set forth above, the Court shall consider whether Plaintiffs' claim of misrepresentation regarding the terms of the Conduct Probation is viable.

In reviewing the record, the Court finds that Plaintiffs have established that there is a genuine dispute as to each element of alleged misrepresentation involving the terms of Michael's Conduct Probation:

15

(1)     Defendants made a material misrepresentation (that if Michael completed his class work and prospectively "follows all school rules," he would graduate),

(2)     the misrepresentation was false (Michael completed his course work and did not thereafter engage in any misconduct that violated any school rules),

(3)     Defendants knew the misrepresentation was false when they made it (see discussion following paragraph (6) below),

(4)     Defendants made the misrepresentation with the intent that Plaintiffs rely on it (see discussion following paragraph (6) below),

(5)     Plaintiffs relied on the misrepresentation (believing that if Michael did his course work and did not violate any school rules thereafter, Michael would graduate and be awarded a diploma from Cranbrook), and

(6)     Plaintiffs were harmed as a result of the misrepresentation.  Such injuries included Michael not graduating or receiving a diploma from Cranbrook despite: (a) completing four years of course work, and (b) payment of $80,000 in tuition by Mr. and Mrs. Dupree.

As to Defendants' knowledge that the misrepresentation was false when it was made, the Court finds that the positions taken by Cranbrook and its administrators in this case constitute sufficient evidence to create a genuine dispute of material fact on this issue.  Defendants have consistently adhered to and espoused the position that student conduct that occurred prior to the imposition of Conduct Probation on that student can serve as the basis for a finding that such student violated the terms of his Conduct Probation.  Yet, that position is inconsistent with plausible readings of the terms of the Conduct Probation set forth in the March 12, 2004 letter (that a student who prospectively "follows all school rules" will graduate) and/or the language in the Conduct Probation section of the Handbook (that a student "will be subject to immediate dismissal for violating a school rule while on Conduct Probation" only if such violation occurred after the commencement of the Conduct Probation).  Similarly, the fact that Defendants sent a letter to

16

Plaintiffs outlining the terms of Michael's Conduct Probation constitutes evidence that they made the misrepresentation with the intent that Plaintiffs rely on it.

For the reasons set forth above, the Court concludes that there is a genuine dispute of material fact as to each of the elements of Plaintiffs' claim for misrepresentation or fraud stemming from the terms of the Conduct Probation applied to Michael in March 2004.

c.   Computer Hacking Scandal

Plaintiffs also allege that Cranbrook and/or the individual Defendants misrepresented to Michael and Mr. Dupree and Mrs. Dupree–as well as the CRB–that Michael was involved in a computer hacking scandal that resulted in faculty passwords and tests being stolen.  In a light most favorable to Plaintiffs, there are genuine disputes as to material facts with respect to each of the six elements:

(1)   Defendants made a material misrepresentation (Michael was involved in computer hacking at Cranbrook),

(2)   the misrepresentation was false (Defendants did not charge him with any such violation of school rules and another student admitted full responsibility for the computer hacking),

(3)   Defendants knew it was false when they made it (Defendants had conducted an investigation and knew that another student had confessed to the computer hacking),

(4)   Defendants made the misrepresentation with the intent that Plaintiffs rely on it (Plaintiffs have testified that Dean Winters, Shaw and Seibert tried to coerce a confession out of Michael by making this misrepresentation to him and Mr. and Mrs. Dupree and threatening Michael with criminal prosecution),

(5)   Plaintiffs relied on the misrepresentation (among other things, Mrs. Dupree had to explain the accusations to the admissions department at Purdue), and

(6)   Plaintiffs were injured as a result of the misrepresentations.  Such

17

> injuries include: (1) any transcript issued by Cranbrook related to Michael has the designation "Withdrawal Date June 1, 2004" on it, (2) Michael did not graduate or receive a diploma from Cranbrook and was not issued a diploma from Cranbrook based on the alleged "withdrawal," (3) Michael had to obtain a GED to be considered a high school graduate, and (4) Mr. and Mrs. Dupree paid Cranbrook approximately $80,000 in tuition.

As such, Defendant's motion for summary judgment must be denied with respect to Plaintiffs' claim of fraud or misrepresentation based on the computer hacking allegations.

           d.    <u>Conclusion</u>

For the foregoing reasons, the Court concludes that Defendants' Motion for Summary Judgment must be denied insofar as it pertains to Count I.

       *2.*    *Count II - Mail Fraud; Count III - Wire Fraud; Count IV -Extortion; Count V - RICO*

In their motion for summary judgment and brief in support thereof, Defendants set forth a thorough argument as to why the Court should dismiss each of the following four counts of Plaintiffs' Complaint: Count II - Mail Fraud; Count III - Wire Fraud; Count IV - Extortion; and Count V - RICO.   In their response brief, Plaintiffs "withdrew" all four counts, without additional comment or any argument.   Accordingly, the Court grants Defendants' Motion for Summary Judgment insofar as it relates to Counts II - V.

       *3.*    *Count VI - Breach of Contract*

The parties agree that the contract at issue is the Enrollment Contract prepared by Cranbrook with respect to Michael's enrollment at Cranbrook the 2003-2004 school year.  The Court first turns its attention to Defendants' contention that the Enrollment Contract was between only Mr. Dupree and Cranbrook, a contention Plaintiffs do not address.  It is undisputed that the Enrollment Contract,

provided by Cranbrook, was signed by Mr. Dupree, apparently on February 3, 2003.  Defendants Dean Winter and Shaw were not parties (or even signatories) to the Enrollment Contract.  Likewise, neither Mrs. Dupree nor Michael signed the Enrollment Contract.   Accordingly, the Court concludes: (1) Dean Winter, Shaw, Mrs. Dupree and Michael are not, and were not, bound by the terms of the Enrollment Contract,[5] and (2) only Mr. Dupree and Cranbrook are parties to the Enrollment Contract.

In order for Mr. Dupree to recover on the breach of contract claim, Plaintiffs must prove that Cranbrook breached the terms of the Enrollment Contract and that the breach caused injury to Mr. Dupree. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003).  In their motion for summary judgment, Defendants argue that Michael violated the terms of his Conduct Probation, "the terms of which specified he could be dismissed any time prior to June 4, 2004.  His dismissal was in accordance with the terms of the Enrollment Contract, and Plaintiffs cannot establish their claim."  Plaintiffs assert that Michael's "behavior was not unsatisfactory and he did comply with the terms of his probation and completed his probation and completed his academic requirements."  Plaintiffs further assert that Defendants' contention that Michael "could be dismissed at any time" is evidence that Defendants acted "arbitrarily and capriciously" and not in good faith.

The Enrollment Contract provides that Mr. Dupree "specifically understand[s] and agree[s] that the Schools reserve the right to dismiss Michael at any time if, in the judgment of the Schools, Michael's . . . behavior . . . is unsatisfactory . . ."  As such, Cranbrook had the discretionary right to dismiss Michael from Cranbrook if Cranbrook determined that Michael was engaged in

---

[5]The Court's analysis of Plaintiffs' breach of contract claim would be the same if some or all of the other named parties in this lawsuit were bound by the terms of the Enrollment Contract.

unsatisfactory behavior.  Such discretion is not unusual in a contract, however, such discretion is not unfettered.  It is a well-settled principle of law that such discretion must be exercised in good faith.[6] *See, e.g.*, *Toussaint v. BCBSM*, 408 579, 622-23, reh'g denied, 409 Mich. 1101 (1980) ("The employer may discharge under a satisfaction contract so long as he is in good faith dissatisfied with the employee's performance or behavior."); *Burkhardt v. City Nat'l Bank of Detroit*, 57 Mich.App. 649 (1975 ("Where a party makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith. See 3A Corbin, contracts, § 644, pp. 78-84."). *See also Maida v. Retirement & Health Servs. Corp.*, 36 F.3d 1097, 1994 WL 514521, at *4 (6th Cir. 1994) (citations omitted); *Midland Linseed Prods. Co. v. Charles R. Sargent Co.*, 281 F. 704 (6th Cir. 1922).

In this case, the Court finds that there is a genuine dispute of material fact as to whether Cranbrook's decision to dismiss Michael for unsatisfactory behavior was made in good faith.  As discussed above, Cranbrook dismissed Michael for violating the terms of his Conduct Probation. The terms of the March 12, 2004 letter and the language of the <u>Conduct Probation</u> section of the Handbook, however, may reasonably be interpreted to allow dismissal only for behavior or performance issues of the student that occur after he or she is placed on Conduct Probation.  As Cranbrook indisputably relied on misconduct committed by Michael prior to the imposition of his Conduct Probation when it determined that Michael violated his Conduct Probation, there is a genuine dispute as to whether Cranbrook could, in good faith, dismiss Michael from school for violating the terms of his Conduct Probation.

---

[6]There are other limitations on such discretion, *e.g.*, a person cannot be dismissed on the basis of a prohibited discriminatory motive (such as race or gender), but such limitations are not at issue in this case.

Finally, Defendants note that the uncontroverted testimony of Seibert was that, before a student can graduate and be awarded a diploma, a formal faculty vote is required. The formal faculty vote occurs the day before graduation each year; thus, for Michael's class, the formal faculty vote regarding student graduations/diplomas was held on June 3, 2004. As Michael had been dismissed from Cranbrook effective June 1, 2004, no faculty vote was taken on his candidacy for graduation. As such, Defendant contends that Michael had not met all the prerequisites to graduate and receive a diploma from Cranbrook. The Court finds this argument unpersuasive. First, there is no evidence that Michael's graduation and receipt of a diploma was not put to a formal faculty vote for any reason other than the fact that he was dismissed. Second, the record reflects that Michael had done everything else necessary to graduate and be awarded a diploma (*i.e.*, he completed all classes and exams).

Accordingly, for the reasons set forth above, the Court holds finds that there is a genuine dispute of material fact as to whether Cranbrook breached the Enrollment Contract. Therefore, the Court concludes that Defendants are not entitled to summary judgment with respect to Plaintiffs' breach of contract claim in Count VI.

### 4.   *Count VII - Attorney Fees*

The Court notes that the parties did not address Plaintiffs' claim for attorney fees pursuant to 42 U.S.C. § 1998 [sic] when briefing the motion for summary judgment. If and when the issue of attorney fees is raised by one or more parties–and the issue is ripe for consideration–the Court will address the appropriateness of attorney fees in this case.

### 5.   *Conclusion*

For the reasons set forth in this Section IV.B., the Court denies Defendants' Motion for

Summary Judgment.

**C.      Defendants' Request for Attorney Fees and Costs re: Counts II-V**

As set forth above, Defendants raised and fully briefed the reasons why Counts II-V of Plaintiffs' complaint should be dismissed on summary judgment.  In response, with respect to each of those four counts, Plaintiffs stated simply–without any argument or briefing of the issues: "Plaintiffs withdraw their [] claim."  Defendants assert that, as required by Eastern District of Michigan Local Rule 7.1(a), Defendants' counsel contacted Plaintiffs' counsel prior to filing the summary judgment motion.  Defendants further assert that Plaintiffs' counsel "never responded to that telephone call."  Relying on 28 U.S.C. § 1927, Defendants now seek sanctions for having to defend through to summary judgment the meritless claims set forth in Counts II-V.  28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The entirety of Plaintiffs' response to Defendants' request is set forth in Plaintiffs' Sur-Reply brief, as follows:

> In addition, Defendants argue in their Reply that Plaintiffs should be sanctioned for ultimately concurring with Defendants regarding the dismissal of Plaintiffs' federal law claims.  Plaintiffs should not be sanctioned for their actions.  To do so would render the requirement of seeking concurrence in a motion mere surplusage and run counter to judicial economy.

The Court finds Plaintiffs' response to be an illogical and irrational reading of the requirement of Local Rule 7.1(a).  Local Rule 7.1(a) states:

> The movant must ascertain whether the contemplated motion, or request under

22

> Federal Rule of Civil Procedure 6(b)(1)(A), will be opposed. If the movant obtains concurrence, the parties or other persons involved may make the subject matter of the contemplated motion or request a matter of record by stipulated order.

The purpose of Local Rule 7.1(a) is to preclude the incurrence of unnecessary fees, costs and expenses by the party who intends to file the motion where the non-moving party concurs with the relief sought by the party intending to file the motion. If the non-moving party's concurrence is not given until after the motion is filed, the purpose of avoiding unnecessary expenditures is rendered moot because the moving party necessarily will have already expended the time and money in researching and drafting the motion, or applicable portion thereof. Thus, the Court finds that the requirement to seek concurrence in advance of filing the motion is not "mere surplusage" nor does it "run counter to judicial economy."

In fact, this case provides a model example of why Local Rule 7.1(a) is in place. Defendants sought Plaintiffs' concurrence in the motion for summary judgment. Having failed to obtain concurrence in all or part of their motion, Defendants filed a motion for summary judgment that fully briefed the issues raised by the claims asserted by Plaintiffs in Counts II-V. If Plaintiffs' counsel had responded to Defendants' counsel's call and agreed that "withdrawal" of Counts II-V was appropriate, Defendants would not have had to file those portions of the motion for summary judgment that pertained to Counts II-V. In other words, Defendants may not have incurred the expenses associated with moving for summary judgment on those four counts. The Court does, however, agree with one part of the response in Plaintiffs' Sur-Reply brief: "Plaintiffs should not be sanctioned for their actions." That statement is true–because it is Plaintiffs' counsel who should, and will, be sanctioned for failure to respond to Defendants' counsel's efforts to obtain concurrence.

As to determining a reasonable sanction amount in this case, the Court has considered the following. First, the briefing regarding Counts II-V took up about five pages of Defendants' brief in support of their motion for summary judgment. Second, in all of their filings, Defendants have not requested any specific amount that would compensate Defendants for "the excess costs, expenses, and attorneys' fees reasonably incurred because of" Plaintiffs' counsel's failure to concur. Likewise, Defendants have not provided the Court with any invoices that might be helpful in ascertaining such an amount. Thus, requiring Defendants to do so now would require Defendants to incur additional expenses in order to provide the Court with such materials, and the Court typically does not include such expenses in assessing sanctions.

Third, although Defendants' counsel sought concurrence from Plaintiffs' counsel prior to filing the motion for summary judgment, such concurrence was sought only one day prior to the day the motion for summary judgment was filed. In the experience of the Court, this means it is highly probable that Defendants' counsel had already completed their research on all four counts–and likely the drafting of the motion and brief–prior to seeking concurrence. In other words, Defendants would have incurred essentially the same expense even if concurrence had been obtained. In addition, given that the motion was filed only one day after the request for concurrence, it is highly possible that Plaintiffs' counsel did not have an adequate opportunity to respond–at least in an informed, reasoned manner–to the request for concurrence before the motion for summary judgment was filed.

For all of the foregoing reasons, the Court concludes that Two Hundred Fifty Dollars ($250.00) is a reasonable sanction against Plaintiffs' counsel for failing to concur in the dismissal of Counts II-V prior to Defendants filing the motion for summary judgment. Plaintiffs' counsel shall pay such amount to Defendants' counsel within 60 days of the date of this Opinion and Order.

24

# V.  CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket #21) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File a Sur-Reply (Docket #25) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File an Amended Complaint (Docket #26) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' counsel shall pay to Defendants' counsel the amount of $250.00 within 60 days of the date of this Opinion and Order.

IT IS FURTHER ORDERED that counsel for the parties appear for a Final Pre-trial Conference on June 12, 2012, at 11:00 A.M., 526 Water Street, Port Huron, MI.  All counsel must be present, as well as the clients and/or those with full settlement authority.  The proposed joint final pretrial order, along with joint-agreed upon jury instructions, shall be submitted to the Judge's Chambers at the Final Pretrial/Settlement Conference.  If necessary, the case will be scheduled for a trial date at the conference.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 29, 2012.

S/Marie E. Verlinde
Case Manager
(810) 984-3290