1              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MICHIGAN
2                   SOUTHERN DIVISION

3
MICHAEL DUPREE, JR. a Colorado Resident
4  MICHAEL DUPREE, SR. and DARLENE DUPREE,
his parents, Residents of the Country of Austria,
5
6                   Plaintiffs.

7

8      v.                    Case No. 10-12094

9

10  CRANBROOK EDUCATIONAL COMMUNITY,
JOHN J. WINTER and CHARLES SHAW,
11
12                   Defendants.

13  _____/

14        DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

15      BEFORE THE HONORABLE LAWRENCE P. ZATKOFF
              United States District Judge
16       733 US Courthouse & Federal Building
                 526 Water Street
17             Port Huron, Michigan
              Thursday, March 15, 2012
18
19  APPEARANCES:

20        CHRISTOPHER R. SCIOTTI
          24825 Little Mack
21        St. Clair Shores, MI 48080
          On behalf of the Plaintiffs.
22
          RUSSELL S. LINDEN
23        TARA E. MAHONEY
          Honigman, Miller, Schwartz & Cohn LLP
24        2290 First National Building
          Detroit, MI 48226
25        On behalf of the Defendants.


                Dupree v Cranbrook 10-12094

1

2    To Obtain a Certified Transcript:
     Carol S. Sapala, RMR, FCRR
3    313.961.7552
     www.transcriptorders.com
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

```
 1

 2

 3                    C  O  N  T  E  N  T  S

 4        _____

 5   IDENTIFICATION                            PAGE

 6

 7   WITNESSES

 8   None.

 9   Defendant's Motion For Summary Judgment      4

10

11

12

13   Certificate of Court Reporter               47

14

15

16                    E  X  H  I  B  I  T  S

17

18        _____

19   IDENTIFICATION                  MARKED    RECEIVED

20

21                    None.

22

23

24

25
```

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1          Port Huron, Michigan

2          Thursday, March 15, 2012

3          11:10 a.m.

4      THE CLERK:  Calling case number 10-12094, Dupree

5  versus Cranbrook.

6      THE COURT:  Morning, counselors.

7      MR. SCIOTTI:  Good morning, Your Honor.

8      THE COURT:  Would you please place your

9  appearances on the record.

10     MR. SCIOTTI:  Judge, Christopher Sciotti, on

11 behalf of the plaintiff.

12     MR. LINDEN:  Good morning, Your Honor.  Russell

13 Linden and Tara Mahoney on behalf of all defendants.

14     THE COURT:  Okay.  Thank you.

15     Mr. Linden, this is your motion is it not?

16     MR. LINDEN:  Yes, it is, Your Honor.

17     THE COURT:  Okay.  I'm going to allow each side 15

18 minutes or so; we're not going to be terribly strict

19 about that.  But you may proceed.

20     MR. LINDEN:  Thank you, Your Honor.

21     This is the defendant's motion for summary judgment

22 and the facts will establish that summary judgment on all

23 plaintiff's claims are warranted for the following

24 reasons.

25     The claims that the defendants originally filed in

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1  this case and I use the word "originally," because this

2  case is in an unusual poster, were six claims.

3      There were there are a fraud claim, fraud

4  misrepresentation claim, a breach of contract claim, both

5  those claims under Michigan law.

6      And then there were four federal claims alleged in

7  the original complaint; mail fraud, wire fraud, extortion

8  and RICO.

9      And, Your Honor, the reason I use the term

10  "originally" for purposes of indicating that those claims

11  were pending is when we got the response to our Motion For

12  Summary Judgment, much to our surprise, the plaintiffs had

13  quote, unquote, withdrawn their four federal claims.

14      But I'll proceed for the time being, Your Honor,

15  unless you think differently, to address all those claims

16  in this oral argument.

17      So in this case, Your Honor, the basis for all those

18  claims arise from the fact that one of the plaintiffs,

19  Michael Dupree, Junior, who had attended Cranbrook

20  Educational School, was dismissed from that school on

21  June 1, 2004.

22      The other two plaintiffs in this case are his

23  parents, Michael and Darlene Dupree.

24      The defendants in this case are Cranbrook Educational

25  Community Schools which is where Mr. Dupree was attending

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   school when he was dismissed on June 1, 2004.

2       John Winter, who was then the Dean of Boys School at

3   Cranbrook and Charles Shaw, the head of the upper schools.

4       What's critical for purposes of considering this

5   motion for summary judgment, Your Honor, is Mr. Dupree,

6   Junior, the son, was attending Cranbrook Schools pursuant

7   to an enrollment agreement which was signed by the father.

8       The father was the only party to that contract and

9   the only other party to that contract would have been

10  Cranbrook Schools.

11      THE COURT:  Let me just ask you a question about

12  the contract.

13      Is it your position that under this contract, the

14  defendant could dismiss a student for any reason

15  satisfactory to the defendant at any time?

16      MR. LINDEN:  Your Honor, that's what the contract

17  provides for.

18      THE COURT:  So the answer is yes.

19      MR. LINDEN:  Yes.  That would be correct, Your

20  Honor.

21      THE COURT:  So they could at any time for maybe

22  having facial hair or having an earring that offended

23  somebody or a hair cut that they didn't like, they

24  could dismiss that person under that contract?

25      MR. LINDEN:  Under that contract.

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1        THE COURT:  At any time.

2        MR. LINDEN:  That would not prevent that person

3    from otherwise asserting a claim under state or federal

4    law alleging the reasons for actually throwing the

5    student out of school violated the anti-discrimination

6    statute.

7        THE COURT:  But you're claiming that that contract

8    gave the defendant, your client, the power to dismiss

9    any student at any time for reasons only satisfactory

10   to the defendant.

11       MR. LINDEN:  That is correct, Your Honor.

12       THE COURT:  Okay.

13       MR. LINDEN:  So the contract besides and the

14   specific language that you're referencing, Your Honor,

15   it says:

16       Cranbrook reserves the right to dismiss at

17       any time if, in its judgment the student is

18       not making an effort, progress or behavior or

19       influence.

20       THE COURT:  That's totally up to the defendant to

21   make that determination?

22       MR. LINDEN:  Correct, Your Honor.

23       THE COURT:  Okay.

24       MR. LINDEN:  But the contract also provides that

25   the Dupree's son, just like any other student, had a

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   responsibility for abiding by the policies and

2   procedures stated in the school's handbook.

3        THE COURT:  Let's talk about what happened to this

4   person.  Let's just call him the plaintiff.  The

5   student is the person I'm referring to.

6        As I understand the facts, you can correct me if I'm

7   wrong.  That in September of 2003, he entered into his

8   last year at the defendant's school; is that correct?

9        MR. LINDEN:  That is correct, Your Honor.

10       THE COURT:  Then in the first week of that,

11  starting in September of 2003, he allegedly shared his

12  computer password with another individual; is that

13  correct?

14       MR. LINDEN:  Plaintiff claims that in

15  September 2003 he shared his password with another

16  student.

17       THE COURT:  He also claims that Dr. Lamm who was

18  the individual who was in charge of that particular

19  aspect of the curriculum knew of this and that within

20  days he then changed his password again.  Is that

21  correct?

22       MR. LINDEN:  That's the plaintiff's testimony,

23  Your Honor.

24       THE COURT:  Okay.  Then in March of 2004, he was

25  called into the office or something by the Dean of

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

 1  Boys.  He was searched.  Is that correct?

 2      MR. LINDEN:  Well you use the term "search".  He

 3  was called into the Dean's School -- into the office.

 4      The testimony from both the plaintiff's son and the

 5  Mr. Winter who was the school official involved in this,

 6  noticed there was a pipe in his bag and he was asked if

 7  there was a pipe there.

 8      To that extent, Your Honor, I guess that could be

 9  characterized as a search.

10      THE COURT:  So he was searched and some pipe was

11  found.  And this was a pipe for smoking and not like a

12  drainage pipe or something like that.

13      MR. LINDEN:  That's correct, Your Honor.

14      THE COURT:  And so this smoking pipe then

15  implicated him as what?  He was, he was -- do I

16  understand then charged with possession of drug

17  paraphernalia?

18      MR. LINDEN:  Right.

19      The school handbook which is referenced in the

20  Enrollment Contract which is undisputed was received by

21  the plaintiffs --

22      THE COURT:  Okay.

23      MR. LINDEN:  -- has a code of conduct and it

24  spells out major school violations.  One of the major

25  school violations is possession of drug paraphernalia.

Defendant's Motion For Summary Judgment 3-15-2012

1      THE COURT:  I -- in looking at these briefs again

2   yesterday, I could not locate the lab report on this

3   pipe; the evidence showing that it was, in fact, a

4   controlled substance.  Do you have that?

5      MR. LINDEN:  There was no lab report, Your Honor.

6   The way, the way this process works is as set forth in

7   the handbook, the handbook's Exhibit 2 to our motion

8   for summary judgment, it spells out there's a --

9   there's the rules, there's a procedure by which

10  students are adjudicated for violating those rules

11  through something known as the Conduct Review Board.

12     The Conduct Review Board reviews the evidence and

13  makes a determination whether or not there was a violation

14  of the --

15     THE COURT:  You mean this was not sent for any

16  analysis with respect to what the substance was in it?

17     MR. LINDEN:  Your Honor, the --

18     THE COURT:  We'll take a yes or no.

19     MR. LINDEN:  No.  No, Your Honor.

20     THE COURT:  So then how, how was it determined

21  that this pipe, which is a legal instrument, is it not?

22     A pipe -- just possessing a pipe is not any kind of

23  violation of law or anything like that.  How was it

24  determined that this pipe was drug paraphernalia?

25     MR. LINDEN:  Your Honor, the rule spells out

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   possession of drug paraphernalia -- to prove it's drug

2   paraphernalia I submit to the Court, you don't have to

3   send out to a lab to substantiate it was used for

4   drugs.

5        THE COURT:  Well that's what I'm asking.  How do

6   you know it was used for drugs if it wasn't tested?

7        MR. LINDEN:  Your Honor, I guess I'm going to

8   quote one of the Supreme Court Justices when it comes

9   to definition of obscenity.  You know it when you see

10  it.

11       It's pretty common knowledge what a pipe looks like

12  for smoking marijuana.

13       THE COURT:  Well, not to me.  It really is not.

14  And I'm not being facetious.  It's not to me.  A pipe

15  is a pipe.

16       Do you know how many prior Presidents of the United

17  States smoked pipes?

18       MR. LINDEN:  Well, I can also think of General

19  McArthur.  So I understand that, Your Honor.

20       THE COURT:  There's nothing wrong with smoking a

21  pipe is there?

22       My question is how do you know and how was it

23  determined that this pipe had contained some sort of

24  illegal substance?

25       MR. LINDEN:  Again, Your Honor, the rule was not

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1  possession of a paraphernalia that contained illegal

2  substance.

3      The rule says possession of drug paraphernalia.

4      THE COURT:  Well, how do you know it's drug

5  paraphernalia if it wasn't tested for drugs?

6      MR. LINDEN:  Well again, Your Honor, you don't

7  know.  But, again, there are -- there's drug

8  paraphernalia and there's things that are not used for

9  drugs paraphernalia.

10     THE COURT:  I guess.

11     MR. LINDEN:  It's clear -- it's clear here.

12     THE COURT:  How do you know, though?  I guess I'm

13  really at a loss.  How would you know what pipe is used

14  for smoking a controlled substance and what pipe is

15  used for Bunker Hill tobacco?

16     MR. LINDEN:  The fact of the matter is, Your

17  Honor, he was found to have possession of a pipe.  He

18  admitted it was in his possession.

19     THE COURT:  He also said it wasn't his.

20     MR. LINDEN:  Correct.  Which is no surprise.  But,

21  nevertheless, Your Honor, there's a process set forth

22  in the handbook.

23     THE COURT:  Okay.

24     MR. LINDEN:  There's an ability to go through a

25  process to challenge the determination; that never was

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1  done by any of the plaintiffs.

2      THE COURT:  So as I understand it then in March he

3  was searched.  There was a pipe -- a smoking pipe found

4  in his possession which he denied was his.

5      Based on that finding, somebody made a ruling that

6  this was drug paraphernalia without any scientific

7  investigation or laboratory analysis of this.

8      I just want to make sure I understand the facts.  Is

9  that correct?

10     MR. LINDEN:  Well as concerns -- that, that's a

11 fairly conclusory summary of the facts that don't,

12 don't take in total a lot of the, the critical things;

13 such as who was on the Conduct Review Board that made

14 the determination, Your Honor.

15     THE COURT:  Was there any expert in controlled

16 substances on that review board?

17     MR. LINDEN:  There was no requirement, Your Honor,

18 that there had to be an expert on it.

19     THE COURT:  I'll take -- I'll take a simple yes or

20 no.  Was there any expert --

21     MR. LINDEN:  No there was not, Your Honor.

22     THE COURT:  -- that analyzed that pipe on that

23 review board?

24     MR. LINDEN:  No, there was not.

25     THE COURT:  Okay.  I just want to understand the

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

 1 facts.

 2     MR. LINDEN:  On that Conduct Review Board -- just

 3 so to help you further understand the facts, would have

 4 been the son's peers, students --

 5     THE COURT:  Okay.

 6     MR. LINDEN:  --  and members of the faculty.

 7     THE COURT:  Okay.  Now the members of the faculty

 8 and the Dean of Boys, are you saying that they have

 9 their own independent experience with controlled

10 substances so that they can identify these items as

11 being illegal?

12     MR. LINDEN:  In these times, Your Honor, I think

13 anybody of that age can -- high school students, would

14 be -- anybody who's a teacher in any school in any

15 major metropolitan area would know drug paraphernalia

16 when they see it.

17     THE COURT:  How would they know it?

18     MR. LINDEN:  How would they know it?  It's pretty

19 common in our communities at this stage, Your Honor.

20     THE COURT:  Okay.  All right.

21     MR. LINDEN:  So I'll pick up where you left off

22 with the facts if you don't mind, Your Honor.

23     THE COURT:  What, he's placed on probation then in

24 March?

25     MR. LINDEN:  Correct.

Defendant's Motion For Summary Judgment 3-15-2012

1      THE COURT:  Then he's placed on probation until
2  when?
3      MR. LINDEN:  June 4, 2004.
4      THE COURT:  Okay.  How old are these students when
5  they're senior -- in the senior year?
6      MR. LINDEN:  They could be anywhere's from 17, 18,
7  19 years old.
8      Now I'm trying to think of exactly how old Michael
9  Dupree was, because when I took his deposition in the Fall
10  of 2005.  2010, he was 25 years old.
11     THE COURT:  Okay.  So he was placed on probation
12  until 6-3?
13     MR. LINDEN:  6-4-2004.  And notice he was placed
14  on probation was provided in writing by date of letter
15  March 12, 2004 to his parents.
16     THE COURT:  What's the reason stated in there?
17     MR. LINDEN:  That's Exhibit 4, Your Honor.  For
18  the record it says:
19         As you know from our conversation -- this is
20         addressed to Mr. and Mrs. Michael Dupree, his
21         parents, the two other plaintiffs in this
22         case.
23         As you know from our conversation, Michael
24         came before the Conduct Review Board to
25         explain the reason for having a pipe designed

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1       for the use of substances in his book bag

2       while at the school.

3       He knows that possessing this type of

4       material violates major school rules.

5       Please refer to page 72 of The Community

6       Handbook.

7       THE COURT:  This is the pipe that was not tested

8  we're talking about.

9       MR. LINDEN:  That's correct, Your Honor.

10       THE COURT:  All right.

11       MR. LINDEN:

12       Michael explained that he was holding onto

13       the pipe for a friend; that he had planned on

14       returning it to his friend later that day

15       after school.

16       Michael's choice of conduct is unsettling.

17       He informed the Committee that he has learned

18       great deal from this and that it is his

19       desire to complete his senior year and earn a

20       diploma from Cranbrook.

21       THE COURT:  Which he did.  He completed all of his

22  courses and passed all of his examinations as I

23  understand it.  Is that correct?

24       MR. LINDEN:  He completed all of his examinations,

25  Your Honor.  At the time that it was announced that he

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   was going to be dismissed to his parents which would

2   have been May 28, 2004, Your Honor, he had not

3   completed all his course work.

4       THE COURT:  Did he eventually complete all his

5   course work?

6       MR. LINDEN:  He did eventually complete his course

7   work, Your Honor.

8       THE COURT:  Then he was kicked out of school for

9   violating his probation.

10      MR. LINDEN:  Correct.

11      THE COURT:  What was the violation?

12      MR. LINDEN:  The violation was an investigation

13  was triggered by somebody announcing there was

14  something wrong with the computers.  It looked as if

15  somebody had accessed other students' computer's

16  information as well as teacher information, as well as

17  exams.

18      A full blown investigation was conducted.  A copy of

19  the investigation is attached as Exhibit 5 to our motion

20  for summary judgment.

21      THE COURT:  So that was investigated, but not the

22  pipe.

23      MR. LINDEN:  Well, the pipe was investigated in

24  the sense, Your Honor, it was discovered on the

25  plaintiff's son.

Defendant's Motion For Summary Judgment 3-15-2012

1       THE COURT:  Who said it wasn't his and he was

2  going to give it back to whoever gave it to him.

3       Was that taken into consideration?

4       MR. LINDEN:  You heard in the review -- in the

5  letter I read, they heard that at the hearing on the

6  Conduct Review Board.

7       THE COURT:  Okay.

8       MR. LINDEN:  And factored that into their decision

9  making.

10      Your Honor, in many respects, the situation about the

11  discovery of the pipe in his possession in a lot of ways

12  is no different then our local Police Department pulling

13  somebody over, finding that person in possession of, of a

14  pipe.

15      THE COURT:  Don't you have to have an intent to

16  possess something?

17      MR. LINDEN:  Well, that's for -- that is for

18  that's -- when we're talking about criminal, which

19  there's, there's a statute.  There's elements that have

20  to be proven.  There's certain other things that go

21  with that that aren't required here.

22      THE COURT:  Basically that's what the standard

23  that was applied to this plaintiff.  He had possession

24  of the pipe and that was the end of it.  Just like a

25  person who is a convicted felon has possession of a

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

 1  firearm.  They all say it's not mine.  I didn't know I

 2  had it.

 3      But the law is if you possess it, you're a convicted

 4  felon, you're guilty.  That's the same standard that was

 5  used on the plaintiff here.

 6      MR. LINDEN:  Essentially you're correct, Your

 7  Honor.  Strict liability.

 8      THE COURT:  Why was -- what was the violation of

 9  his probation?

10      MR. LINDEN:  The violation of his probation was

11  his -- the investigation led Cranbrook to believe that

12  he was involved in the hacking of computers because

13  most of this information was found on his computer.

14      And the information we're talking about, Your Honor,

15  was passwords for a total of, if I remember correctly, 167

16  students and faculty members' passwords so they could

17  access it.  They had accessed exams.  And there was also

18  gambling on the Cranbrook --

19      THE COURT:  Later you found out that it was

20  somebody else.

21      MR. LINDEN:  No.  Two people were, were

22  simultaneously -- the plaintiff's son and this other

23  individual were both found out at the same time, both

24  of them were, were dealt with pretty much the same way.

25      THE COURT:  So the -- are you saying that the fact

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1    that he shared his password in September of '03 had

2    nothing to do with the violating his probation?

3        MR. LINDEN:  Your Honor, the fact that he may have

4    shared his password in September of 2003 doesn't

5    relieve him from being punished in May of 2004 for

6    events that might have subsequently occurred from, from

7    giving the password and Cranbrook's discovery in May of

8    2004.

9        THE COURT:  I just want to be crystal clear on why

10   he violated his probation.

11       You're saying that there was an investigation done

12   and that he was found to have hacked into the computer

13   system?

14       MR. LINDEN:  At a minimum, he was involved in the

15   hacking.

16       THE COURT:  This Committee find him guilty of that

17   offense?

18       MR. LINDEN:  Yes, they did, Your Honor.

19       THE COURT:  I thought -- this is why I'm asking

20   these questions.  I thought somebody else confessed to

21   it, said that he was the sole person who did it.

22       MR. LINDEN:  No.  There's no record evidence of

23   that, Your Honor.

24       THE COURT:  So the reason he was violated on his

25   probation was this computer investigation and he was

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

 1   found to have committed that offense.

 2        MR. LINDEN:  Correct.  And the handbook provides,

 3   as did the letter putting him on probation, the letter

 4   dated March 12, 2004 which is Exhibit 1 to the summary

 5   judgment motion, clearly gave him notice that if he

 6   violated any other major school rules while on

 7   probation, he would be dismissed by June 4.

 8        THE COURT:  That was the rule he violated?

 9        MR. LINDEN:  Correct.

10        THE COURT:  So his sharing of the password in '03

11   had nothing to do with this?

12        MR. LINDEN:  Well, it did in the sense, Your

13   Honor, his accomplice, the person Cranbrook believed

14   that they were acting in concert together, also had his

15   password.

16        So there is a connection there.  I can't say there's

17   no connection with the fact that providing the password in

18   September --

19        THE COURT:  He had the plaintiff's password.

20        MR. LINDEN:  Correct.

21        THE COURT:  Why, why is the plaintiff listed as

22   withdrawn instead of kicked out?

23        MR. LINDEN:  As the deposition testimony of Arlyce

24   Seibert who's the head of the schools at Cranbrook, as

25   well as I believe Charles Shaw, one of the

Defendant's Motion For Summary Judgment 3-15-2012

1   co-defendants said -- if you look at the transcript

2   which is Exhibit A to our motion for summary judgment,

3   if you look at the first page, there's only two

4   possible notations you can put on there.  And it was a

5   computer generated document; either graduated or

6   withdrawn.  And so, consequently, you've got the date

7   on there.

8        THE COURT:  Who makes that rule?

9        MR. LINDEN:  Well, I don't know if it's a rule.

10  It's obviously something Cranbrook --

11       THE COURT:  So they could have added booted out if

12  they wanted.

13       MR. LINDEN:  If they wanted.  But they also

14  explained to the plaintiffs -- as the deposition

15  testimony of the plaintiffs established, before the

16  transcript was issued, that the notation on the

17  transcript was going to indicate withdrawal.

18       THE COURT:  Certainly this was not a withdrawal,

19  was it?

20       MR. LINDEN:  In a literal sense, no it was not,

21  Your Honor.  He was dismissed.

22       THE COURT:  He was dismissed, kicked out of

23  school.

24       MR. LINDEN:  Correct.

25       THE COURT:  So why did they use the word

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   "withdrawal"?

2       MR. LINDEN:  Again, Your Honor, as I explained as

3   the witness's testified in this case, this was -- this

4   transcript was computer-generated.  And you know --

5       THE COURT:  Oh, okay.  The answer to that is the

6   computer did it?

7       MR. LINDEN:  I'm not going to say that but, but

8   the explanation is computer-generated.  There's two

9   choices here.

10      THE COURT:  Well that's, that's the choice of the

11  defendant.

12      MR. LINDEN:  I would agree with that.  I'm not

13  going to quibble with you with that, Your Honor.

14      I'm explaining to you why the notation on the

15  transcript -- there's a date on there.  The only things

16  adjacent to the date would be the withdrawal date above

17  that, graduation date.

18      THE COURT:  So we can agree that this, this

19  plaintiff did not withdraw from Cranbrook.

20      MR. LINDEN:  No.  He was dismissed.

21      THE COURT:  All right.  Would you agree that one

22  of the definitions of withdrawal is the discontinuation

23  of the use of an addictive substance?  I just got that

24  from the dictionary.

25      MR. LINDEN:  Without seeing that, Your Honor, I'd

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   have to take your word.

2        THE COURT:  I think it in <u>American Heritage</u>

3   <u>Collegiate Dictionary</u>.  Does that have anything to do

4   with the drug paraphernalia?

5        MR. LINDEN:  No it does not, Your Honor.

6        THE COURT:  So you're not saying that he was in

7   withdrawal from being addicted to something?

8        MR. LINDEN:  Definitely not, Your Honor.

9        THE COURT:  But you did say withdrawal.

10        MR. LINDEN:  There's a date adjacent to the

11   withdrawal date.

12        THE COURT:  But you're not alleging that he's

13   withdrawing from some addiction.

14        MR. LINDEN:  Definitely not, Your Honor.

15        THE COURT:  Okay.  You may continue.

16        MR. LINDEN:  All right.  So, so just to recap the

17   facts.

18        So March 12, 2004 he's placed on probation.  The

19   terms of his probation were spelled out in writing,

20   provided to his parents, explained to him.  That's Exhibit

21   1.

22        And as we've just briefly discussed, Your Honor,

23   there's reasons to investigate this computer hacking in

24   the latter part of May, which culminates in a Conduct

25   Review Board hearing regarding his allegedly relating the

Defendant's Motion For Summary Judgment 3-15-2012

1  terms of his probation as a result of his being involved

2  in this computer hacking.

3       THE COURT:  What happened to Randy Bruder?

4       MR. LINDEN:  Kicked out of school.

5       THE COURT:  Did he have a hearing, also?

6       MR. LINDEN:  Your Honor, I believe he did, but I

7  don't know that for a fact.

8       THE COURT:  Was he on probation?

9       MR. LINDEN:  Your Honor, I don't know that.

10      THE COURT:  Okay.

11      MR. LINDEN:  So the hearing's conducted on

12 May 28th of 2004.  The recommendation is based on his

13 violating the terms of his probation, for him to be

14 dismissed from school.

15      The school meets with the plaintiff parents on

16 May 28th, tells them -- informs them that their son's

17 being dismissed from school for violating the terms of his

18 probation.

19      Then on June 1, the formal letter goes out to the

20 plaintiff parents advising them that their son's dismissed

21 from school effective June 1.  That, Your Honor, is,

22 again, an exhibit.  It's Exhibit 7 to our motion for

23 summary judgment.

24      Graduation for the senior class would be on

25 June 4, 2004.

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1      The testimony of Arlyce Seibert which is attached

2  and referenced in our motion for summary judgment

3  indicates for purposes of getting your diploma, being

4  considered to graduate, even if your academic work is

5  done, you must be in good standing to receive your

6  diploma to graduate.

7      In addition to being determined to being in good

8  standing, the faculty votes to issue a diploma the day

9  before graduation, which would have been June 4, 2004.

10     And for purposes of issuing that diploma, the faculty

11  considers the student's academic record as well as their

12  behavior.  And there was no vote taken to issue the

13  plaintiff's son because he had already been dismissed.

14     And this is all found in our brief and the deposition

15  testimony of Arlyce Seibert at pages 27, 48, 49 and 54.

16  Those facts have not been disputed.

17     It's also undisputed, based on the testimony of the

18  father plaintiff, that before the transcript that we just

19  got done discussing, Your Honor, was issued with the

20  withdrawal notation on it, the plaintiffs were advised in

21  advance that that was going to happen and an explanation

22  was given that's cited in our brief for reference to the

23  Court.  The father plaintiff testified at pages 77 through

24  79 about that.

25     As it is, Your Honor, those facts are undisputed.

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1    It's also undisputed that in the Fall of 2004, he,

2    plaintiff, enrolled in Purdue University which he had

3    already been accepted to prior to all this occurring.

4        So, Your Honor, those are the facts and none of those

5    facts have been disputed by the plaintiffs.

6        Now if we talk about the claims, let's first talk

7    about the four federal claims.  As I indicated at the

8    beginning of my argument, Your Honor, the plaintiffs

9    surprisingly indicated in their response that they were

10   withdrawing those claims.  That's the claims for

11   extortion, wire fraud, mail fraud and RICO.

12       In advance of filing our Motion For Summary Judgment

13   consistent with the local rules, we sought concurrence.

14   It's certified in our motion we've tried to obtain that on

15   March 1.  We never got a response to that.

16       The first we ever heard those claims were being

17   withdrawn after having litigated this case and having

18   taken depositions to defend those claims, after spending

19   time in this brief arguing for the dismissal of them, the

20   first time we heard those claims are going to be withdrawn

21   was in response to the Motion For Summary Judgment.

22       THE COURT:  When was that filed?

23       MR. LINDEN:  The motion for summary judgment?

24       THE COURT:  No.  When was the withdrawal filed?

25       MR. LINDEN:  There's never been a withdrawal

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   formally filed.

2        If we're talking about in terms about compliance with

3   Federal Rule of Civil Procedure 41 which would have

4   been --

5        THE COURT:  So you sought concurrence the day

6   before you filed the motion, right?

7        MR. LINDEN:  I don't recall the day.  I got the

8   docket record report here.

9        My review of the record that would be correct, Your

10  Honor.

11       THE COURT:  Okay.

12       MR. LINDEN:  And regardless, Your Honor,

13  depositions were taken in this case.  For example,

14  depositions of the plaintiffs.  Considerable time was

15  spent on those claims deposing the plaintiffs.

16       So the federal claims from defendant's perspective,

17  given the plaintiffs essentially abandoned them for those

18  reasons, they should be dismissed.

19       To the extent the Court's not going to give those

20  reasons credence for dismissing the claims, the reasons

21  otherwise stated in our brief warrant granting summary

22  judgment on the federal claims.  I'll quickly go through

23  the reasons for that, Your Honor.

24       First of all in the RICO claim, the law is pretty

25  settled there's a four year statute of limitations.  This

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   lawsuit was not filed until May of 2010.

2       THE COURT:  These claims have been withdrawn.

3       MR. LINDEN:  Okay.

4       THE COURT:  We don't have to talk about them.

5       MR. LINDEN:  I'll quickly move into the two

6   remaining claims, Your Honor.

7       So we got claims of one fraud and misrepresentation

8   and second breach of contract.  Let's talk about the fraud

9   and misrepresentation claim.

10      So the premise, the premises for that claim is,

11  number one, that there was a false representation made

12  with regard to the withdrawal notation on the transcript.

13      And, number two, that that if the plaintiff satisfied

14  his academic requirements, he would have automatically

15  gotten his diploma and be deemed to graduate.

16      So on the withdrawal aspect, Your Honor, both sides

17  agree on what the elements are for fraud and

18  misrepresentation claim.

19      And the elements for that claim would be the

20  defendants must have made a material misrepresentation, it

21  was false.

22      Third, when the defendants made the representation,

23  they knew it was false or made it recklessly without any

24  knowledge of his truth.

25      Number four, defendants made it with the intention it

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   would be acted upon by plaintiffs.

2        Five, plaintiffs acted in reliance upon it.  And

3   last, plaintiffs suffered injury.

4        So I'm going to focus on the last three elements of

5   the fraud.

6        THE COURT:  We really don't need to go into this,

7   this issue.  Why don't you go into the contract issue.

8        MR. LINDEN:  Okay.  On the contract claim, Your

9   Honor, as you noted at the beginning of this argument,

10  the contract provides that Cranbrook reserved the

11  discretion that if the student was not satisfactorily

12  meeting the expectations, they could dismiss the

13  student at any time.

14       Contract also specified that as a condition of

15  enrollment, the student had to comply with the code of

16  conduct, among other things in the handbook.

17       The facts as established here, Your Honor, are, A,

18  the plaintiff violated the code of conduct.  He was

19  subject to two Conduct Review Board hearings.  First,

20  putting him on probation.

21       The second one adjudicating his violation of the

22  probation; and as a result, he was terminated.

23       Cranbrook's actions were clearly in conformity with

24  the contract.  There's no evidence that they breached the

25  contract.  And as it is, the contract theory of the

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   plaintiff is predicated on the notion that the plaintiff's

2   son satisfied the academic requirements he would get the

3   degree and diploma.

4        The contract is very clear, Your Honor.  It doesn't

5   say if you satisfy the academic requirements, you get a

6   degree and diploma.  There were these other things that we

7   just talked about.

8        So, consequently, we submit, Your Honor, the

9   plaintiff cannot make out there breach of contract claim.

10       As it is, Your Honor, for what it's worth on the

11  breach of contract claim, the, the only proper parties for

12  that claim would be the father, because he's the only

13  party to that contract with the school.  The other

14  plaintiffs and the defendants really have no bearing on

15  that claim.

16       So I guess, Your Honor, unless you have any other

17  questions for the reasons I've stated, for the reasons

18  stated in our brief, the defendants respectfully request

19  that Motion For Summary Judgment be granted.

20       THE COURT:  Okay.  Thank you.

21       MR. LINDEN:  You're welcome.

22       THE COURT:  Mr. Sciotti?

23       MR. SCIOTTI:  Thank you, judge.

24       If it please the Court, judge, the only relief we're

25  requesting is that the Court enter an order compelling the

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   defendants to issue him a diploma.

2       We have a motion to allow us to file an amended

3   complaint asking for equitable relief, but I'll address

4   the issues here.

5       Let's look at the facts of what happened to this

6   really child actually.  He completed all his requirements.

7   He's placed on probation in March '04 for possession of a

8   pipe.

9       They didn't do any testing they assumed it was drug

10  paraphernalia.  So he's placed on probation and the

11  parents are sent a letter that your son, Michael, is

12  placed on probation.

13      The violation that they charged him with occurred six

14  months before and so they backstopped it.  He didn't like

15  violate his probation after he was placed on probation.

16  They're claiming, no, you violated your probation six

17  months before.

18      THE COURT:  That's what I was asking counsel for

19  the defendant.  And he says, no, that, that's not the

20  fact.  He's claiming that he violated his probation by

21  hacking into the school computer system.

22      MR. LINDEN:  No.  The violation of probation was

23  giving his password six months before to Randy Bruder.

24      THE COURT:  What evidence do we have of that?

25  That's what I was -- that's what was my belief.

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1      Then when I asked the direct question, I didn't get

2  that answer.

3      MR. LINDEN:  Judge, I -- I can point -- I didn't

4  expect that question because I thought that was

5  settled.  I thought that was a settled fact, because

6  that's what they violate, his probation, when he gave

7  his password with Cranbrook's consent, he gave it to

8  him for a few days with Dr. Lamm's consent.

9      THE COURT:  What evidence do you have of that, of

10 Dr. Lamm's consent?

11     MR. LINDEN:  Just the plaintiffs, the plaintiff's

12 deposition.

13     THE COURT:  All right.

14     MR. LINDEN:  We didn't take Dr. Lamm's deposition.

15     THE COURT:  Okay.

16     MR. LINDEN:  The plaintiff's deposition.

17     But that was the violation was that he gave his

18 password out six months before this and that Randy Bruder

19 he, he was the -- there was no evidence, actual evidence,

20 that Michael Dupree, Junior, hacked into anything.  He did

21 give his password.  He admitted it.  He doesn't even try

22 to hide it.  He gave his passwords six months before with

23 Dr. Lamm's consent.  They used this after March, after the

24 probation six months before to dismiss him from school.

25     He had completed all of his requirements.  He was --

Defendant's Motion For Summary Judgment 3-15-2012

1   he was done.  He completed all his classes.  And what the

2   defendants want the Court to do under his breach of

3   contract what's the standard here?  They can act

4   arbitrarily, capricious.  There's no standards.  They

5   could do whatever they like.

6        THE COURT:  That's why I asked the question.

7        MR. LINDEN:  I understand that.  That's their

8   answer.  They can do whatever they like to dismiss

9   this.  All we're asking is that the Court issue Michael

10  Dupree a diploma.  His parents paid over $80,000 for

11  his education.  He completed all of his requirements.

12  And there was I -- I mean for a pipe that they didn't

13  test and forgiving a password that they agree that he

14  could give the password to.

15       And I want to address the transcript because --

16  however you look eight that transcripts a fraud, however

17  you look at it.

18       He never withdrew.  They sent to many colleges.

19       THE COURT:  Did your client rely on this

20  withdrawal business?

21       MR. LINDEN:  Let's let me answer it this way.  He

22  had to rely on it because that was his official

23  transcript.  My clients objected to that transcript

24  from the get go.

25       When they -- Mr. Dupree, senior, testified that when

Defendant's Motion For Summary Judgment 3-15-2012

1  he learned that they were going to put withdrawal on there

2  because that's what he told them he objected.  He objected

3  several times, so they were forced to rely on it.

4      When transcripts went to various colleges,

5  Mr. Dupree, Jr. he would have to explain, no, I never

6  withdrew, I was dismissed and then I got my GED.

7      So when, when counsel said he was accepted at Purdue,

8  he was accepted at Purdue with the idea that he was going

9  to graduate from Cranbrook.

10      When he got dismissed he -- his Mom called Purdue,

11  that's in the deposition.  They said, well, if he gets his

12  GED, then we'll accept him.  So he had to get some type of

13  diploma.

14      All we're asking here is -- they refused to correct

15  that transcript.  And I think that the idea that this was

16  computer generated is just so disingenuous.

17      So what if it's computer generated, it's the

18  defendant's document.  Change it.  You can put dismissed

19  on there.  You don't have to go graduation date or

20  withdraw.  Tell the truth.  They didn't tell the truth.

21      THE COURT:  What are the damages you're seeking in

22  this case?

23      That's all you're seeking?

24      MR. LINDEN:  That's all I'm seeking, judge.

25      THE COURT:  Okay.

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1       MR. LINDEN:  He's entitled to a diploma.

2       THE COURT:  What happened to your client, did he

3   graduate from college?

4       MR. LINDEN:  My client has graduated from college.

5   He lives in Denver.  He attended various colleges.

6       I believe it's in my brief, but that transcript went

7   out to -- eight, nine or ten colleges.  That he applied

8   to.  He went to various colleges and now I believe he's

9   running his own business.

10      I understand that not every harm results in a remedy.

11  Governmental immunity.  There's a lot of things.  But in

12  this case, they want the Court to assume on their breach

13  of contract that they can dismiss for whatever reason.

14  And that's not right.  And it's not right that they that

15  transcript was a fraud.  That's not right either and my

16  client deserves a diploma.  He completed all his

17  requirements.

18      THE COURT:  Okay.

19      MR. LINDEN:  Thanks, judge.

20      THE COURT:  Thank you, counselor.

21      Mr. Linden, we'll give you the last word.  Couple

22  minutes if you want a rebuttal.

23      MR. LINDEN:  Thank you, Your Honor.  I appreciate

24  it.

25      THE COURT:  Why didn't you give a diploma; what

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   difference would it make?  He completed all his work,

2   paid his money, passed his tests.

3        MR. LINDEN:  Because my client, Your Honor,

4   exercised its rights consistent with the contract.  I

5   guess I want to quickly respond to a half dozen points

6   raised by plaintiff's counsel.

7        THE COURT:  All right.

8        MR. LINDEN:  First of all with regard to the

9   request for specific performance.  You know as we

10  indicated, Your Honor, there's, there's no -- there's

11  no such claim pending before this Court.

12       There was an attempt to file an amended complaint in

13  the Fall of 2010.  The judge then assigned to the case

14  struck the stipulated order allowing for amendment.

15       THE COURT:  Who was that?  Was that Judge Cleland?

16       MR. LINDEN:  I believe it was Judge Cleland.

17  There was Judge Cleland, Edmunds.

18       THE COURT:  So this case has been reassigned a

19  couple times.

20       MR. LINDEN:  You're the third judge.

21       THE COURT:  Not originally assigned to me.

22       Does the plaintiff have a motion to file an amended

23  complaint?  Do you have one right now?  I mean is there

24  one pending?

25       THE CLERK:  Yes, there is one.

                Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1      THE COURT:  Thank you.  That answers that

2   question.  Go ahead.

3      MR. LINDEN:  I know for the record the notice of

4   appearance today was for purposes of summary judgment

5   only.

6      THE COURT:  Right.

7      MR. LINDEN:  Secondly, this motion -- that the

8   fact that he gave the password in September of 2003

9   somehow gives him a free pass I think is really

10  misleading in this respect, Your Honor.

11     You start with the fact that it's undisputed he gave

12  the password.  Plaintiff's counsel, in fact, acknowledged

13  that.  The fact he's put on probation in March of 2004

14  didn't give him amnesty for any other misconduct he

15  engaged in.

16     THE COURT:  Are you claiming that he could use the

17  password sharing in September of 2003 to violate his

18  probation that was started in March of '04?

19     MR. LINDEN:  There's a big if, Your Honor.  If it

20  was subsequently discovered.  It wasn't just merely

21  giving the password, but there was some other

22  misconduct connected to it.

23     THE COURT:  We have these cases all the time in

24  the criminal context and it's pretty much given that

25  you're not going to be able to violate anybody's

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1    probation or supervised release for an act that was

2    committed prior to the commencement of probation or

3    supervised release.  That's pretty much standard

4    equipment.

5        MR. LINDEN:  That's standard equipment in that

6    universe, Your Honor.  I submit there's a different

7    rules -- different set of rules that apply in a school

8    setting.

9        THE COURT:  Why?

10       MR. LINDEN:  U.S. Supreme Court for example in the

11   context of search and seizure.

12       THE COURT:  If those kind of rules apply to

13   criminal defendants, are you saying that they don't

14   apply to students?

15       MR. LINDEN:  I'm saying that's correct, Your

16   Honor.  What I just alluded to is the Supreme Court,

17   for example, in the realm of the Fourth Amendment has

18   made a distinction between a criminal who's entitled to

19   certain procedural niceties under the Fourth Amendment

20   a student would not necessarily get it once they step

21   into the school house.

22       THE COURT:  Is that what you teach at Cranbrook

23   that criminals have more rights then students at

24   Cranbrook?

25       MR. LINDEN:  If they're teaching constitutional

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1    law, Your Honor, they probably do.  For example, if I

2    remember U.S. Supreme Court case --

3        THE COURT:  Do you advertise that in your

4    advertisement to try to get students into the school?

5        MR. LINDEN:  I don't know what advertisements

6    Cranbrook do, Your Honor.

7        THE COURT:  All right.

8        MR. LINDEN:  So coming back to the password, we

9    attached as an exhibit, Your Honor, I believe it was

10   exhibit -- just want to get the number.  So Exhibit 5

11   is the investigative -- the report of the investigation

12   regarding the hacking.

13       If you look at it, Your Honor, it says based on the

14   request for the IT to investigate the network and H drive

15   activity of two students, specifically the other students

16   name is redacted out for that student's protection and

17   Michael Dupree, the IT team discovered the following

18   information.  And there's a list of offenses involved

19   here.

20           So you got evidence of a creation of a decoy

21           to obtain other people's passwords, at least

22           167 faculty and classmen freshman,

23           sophomores, *et cetera*, I.D.'s and passwords

24           are documented in an Excel Spreadsheet found

25           in a directory located in Michael Dupree's

                    Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1       network storage.

2       Based on information received, evidence from

3       the school's faculty and files on students H

4       drives, IT was able to determine, identify

5       specific machines used for testing and

6       deployment of the decoy log in process.

7       At some point in time, a subdirectory named

8       spicer existed and has been since deleted on

9       Michael Dupree's H drive.  Evidence of online

10      activity was also found in Michael's account,

11      such as log in information passwords and

12      account totals.

13      So this all came to Cranbrook's attention.  They

14  acted on it, they had their Conduct Review Board and

15  deemed that he violated his probation.

16      Then the next point I want to address, because I've

17  heard it in plaintiff's counsel's argument, I've also

18  heard Your Honor use this term, this notion of Cranbrook

19  acted arbitrarily and capriciously by dismissing the son

20  plaintiff.

21      THE COURT:  I didn't say that.  I asked you a

22  question, a general question at the beginning of your

23  argument whether or not you believed, under the terms

24  of that contract, that you could dismiss any student at

25  any time for any reason satisfactory to you, to your

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   client.  You said yes.

2       MR. LINDEN:  I apologize, Your Honor.

3       THE COURT:  I did not, I did not say anything

4   about the plaintiff in this case at all.

5       MR. LINDEN:  All right.  So what I want to come

6   back to again is some basic concepts of American law.

7       A contract is a contract.  And it's enforceable

8   unless it's an illegal contract.  To an extent a contract

9   is being applied in an illegal way such as you were asking

10  my questions about what if decided to dismiss somebody

11  because they had facial hair or some other thing.

12      THE COURT:  Let's say a tattoo that they didn't

13  like.

14      MR. LINDEN:  Right.  The avenue for recourse there

15  would be to challenge it on some other basis.

16      Again, anybody can have a contract that grants them

17  unfettered discretion to terminate it or to take other

18  steps under it so long as it's not for illegal reasons.

19      And to the extent there's a notion that, somehow,

20  they acted arbitrary and capriciously here, Your Honor,

21  many of the facts we talked about here are undisputed.

22      It's undisputed he had pipe in his possession which

23  leads me to the other thing I want to reference.

24      No where is there a requirement whether it's in the

25  handbook or as a matter of law that Cranbrook had to

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1   conduct a test to determine that pipe had been used for

2   drugs before it could -- it could act pursuant to its code

3   of conduct.

4       THE COURT:  So then they could have put him on

5   probation for having a toothbrush in his backpack,

6   right?

7       MR. LINDEN:  Well, Your Honor, again --

8       THE COURT:  How about dental floss?  Would they

9   put him on probation for that?

10      MR. LINDEN:  I would submit, Your Honor, no

11  reasonable person would take the position that dental

12  floss is drug paraphernalia.

13      THE COURT:  Well wait a minute.  Wait a minute.

14  Don't say that.  There could be dental floss tainted

15  with crack cocaine.  Haven't you heard of that?

16      MR. LINDEN:  No it's the first time I've heard

17  that, Your Honor.

18      But to the extent you talk about that hypothetical

19  situation that's what was found in the plaintiff's son's

20  book bag.

21      THE COURT:  They would have had to test that,

22  though, wouldn't they?

23      MR. LINDEN:  They may not have.

24      THE COURT:  Or would the Dean of Boys know about

25  that?

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1        MR. LINDEN:  They might not have known about that.

2        THE COURT:  That's my point.  I don't know how the

3    Dean of Boys knows about all these things.

4        MR. LINDEN:  Okay.  Regardless, Your Honor, they

5    were acting within their proper discretion as set forth

6    in their handbook and their conduct --

7        THE COURT:  Isn't there a body of law that says

8    that when you're enforcing a contract or any other like

9    obligation you must do it in good faith?  Is there a

10   body of law like that?

11       MR. LINDEN:  There may be; it depends on the type

12   of contract we're talking about, Your Honor.

13       Let's assume, let's assume here for a moment there's

14   an obligation to, to enforce the contract in a good faith

15   manner.  So I submit, Your Honor, the facts that were

16   talked about today fully establish Cranbrook acted in good

17   faith.

18       THE COURT:  Okay.

19       MR. LINDEN:  They acted in good faith, they

20   followed their procedures, they conducted a Conduct

21   Review Board.  There's no evidence that there was any

22   bias or anything else irregular about that process.

23   Same thing with the -- determining him having violated

24   the probation.

25       Consequently, Your Honor, there's no evidence of bad

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1    faith here to the extent there was a requirement.

2        And so the last thing I want to address, Your Honor,

3    is this motion of reliance, because I think it's important

4    to perhaps end on this note.

5        Plaintiff's testimony establishes that immediately

6    after getting dismissed from school, he got this GED in

7    June 2004.

8        It's uncontested he'd already been accepted at

9    Purdue, that he attended in the Fall of 2004.

10        It's also undisputed as the briefs establish, Your

11    Honor, that after leaving Purdue after being there for a

12    brief period of time he, he stopped Purdue because he

13    supposedly became ill and moved to California.  He then

14    was able to get into five other colleges, the last one

15    being he graduated from.

16        THE COURT:  That was because of the stress imposed

17    on him by not receiving his diploma?

18        MR. LINDEN:  There's no testimony to support that.

19        THE COURT:  I'm curious about why you placed that

20    in your brief.  I was going to ask you that.  Thank you

21    for bringing that up.

22        What difference does it make if he dropped out of

23    Purdue and then dropped out of five other colleges?

24        MR. LINDEN:  Here's where it will make a

25    difference, Your Honor.

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1    The testimony was he was unable to identify any

2  college that he could not get into as a result of that

3  transcript having a withdrawal notation on it, including

4  the five colleges that he subsequently attended after

5  Purdue.

6    THE COURT:  Do you agree with counsel for the

7  plaintiff that he had to go in explain all of this

8  business about withdrawal?

9    MR. LINDEN:  Your Honor, there's no record in

10  support of that that I've heard.  And to the extent he

11  needed to do that, it didn't, it didn't prevent him

12  from getting into any of these schools, Your Honor.  He

13  got into these schools.

14    THE COURT:  How do you know there were schools he

15  didn't get into?

16    MR. LINDEN:  Because he testified he could not --

17  he was unable to identify -- I asked him these

18  questions in his deposition.  He was unable to identify

19  any college he did not apply to because either he had

20  to get a GED or there was a withdrawal notation on his

21  deposition.  That's found in our brief at page ten

22  footnote ten.

23    THE COURT:  Okay.

24    MR. LINDEN:  That's it, Your Honor.

25    THE COURT:  Thank you, counselor.

Dupree v Cranbrook 10-12094

Defendant's Motion For Summary Judgment 3-15-2012

1        MR. LINDEN:   Thank you.

2        THE COURT:   I'd like to thank both counsel for

3    their presentations, for their excellent briefs and

4    take this matter under advisement.   I want to review

5    the briefs again.

6        And, last but not least, Ms. Mahoney, you have said

7    nothing in this whole hearing.

8        Would you like to place something on the record?

9        MS. MAHONEY:   I'd like to say thank you for having

10   us today.   It's a beautiful courthouse.   I've not been

11   in this courthouse before.

12       THE COURT:   Glad to have you.   Thank you very

13   much.   We're in recess.

14              (Whereupon this hearing

15              then concluded at 11:54 a.m.)

16

17                 CERTIFICATE OF COURT REPORTER

18

19

20    I certify that the foregoing is a correct transcript

21    from reported proceedings in the above-entitled

22    matter.

23

24

25   s/Carol S. Sapala, FCRR, RMR        May 2, 2012

                   Dupree v Cranbrook 10-12094